IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| E. GLUCK CORPORATION,<br><br>        Plaintiff,<br><br>v.<br><br>ADAM ROTHENHAUS,<br><br>        Defendant. | Civil Action No.:<br>08 Civ. 3466 (VM)<br><br>Served by hand<br>Filed Electronically |

**DEFENDANT'S MOTION FOR SANCTIONS
PURSUANT TO RULE 11, FED. R. CIV. P.**

Defendant Adam Rothenhaus respectfully moves the Court to impose sanctions, pursuant to Rule 11, Fed. R. Civ. P., on Plaintiff, E. Gluck Corporation and its counsel, Gottlieb Rackman & Reisman, P.C.  Plaintiff and its counsel (1) failed to conduct a reasonable inquiry into the facts and law before filing the Complaint, (2) brought and continue to prosecute this action for an improper purpose, and (3) refuse to withdraw statements filed with the Court which they know or should know to be false.  Plaintiff's actions amount to a shocking and continuing pattern of disregard for its obligations under Rule 11, Fed. R. Civ. P. which merit sanctions.

**I.     Plaintiff Failed to Make a Reasonable Inquiry
        into the Facts and Law before Filing the Complaint**

Rule 11(b) states in relevant part:

> By presenting to the court a pleading, written motion, or other paper —
> whether by signing, filing, submitting, or later advocating it — an
> attorney or unrepresented party certifies that to the best of the person's

knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery;

### a.    The Cybersquatting Claims

Plaintiff and its counsel presented, signed and filed a Complaint alleging cybersquatting pursuant to 15 U.S.C. § 1125(d). Plaintiff's only allegations were:

18. Upon information and belief, and once again without plaintiff's knowledge, permission or consent defendant registered the domain name <thenowwatch.com> and, accordingly is using plaintiff's NOW trademark as the dominant part of the domain name. The domain name is associated with a Website offering the subject watches for sale.
30. Upon information and belief defendant registered and has maintained the domain name www.thenowwatch.com with the knowledge of plaintiff's ownership of a federal registration for NOW, and plaintiff's longstanding use of the NOW mark in association with the sale of watches.
31. Upon information and belief, defendant acquired and has maintained this domain name with the bad faith intent to profit from the fame and notoriety of plaintiff's NOW mark.

Plaintiff must allege bad faith in order to make out a cybersquatting claim under 15 U.S.C. § 1125(d). Without bad faith, there is no cause of action. The statute provides a non-exhaustive list of factors to consider. Plaintiff either did not consult the law before making its conclusory allegation of bad faith or made them despite knowledge that there was ample evidence to undermine its claim.

Based on its asserted inquiry into ownership of the domain name and exploration of Mr. Rothenhaus's website, Plaintiff must have discovered the ample information that favored Defendant. For example, Plaintiff must know that:

1. Mr. Rothenhaus only made fair use of the mark, 15 U.S.C. § 1125(d)(1)(B)(i)(IV);

2. Mr. Rothenhaus's extensive description on the website of his background and story of the watch was evidence that there was no attempt to divert or confuse Plaintiff's customers, 15 U.S.C. § 1125(d)(1)(B)(i)(V);
3. Mr. Rothenhaus made no offer to the sell the domain, 15 U.S.C. § 1125(d)(1)(B)(i)(VI);
4. Mr. Rothenhaus provided accurate contact information in registering the domain, 15 U.S.C. § 1125(d)(1)(B)(i)(VII);
5. Mr. Rothenhaus did not register multiple domains, 15 U.S.C. § 1125(d)(1)(B)(i)(VIII) and;
6. Plaintiff makes no claim in the Complaint to a distinctive or famous mark because it cannot, 15 U.S.C. § 1125(d)(1)(B)(i)(IX).
7. Moreover, Mr. Rothenhaus gave accurate contact information on the site; and
8. Mr. Rothenhaus did not register domains which are misspellings of the mark or Plaintiff's other marks

When invited by Mr. Rothenhaus to speak with his counsel prior to suit, Plaintiff declined. It appears that, with so many facts mounting against Plaintiff's ability to assert bad faith, Plaintiff stopped investigating and did not want to find out whether Mr. Rothenhaus believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful. 15 U.S.C. § 1125(d)(1)(B)(ii).

In light of the material Plaintiff investigated, Plaintiff's failure to conduct further inquiry when invited and Plaintiff's inability to find any facts to support its conclusory allegations of bad faith, Plaintiff did not have the requisite factual and legal contentions to support a claim of cybersquatting. The presenting, signing and filing of the complaint – and any attempt to later advocate the cybersquatting claim – is a violation of Rule 11, Fed. R. Civ. P. which must be sanctioned.

### b.    The Trademark Claims

Similarly, Plaintiff's conclusory pleadings on its Lanham Act claims belie a disregard for the controlling law and an inability to plead the facts necessary to support the claims. The controlling caselaw, such as *Arnold v. ABC, Inc.*, 2007 U.S. Dist. LEXIS 5802 (S.D.N.Y. Jan. 29, 2007), makes clear that conclusory allegations in a complaint do

not satisfy the pleading requirements for Lanham Act claims.  The Plaintiff has the burden to prove, not only likelihood of confusion, but also that its mark merits protection. *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 115 (2d Cir. 2006) and the pleadings must reflect that.  In *Arnold*, the Southern District addressed Lanham Act claims on a mark which was a common English phrase.  Here, the mark is a common, three-letter English word.  The Court found Defendant's use to be a fair use of the mark based, in part, on good faith.  In dismissing the complaint pursuant to Rule 12, Fed. R. Civ. P. the Court held that a Plaintiff cannot merely allege the conclusion of bad faith.  Plaintiff must plead facts that at least give rise to the inference of bad faith. *Arnold* at *11.

  Like the Plaintiff in *Arnold*, Plaintiff here does not allege any facts to give rise to an inference of bad faith.  It is clear that Plaintiff was not aware of such facts, and, as described *supra*, ignored facts that supported good faith, but pled its claims anyway, despite the clear requirements of *Arnold*.  In the instant case, as in *Arnold*, there is nothing more than Plaintiff's conclusory allegation of confusion as to source or sponsorship.  Complaint ¶¶22, 37.

  Plaintiff's failures, however, are not merely insufficient under Rule 12.  Plaintiff's counsel admitted that he was not aware of caselaw which allowed the use of a mark to be used on the same goods by another. (Shieldkret Dec. Ex. 1, ¶ 3).  As demonstrated above, Plaintiff was confronted with ample evidence in its investigation that Mr. Rothenhaus was not attempting to pass off his goods as those of Plaintiff and had acted in good faith.  Plaintiff's failure to learn the law, conclusory allegations and absence of factual support make clear that Plaintiff and its counsel (1) failed to proceed under the applicable law, (2) failed to find facts that support its allegations, (3) found facts that

defeat its allegations and (4) filed the Complaint anyway. These acts and omissions merit sanctions under Rule 11.

Whether, upon further investigation and amendment of the Complaint these claims can be substantiated is not relevant. The issue is whether Plaintiff had a basis for asserting the claims at the time it presented the Complaint. It is clear from the law, the facts, Plaintiff's own description of what it knew and its weak and conclusory pleading that Plaintiff's Complaint did not comport with the requirements of Rule 11(b).

## II.     Plaintiff Brought This Action for an Improper Purpose

Rule 11(b)(1) states that presenting a paper certifies that "it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Plaintiff has taken several actions which were calculated simply to harass Mr. Rothenhaus, cause delay and needlessly increase the cost of litigation. Plaintiff filed and refuses to withdraw statements to support faulty service. When Mr. Rothenhaus offered to voluntarily accept service, (Shieldkret Dec. Ex. 2, ¶ 2), Plaintiff, through its counsel, threatened an improper motion for default judgment. (Shieldkret Dec. Ex. 1, ¶ 1). The only purpose of such a motion is to needlessly increase the cost of litigation for Mr. Rothenhaus.

On the afternoon Friday, May 9, 2008 – a month after the Complaint had been filed – Plaintiff's counsel threatened an improper TRO motion for the following week. (Shieldkret Dec. Ex. 1, ¶ 1). He did not state there was any emergency. (Shieldkret Dec. ¶ 4). The TRO motion was threatened purely for the purpose of intimidating Mr. Rothenhaus into acceding to the terms of Plaintiff's cease and desist letter under time

pressure. *Id*. It was not brought.[1] The threat of numerous improper motions makes clear that Plaintiff and its counsel presented the Complaint for the purpose of harassing Mr. Rothenhaus and needlessly increasing litigation costs to pressure him to abandon his legitimate rights.

### III.    Plaintiff Refuses to Withdraw False Statements

The Affidavits of Service submitted Plaintiff are symptomatic of Plaintiff's failure to investigate and verify papers it files with the Court and its refusal to withdraw false statements. The Affirmation purports to have served enclosures which were never there[2] and to have effected valid service on Kevin Velez, even though Plaintiff's counsel is aware that only "nail and mail" service was attempted. (Shieldkret Dec. Ex. 1, ¶ 2).

Plaintiff and its counsel, however, have so far refused to withdraw the affidavits, claiming the false statements "didn't matter." *Id*. Obviously they mattered enough to Plaintiff at the time to include them in sworn statements concerning service. Failing to inform the Court of false statements which might induce reliance is sanctionable conduct. *In re Pennie & Edmonds LLP*, 323 F3d 86( 2d Cir. 2003) (the Second Circuit found that counsel in *Pennie* had not been given an adequate opportunity to withdraw the flawed affidavit on a *sua sponte* sanction, so the sanction was not upheld, but the Second Circuit did not dispute that filing false statements with the Court was sanctionable). The statements are significant because they form the basis for the Court's

---

[1]    Instead Plaintiff requested a pre-motion conference with the Court concerning a preliminary injunction motion.
[2]    Plaintiff never provided the ECF instructions. The affixed envelope lacked individual practices. The statements in the process server's affidavit are contradicted by Mr. Schurin's own admission that they used "nail and mail" service and the Declaration of Kevin Velez.

exercise of personal jurisdiction. Indeed, the failure to correct harms, not only Mr. Rothenhaus, but also the Court.

Plaintiff's counsel represented to the Court that an answer was due on May 12, 2008. At best, this was a failure to calculate properly under CPLR 308)4). Yet Plaintiff threatened to seek an improper default judgment based on the false statement and its counsel has not corrected his statement to the Court.

Plaintiff's counsel admitted that it used "nail and mail" service. This is consistent with the declaration of Kevin Velez who was present during the attempt at service. Plaintiff's own affiant made contradictory statements. Because these statements go to whether the Court has jurisdiction over Mr. Rothenhaus, the statements are material. Accordingly, if they are not withdrawn, Plaintiff and its counsel should be sanctioned for their failure to withdraw them.

## Conclusion

For the foregoing reasons, Mr. Rothenhaus respectfully submits that the imposition of sanctions is the only means to convince plaintiff and its counsel to comply with the Federal Rules. Mr. Rothenhaus seeks (1) dismissal of the Complaint, (2) attorney fees and costs for the needless expenses Plaintiff's acts and omission have

necessitated, (3) attorney fees and costs for the instant motion and (4) such other measures as the Court deems appropriate.

Respectfully submitted,

Dated: May 13, 2008

By: *Elizabeth Shieldkret*
Elizabeth Shieldkret (ES 0625)
85-86 67th Avenue
Rego Park, NY 11374
(718) 997-0290
es@eshieldkret.com

Attorney for Defendant,
Adam Rothenhaus

LEXSEE

CAROLYN JANET ARNOLD, Plaintiff, -against- ABC, INC. and THE WALT DISNEY COMPANY, Defendants.

06 Civ. 1747 (GBD)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2007 U.S. Dist. LEXIS 5802

January 29, 2007, Decided
January 29, 2007, Filed

**COUNSEL:** [*1] For Carolyn Janet Arnold, Plaintiff: Holly Regina Pack, LEAD ATTORNEY, Holly R. Pack, New York, NY; Robert J Hantman, LEAD ATTORNEY, Hantman & Associates, New York, NY.

For ABC, Inc., The Walt Disney Company, Defendants: Eric J. Lobenfeld, Hogan & Hartson L.L.P. (NYC), New York, NY.

**JUDGES:** GEORGE B. DANIELS, United States District Judge.

**OPINION BY:** GEORGE B. DANIELS

**OPINION**

MEMORANDUM DECISION AND ORDER

GEORGE B. DANIELS, District Judge:

Plaintiff Carolyn Janet Arnold sued defendants American Broadcasting Company, Inc. ("ABC") and The Walt Disney Company ("Disney") (collectively "Defendants") for trademark infringement under sections 32(1) and 43(a) of the Lanham Act, *15 U.S.C. ßß 1114(1)(a) & 1125(a)*, trademark dilution in violation of *New York General Business Law ß 368-d*,[1] and unfair competition. Plaintiff alleges that Defendants are "using Plaintiff's trademark to advertise, promote and distribute 'Boston Legal.'" Compl. P 10. Defendants moved to dismiss pursuant to *Fed. R. Civ. P 12(b)*. The motion to dismiss is granted.

1  Plaintiff asserts her dilution claim under *New York General Business Law ß 369-d*, but that section was repealed in 1996 and replaced by *New York General Business Law ß 360-l. N.Y. Gen. Bus. Law ß 360-l* (2006).

[*2] Plaintiff owns a registered trademark, Reg. No. 2821328, for the phrase "WHAT'S YOUR PROBLEM?" for use in connection with a "reality based tv show providing real solutions to real problems." Compl. P 13; Declaration of Eric J. Lobenfeld, sworn to May 23, 2006 ("Lobenfeld Decl.") Ex. B. Plaintiff is also the creator of a reality-based television show called "WHAT'S YOUR PROBLEM?" Compl. P 15. "WHAT'S YOUR PROBLEM?" is a "comical show in which a host interviews real people and solves their problems." Compl. P 19. The show airs every other Wednesday at 8:00 p.m., on public access channel 67, on

Time Warner Cable of New York. Compl. P 20.

Defendant ABC airs a well-known television show, "Boston Legal," about the fictional Boston law firm of Crane, Poole & Schmidt. Defendants' Memorandum of Law in Support of their Motion to Dismiss ("Def. Mem. of Law") at 1. As part of its efforts to promote "Boston Legal," ABC uses the phrase "WHAT'S YOUR PROBLEM?" in advertisements throughout the United States. Compl. P 32. Specifically, "WHAT'S YOUR PROBLEM?" appears in advertisements on buses, phone booths, and billboards throughout New York City and Los Angeles, California. Id. at P 33; Lobenfeld **[*3]** Decl. Ex. E. The phrase also appears on the "Boston Legal" website, which is set-up as a mock website for the firm of Crane, Poole & Schmidt. Compl. P 35; Lobenfeld Decl. Ex. C. On the advertisements and the website, the phrase "WHAT'S YOUR PROBLEM?" appears directly above the phone number "1-877-SUE-2-WIN." Lobenfeld Decl. Ex. C and Ex. E. [2]

> 2  Plaintiff argues that the Court cannot, in deciding this motion, consider either the copy of the "Boston Legal" advertisement, or the printout of the "Boston Legal" website, without converting this motion into one for summary judgment. See *Fed. R. Civ. P. 12(b)*. The Court may, however, consider a document if the plaintiff "relies heavily upon its terms and effect," rendering "the document 'integral' to the complaint." *Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002)* (citation omitted). Furthermore, "[w]here [a] plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a *Rule 12(b)(6)* motion into one under *Rule 56* is largely dissipated." *Cortec Industries, Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991)*. Here, plaintiff not only relies *heavily* on the content of the advertisements and the website, she relies *entirely* on this material in crafting her allegations. Also, because plaintiff relied on this material, she obviously has actual notice of what they represent, thereby diminishing the need to convert Defendants' motion into one for summary judgment.

**[*4]**  In October 2005, plaintiff sent Defendants a cease and desist letter requesting that Defendants "immediately cease using Plaintiff's trademark 'WHAT'S YOUR PROBLEM?'." Compl. P 39. Plaintiff did not receive a response. Id. at P 40. Plaintiff subsequently initiated this lawsuit alleging that Defendants have unlawfully used her trademark in violation of sections 32(1) and 43(a) of the Lanham Act, *15 U.S.C. ßß 1114(1)(a)* [3] *& 1125(a)*, [4] and *New York General Business Law ß 360-l*. Plaintiff also asserts a claim for common law unfair competition. In particular, Plaintiff alleges that Defendants' utilization of "WHAT'S YOUR PROBLEM?," as outlined above "constitute[s] willful and intentional infringement of Plaintiff's registered trademark and common law trademark rights." Id. at P 37. Defendants now move to dismiss the complaint on the grounds that their use of "WHAT'S YOUR PROBLEM?" is "fair use," thus precluding plaintiff's federal trademark and common law unfair competition claims, and that plaintiff has not stated a claim for dilution under *New York General Business Law ß 360-l*.

> 3  *Section 32(1)(a)* of the Lanham Act prohibits the "use in commerce . . . of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." *15 U.S.C. ß 1114(1)(a)*.

**[*5]**

Case 1:08-cv-03466-VM-RLE    Document 5    Filed 06/04/2008    Page 11 of 14

Page 3
2007 U.S. Dist. LEXIS 5802, *

4   Plaintiff's claim under this section is more appropriately one of false designation of origin. See *15 U.S.C. ß 1125(a)(1)(A)* (stating that it is unlawful to "use[] in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, . . . which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of . . . the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person"); see also Compl P 58 (alleging that "Defendants' activities are likely to lead to and result in consumer confusion, mistake or deception and are likely to cause consumers and the public to believe that Plaintiff is connected or affiliated with Defendants' activities and events").

In deciding a motion to dismiss for failure to state a claim, the Court must "accept as true the complaint's factual allegations and draw all inferences in the plaintiff's favor." *Cleveland v. Caplaw Enterprises, 448 F.3d 518, 521 (2d Cir. 2006)* **[*6]** (citation and alterations omitted). Dismissal is only appropriate if "it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Field Day, LLC v. County of Suffolk, 463 F.3d 167, 192 (2d Cir. 2006)* (citation omitted).

**A. Federal Trademark Claims**

To state a claim for trademark infringement under *sections 32(1)(a)* and *43(a)* of the Lanham Act, plaintiff must allege facts which establish that her mark merits protection and that Defendants' use of her mark is likely to cause consumer confusion as to the mark's source. *Louis Vuitton Malletier v. Dooney & Bourke, Inc., 454 F.3d 108, 115 (2d Cir. 2006)*. Defendants maintain, however, that their use of the phrase "WHAT'S YOUR PROBLEM?" constitutes "fair use" under *15 U.S.C. ß 1115(b)*. It is a defense to a trademark-infringement claim if "the use of the name, term, or device charged to be an infringement is a use, otherwise than as a mark, of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party . . . ." *15 U.S.C. ß 1115(b)(4)* **[*7]** . 5 To be "fair use," Defendants must have used "WHAT'S YOUR PROBLEM?" "(1) other than as a mark, (2) in a descriptive sense, and (3) in good faith." *EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos, Inc., 228 F.3d 56, 64 (2d Cir. 2000)*.

5   By the statute's terms, "fair use" is a defense to claims under *15 U.S.C. ß 1114*, but courts have extended it to claims under *15 U.S.C. ß 1125* as well. See, e.g., *New York Mercantile Exchange, Inc. v. IntercontinentalExchange, Inc., 389 F.Supp.2d 527, 545 (S.D.N.Y. 2005)* ("Both *sections 32(1)* and *43(a)* are subject to a defense of 'fair use.'"); *Car-Freshner Corp. v. S.C. Johnson & Son, Inc., 70 F.3d 267, 268 (2d Cir. 1995)* (applying the "fair use" defense to claims under *sections 32(1)* and *43(a)*).

The universe of words or phrases that can be used "to describe the goods" is not "narrowly confined to words that describe a characteristic of the goods, such as size or **[*8]** quality." *Cosmetically Sealed Industries, Inc. v. Chesebrough-Pond's USA Co., 125 F.3d 28, 30 (2d Cir. 1997)*. Instead, a word or phrase need only be used in a "descriptive sense." Id. Thus, words or phrases that do not necessarily describe anything about an alleged infringer's goods might still be used in a "descriptive sense" for purposes of the "fair use" defense. See, e.g., *B & L Sales Associates v. H. Daroff & Sons, Inc., 421 F.2d 352, 354 (2d Cir. 1970)* (holding that the phrase "Come on Strong" was used in a descriptive sense when it appeared in a men's clothes advertisement because it "de-

Case 1:08-cv-03466-VM-RLE   Document 5   Filed 06/04/2008   Page 12 of 14

Page 4
2007 U.S. Dist. LEXIS 5802, *

scrib[ed] a presumably desirable effect" of the clothing); *Cosmetically Sealed, 125 F.3d at 30* (finding that the phrase "Seal it with a Kiss" was used in a descriptive sense when it appeared in a lipstick advertisement because it "describe[d] an action that the sellers hope[d] consumers [would] take, using their product.").

Here, the phrase "WHAT'S YOUR PROBLEM?" ostensibly does not describe a characteristic of Defendants' show. But in the context of how it is used in the advertisements and on the website-with "WHAT'S YOUR PROBLEM? [*9] " appearing immediately above the phone number "1-877-SUE-2-WIN"--the phrase is generically descriptive to the potential viewing public that Defendants' product is a show about fictional lawyers in a fictional law firm offering legal services. If any confusion with plaintiff's television show might result, "that is the risk plaintiff accepted when [she] decided to identify [her show] with a mark that uses a well known descriptive phrase." **KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc., 543 U.S. 111, 122, 125 S. Ct. 542, 160 L. Ed. 2d 440 (2004)** (citations omitted). Plaintiff does not allege any use of any other element of, or any other similarity to, her trademark other than the use of the three words "WHAT'S YOUR PROBLEM?"

In addition, Defendants are not using the phrase "WHAT'S YOUR PROBLEM?" as a mark to identify or distinguish the show "Boston Legal," or indicate the show's source. See *15 U.S.C. ß 1127* (defining trademark). On both the advertisements and the website, the identity of show, and the fact that the show's source is ABC and not plaintiff, is clearly evidenced by the prominent display of the show's title, ABC's own famous and [*10] recognizable trademark, and large photos of the show's three stars. [6] See, e.g., *Cosmetically Sealed, 125 F.3d at 30* (stating that the non-trademark use of plaintiff's mark was "evidenced by the fact that the source of the defendants' product [wa]s clearly identified by the prominent display of the defendants' own trademarks.").

[6] For example, on the advertisements, although "WHAT'S YOUR PROBLEM?" appears prominently and in large font, the title of the show--"Boston Legal"--appears just below it and also in large, capital letters. Lobenfeld Decl. Ex. E. Moreover, immediately to the right, are large pictures of the show's three stars. Id. Finally, ABC's own well-know trademark appears in the bottom-right corner of the ad. Id. On the website--which is made to look like an actual law firm's website--photos of the three stars with a link to each's "attorney bio" appear prominently at the top. Lobenfeld Decl. Ex. C. And unlike on the advertisements, "WHAT'S YOUR PROBLEM?" appears only in a small box on the left-middle of the page. Finally, the ABC trademark appears at the bottom of the page, and, to get to the website, one must either first go to ABC's main website, or type the website's full address, which contains both "ABC" and "Boston Legal." Id. Thus, it is obvious to anyone visiting the "Boston Legal" website that the show's source is ABC.

[*11] Finally, Plaintiff does not sufficiently allege that Defendants used her mark in bad faith. Cf. *EMI Catalogue P'ship., 228 F.3d at 66* ("Fair use analysis . . . requires a finding that the defendants used the protected mark in good faith."). Plaintiff alleges that Defendants acted in bad faith because several ABC employees were familiar with her "WHAT'S YOUR PROBLEM?" reality television show. Compl. P 22. [7] But even taking plaintiff's allegations as true, as this Court must, they are insufficient to create an inference of bad faith. None of these employees are alleged to have had any association with "Boston Legal," and, even if they did, "[p]rior knowledge of a senior

Case 1:08-cv-03466-VM-RLE   Document 5   Filed 06/04/2008   Page 13 of 14

Page 5
2007 U.S. Dist. LEXIS 5802, *

user's mark does not, without more, create an inference of bad faith." *Playtex Products, Inc. v. Georgia-Pacific Corp., 390 F.3d 158, 166 (2d Cir. 2004)* (citation omitted); see also *Savin Corp. v. Savin Group, 391 F.3d 439, 461 (2d Cir. 2004)* ("Nor is prior knowledge of a senior user's trade mark inconsistent with good faith.") (citation and alteration omitted).

> 7   For example, plaintiff alleges that an ABC employee who worked in the Monday Night Football Graphics Department created the graphics for plaintiff's "WHAT'S YOUR PROBLEM?" show in July 2003. Compl. P 23. Plaintiff also alleges that another ABC employee performed services in connection with plaintiff's 'WHAT'S YOUR PROBLEM?' television show." Id. at P 26. Finally, plaintiff alleges that an ABC employee was taped for an episode of her show and that several ABC employees have viewed her show at a restaurant across the street from ABC's offices. *Id. PP 28-30*.

[*12]  Instead, bad faith requires a showing that Defendants intended "to trade on the good will of the trademark holder by creating confusion as to source or sponsorship." *EMI Catalogue P'ship, 228 F.3d at 66* (citations omitted). Here, aside from plaintiff's conclusory allegation that "Defendants' acts are deliberate and intended to confuse customers and the public as to the source of Defendants's services and to injure Plaintiff and reap the benefit of Plaintiff's goodwill," plaintiff alleges no set of facts that, if true, would lead to the conclusion that ABC sought to conflate its show, "Boston Legal," with plaintiff's little known, local, cable-access television program. See *Star Industries, Inc. v. Bacardi & Co. Ltd., 412 F.3d 373, 389 (2d Cir. 2005)* (noting "the implausibility of the notion that a premier international rum manufacturer would seek to conflate its products with those of a regional discount vodka manufacturer" in finding lack of bad faith by defendant).

Accordingly, Defendants' use of the phrase "WHAT'S YOUR PROBLEM?" in their advertisements and website for the show "Boston Legal" as alleged is fair use under *15 U.S.C. ß 1115(b)* [*13] . As such, plaintiff cannot state a claim for trademark infringement.

### B. State Law Claims

Plaintiff also alleges trademark dilution under *New York General Business Law ß 360-l*. The statute only protects "'extremely strong mark[s]' that are either 'distinctive' or ha[ve] acquired secondary meaning." *Scholastic, Inc. v. Stouffer, 221 F. Supp. 2d 425, 437 (S.D.N.Y. 2002)* (citations omitted). Thus, to state a claim for dilution under *section 360-l*, a plaintiff must show "(1) that the plaintiff's mark is truly distinctive or has acquired secondary meaning, and (2) a likelihood of dilution either as a result of 'blurring' or 'tarnishment.'" *Information Superhighway, Inc. v. Talk America, Inc., 395 F. Supp. 2d 44, 56 (S.D.N.Y. 2005)*. The claim "rests on the allegation that a defendant is attempting to feed upon the business reputation of an established distinctive trade-mark or name." Id. (citation and alteration omitted).

Here, although plaintiff alleges that her mark is "unique and distinctive," a common phrase such as "WHAT'S YOUR PROBLEM?" is not--and cannot--be unique and distinctive unless it has acquired [*14]  some secondary meaning. See *Field Enterprises Ed. Corp. v. Grosset & Dunlap, Inc., 256 F. Supp. 382, 388 (S.D.N.Y. 1966)* ("As to the strength of plaintiff's mark, since 'How and Why' is a common English phrase it [could] not be protected in the absence of secondary meaning.") (citations omitted). Plaintiff does not make any allegation that "WHAT'S YOUR PROBLEM?" has gained some secondary meaning associating the phrase with her show. Cf. *TCPIP Holding Co., Inc. v. Haar Communications, Inc., 244 F.3d 88, 94 (2d Cir. 2001)* (stating that in "trademark parlance," a mark acquires a "secondary meaning" when the public "come[s] to associ-

Case 1:08-cv-03466-VM-RLE    Document 5    Filed 06/04/2008    Page 14 of 14

Page 6
2007 U.S. Dist. LEXIS 5802, *

ate the mark with the goods and services of the user"). Therefore, plaintiff has failed to state a claim for trademark dilution.

Finally, plaintiff also asserts a claim for common law unfair competition. A claim of unfair competition under New York Law is analyzed in the in the same manner as a trademark infringement claim under the Lanham Act. *Louis Vuitton Malletier, 454 F.3d at 119* (citation omitted); *Information Superhighway, 395 F. Supp. 2d at 56* ("The elements necessary to prevail [*15] on common law causes of action for trademark infringement and unfair competition mirror Lanham Act claims."). Thus, because Defendants' use of the phrase "WHAT'S YOUR PROBLEM?" constitutes fair use, plaintiff's unfair competition claim is equally precluded as is her trademark infringement claim. See *Wonder Labs, Inc. v. Procter & Gamble Co., 728 F. Supp. 1058, 1067 (S.D.N.Y. 1990)* ("[T]he defense that the defendant's use of the mark is purely descriptive and not as a trademark equally precludes recovery for common law unfair competition.").

Accordingly, Defendants' motion to dismiss is GRANTED. This case is DISMISSED.

Dated: New York, New York

January 29, 2007

SO ORDERED:

GEORGE B. DANIELS

United States District Judge