**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :
E. GLUCK CORPORATION,                     :
                                          :
                    Plaintiff,            :
                                          :
          v.                              :          Civil Action No.
                                          :          08 CV 3466 (VM)
ADAM ROTHENHAUS,                          :
                                          :
                    Defendant.            :
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -- x

---

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
## ITS MOTION FOR A PRELIMINARY INJUNCTION

---

GOTTLIEB, RACKMAN & REISMAN, P.C.
Richard S. Schurin
Yuval H. Marcus
Counsel for Plaintiff
270 Madison Avenue
New York, New York 10016
(212) 684-3900

i

## TABLE OF CONTENTS

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR A
PRELIMINARY INJUNCTION ........................................................................................ 1

FACTS ................................................................................................................................ 3

ARGUMENT ...................................................................................................................... 3

A PRELIMINARY INJUNCTION SHOULD BE ENTERED AGAINST DEFENDANT ........ 3

    A.    Plaintiff Is Likely to Succeed On The Merits Of Its Trademark Infringement Claim
................................................................................................................................ 3

        1.    The Trademark Office's Findings of a Likelihood of Confusion Must Be
Given "Great Weight." ........................................................................................ 4

        2.  Defendant's "Fair Use" Defense is Without Merit ................................................ 7

        3.    NOW is a Valid Incontestable Mark Owned by Plaintiff .................................... 9

        4.    Defendant's Use of NOW and THE NOW WATCH Infringes Plaintiff's
NOW Mark ........................................................................................................ 10

            a)  Similarity of the Marks .............................................................................. 11

            b)  Actual Confusion ....................................................................................... 12

            c)  Defendant's Intent ..................................................................................... 13

            d)  Competitive Proximity of the Products ...................................................... 13

            e)  Strength of the Marks ................................................................................ 14

            f)  Product Quality and Purchaser Sophistication ......................................... 15

            g)  Bridging The Gap ...................................................................................... 16

        SUMMARY ............................................................................................................ 16

    B.    The Balance of Hardships Favors Plaintiff ............................................................ 17

    C.    Plaintiff Is Being Irreparably Harmed .................................................................... 18

CONCLUSION ................................................................................................................. 19

# TABLE OF CASES

**Cases**

*Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4 (2d Cir. 1976) ................... 14

*Banff, Ltd. v. Federate Dept. Stores, Inc.*, 841 F.2d 486 (2d Cir. 1988) ......................... 15

*Blue & White Products Corp. v. Shamir*, 350 F. Supp2d 514, 521 (SDNY 2004) .......... 13

*Charles of the Ritz Group Ltd. v. Quality King Distributors*, 832 F.2d 1317, 1321 (2d Cir. 1987) ........................................................................................................................... 15

*Clinique Laboratories, Inc. v. Dep. Corp.*, 945 F.Supp. 547, 550 (S.D.N.Y. 1996) ........... 3

*Dreyfus Fund Inc. v. Royal Bank of Canada*, 525 F. Supp. 1108 (S.D.N.Y. 1981) ......... 13

*EMI Catalogue P'ship v. Hill, Holiday, Connors, Cosmopulos, Inc.*, 228 F. 3d 56, 64 (2d Cir. 2000) ........................................................................................................................... 7

*Genesee Brewing Co., Inc., v. Stroh Brewing Co.*, 124 F.3d 137, 142 (2d Cir. 1997) .... 17

*Jackson Dairy, Inc. v. H.P. Hood and Sons*, 596 F.2d 70, 72 (2d Cir. 1979) ................... 3

*Lexington Management v. Lexington Capital Partners*, 10 F.Supp.2d 271 (S.D.N.Y. 1998) ................................................................................................................................ 3

*Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.,* 799 F.2d 867, 871 (2d Cir. 1986) ... 9

*M&G Electronics Sales Corp. v. Sony*, 250 F. Supp. 2d 91, 99 (S.D.N.Y. 2003) ............ 4

*Mobil Oil Corp. v. Mobile Mechanics, Inc.,* 192 U.S.P.Q. 744 (D. Conn. 1976) ................ 8

*Murphy Bed Co. v. Interior Sleep Systems, Inc.*, 874 F.2d 95, 101 (2d Cir. 1989) ....... 4, 7

*Park 'N Fly, Inc v. Dollar Park & Fly, Inc._,* 469 US 189, 205 105 S.Ct. 658 (1985) ........ 10

*Polaroid Corp. v. Polaroid Elecs. Corp.*, 287 F.2d 492 (2d. Cir 1961), *cert. denied*, 368 U.S. 820 (1961) ....................................................................................................... 10

*Sports Authority v. Prime Hospitality Corp.,* 89 F. 3d 955, 965 (2d Cir. 1995) ............... 16

*Standard Brands, Inc v. Smidler*, 151 F.2d 34 (2d Cir. 1945) ........................................ 14

*Stern's Miracle-Gro v. Shark Products*, 823 F.Supp. 1077, 1082 (S.D.N.Y. 1993) ........... 3

*Syntex Laboratories, Inc v. Norwich Pharmacal Co.,* 437 F. 2d 566, 569 (2d Cir. 1971). 4, ........................................................................................................................................ 7

*TCPIP Holding Co., Inc. v. Haar Communications, Inc.,* 244 F. 3d 88, 103-104 (2d Cir. 2001) ............................................................................................................................ 2

**Statutes**

15 U.S.C. § 1057(b) ...................................................................................................... 9

15 U.S.C. § 1065 .......................................................................................................... 9

15 U.S.C. §1115(b)(4) ............................................................................................. 1, 7

**Treatises**

2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* §11:44 at p. 11-90.16 ..................................................................................................................... 9

2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* §11:46 at pp. 11-93 to 11-96 ........................................................................................................... 8

2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition,* §11.11 at p. 11-18 ........................................................................................................................ 14

2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition,* §11.64 at p. 11-45 ........................................................................................................................ 14

4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* §23:12 at pp. 23-84 to 23-88 ......................................................................................................... 12

6 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition,* §32:142 at p. 32-275 ........................................................................................................................ 9

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                          :
E. GLUCK CORPORATION,                                     :
                                                          :
                              Plaintiff,                  :
                                                          :
            v.                                            :         **Civil Action No.**
                                                          :         **08 CV 3466 (VM)**
ADAM ROTHENHAUS,                                          :
                                                          :
                              Defendant.                  :
                                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
## ITS MOTION FOR A PRELIMINARY INJUNCTION

Plaintiff E. Gluck Corporation ("Plaintiff") submits this Memorandum of Law

in support of its motion for a preliminary injunction to prevent defendant Adam

Rothenhaus ("Defendant") from continuing to use the marks NOW and THE

NOW WATCH in connection with the promotion, advertisement, distribution,

marketing and sale of watches and from continuing to maintain and operate a

website under the domain name "www.thenowwatch.com".

As discussed herein, Defendant's argument that his use of these marks is

a "fair use" is entirely without merit.  In order for there to be a permissible fair

use, the use must be "other than as a mark." 15 U.S.C. §1115(b)(4).  In this case,

for many reasons it is obvious that Defendant does not intend for his use to be

other than as a mark.  Such reasons include the fact that he applied to register

THE NOW WATCH as a trademark with the United States Patent and Trademark

1

Office ("PTO") and has continued to try to overcome the PTO's rejections of his

application, and he uses the "tm" symbol next to his mark on his website.  In

addition, established Second Circuit conclusively establishes that any use of a

word as a domain name is use as a mark, and is not eligible for the fair use

defense.  TCPIP Holding Co., Inc. v. Haar Communications, Inc.,  244 F. 3d 88,

103-104 (2d Cir. 2001).  Accordingly, Defendant has no fair use defense.

Plaintiff markets and sells watches in the United States and elsewhere in

connection with the NOW mark, which it has been using for more than twenty

years.  (Fernandez Aff. ¶ 3) Plaintiff also owns an incontestable United States

trademark registration for the mark NOW.   (Fernandez Aff.  ¶ 9, Exhibit D)   In

March 2008, Plaintiff became aware that Defendant was advertising, marketing

and selling a line of watches under the marks NOW and THE NOW WATCH over

the Internet at a website which Defendant owns, operates and maintains under

the domain name, www.thenowwatch.com, and to various retailers located in this

judicial district. (Fernandez Aff. ¶ 10)

As discussed herein, there is a likelihood of confusion resulting from the

Defendant's use of the marks NOW and THE NOW WATCH relating to the sale

of watches.  Since Plaintiff has expended considerable time, effort and money to

develop its NOW brand within the watch industry and amongst the consuming

public, Defendant's actions if not enjoined, will irreparably harm Plaintiff.  In

addition, since the Defendant in this case is an individual with a small start-up

business, he will likely not have the resources begin to adequately compensate

Plaintiff for the harm that will be caused.

2

## FACTS

The Court is respectfully referred to the facts set forth in the Affidavits of

Bernard Fernandez and Richard S. Schurin, and the exhibits annexed thereto,

and the Amended Complaint filed in this action.

## ARGUMENT

### A PRELIMINARY INJUNCTION
### SHOULD BE ENTERED AGAINST DEFENDANT

In this Circuit, it is well-settled that to obtain a preliminary injunction the

movant must demonstrate on the one hand, a likelihood of success on the merits

or sufficiently serious questions going to the merits to make them a fair ground

for litigation and a balance of hardships tipping decidedly toward the party

requesting preliminary relief, and on the other hand, irreparable harm. Jackson

Dairy, Inc. v. H.P. Hood and Sons, 596 F.2d 70, 72 (2d Cir. 1979); Lexington

Management v. Lexington Capital Partners, 10 F.Supp.2d 271 (S.D.N.Y. 1998);

Clinique Laboratories, Inc. v. Dep. Corp., 945 F.Supp. 547, 550 (S.D.N.Y. 1996);

Stern's Miracle-Gro v. Shark Products, 823 F.Supp. 1077, 1082 (S.D.N.Y. 1993).

As discussed herein, Plaintiff is likely to succeed on the merits, and will suffer

irreparable harm if an injunction is not granted.  Accordingly, a preliminary

injunction should be entered.

**A.    Plaintiff Is Likely to Succeed On The Merits Of Its Trademark
Infringement Claim**

A claim of trademark infringement under Section 32 of the Lanham Act is

established by showing ownership of a valid mark that is infringed by the

defendant's mark.  Lexington Management, 10 F. Supp.2d at 277; Clinique, 945

3

F.Supp at 550.  As discussed herein, it is without dispute that Plaintiff owns a valid mark for the term NOW for watches; and Defendant has infringed said mark through the use of identical marks, i.e., NOW and THE NOW WATCH, on identical products, watches.

### 1.  The Trademark Office's Findings of a Likelihood of Confusion Must Be Given "Great Weight."

It is established Second Circuit law that any decision by the Patent and Trademark Office (hereinafter "PTO") to refuse registration is entitled to "great weight" in the District Court's consideration of whether there is a likelihood of confusion.   See Syntex Laboratories, Inc v. Norwich Pharmacal Co., 437 F. 2d 566, 569 (2d Cir. 1971) (Patent Office's refusal to register mark because of similarity to previously registered mark is factor which is entitled to "great weight" in trademark infringement suit.); Murphy Bed Co. v. Interior Sleep Systems, Inc., 874 F.2d 95, 101 (2d Cir. 1989) (The decision of the PTO is to be accorded "great weight."); and M&G Electronics Sales Corp. v. Sony,  250 F. Supp. 2d 91, 99 (S.D.N.Y. 2003) (Courts within this Circuit must give "great weight" to the decisions of the PTO.)

Accordingly, in this case, the PTO's refusal of Defendant's trademark application because of its similarity to Plaintiff's previously registered mark is entitled to "great weight."

First PTO Rejection

On August 1, 2006, Defendant's application to register the mark THE NOW WATCH for watch faces was refused by the PTO due to a likelihood of

4

confusion with Plaintiff's prior registered mark. The trademark examiner stated in

relevant part:

> "Registration of the proposed mark is refused because of a likelihood of
> confusion with the mark in U.S. Registration No. 1,446,294.
> …
>
> The goods are highly related: watches and watch faces.
>
> The marks are highly similar and convey the same meaning using the
> same wording forming the major portion of the marks: NOW; THE NOW
> WATCH. The addition of the generic name WATCH to the applicant's
> mark does not obviate likelihood of confusion.
>
> For these reasons, registration is refused under the provisions of Section
> 2(d) of the Trademark Act."

See Schurin Aff. ¶3, and Office Action attached thereto as Exhibit I.

<u>Second PTO Rejection</u>

Defendant challenged the PTO rejection, but again on December 1, 2006,

the PTO responded to Defendant's submission and maintained its rejection given

the prior established rights of Plaintiff.   In that response, the trademark examiner

stated in relevant part:

> "After careful consideration of the applicant's arguments for allowance, the
> refusal to register under the provisions of Section 2(d) are maintained for
> the following reasons:
>  …
>
> SIMILARITY OF THE GOODS
>
> The goods in issue appear to be either identical or highly similar. While
> the applicant has identified the goods as "watch faces" an examination of
> the picture of applicant's proposed goods shows the terms NOW placed to
> identify the watch, rather than only an element of the goods, such as
> watch face. Therefore, the goods appear to be identical, or highly similar
> – watches.
>
> If the goods or services of the respective parties are closely related, the
> degree of similarity between marks required to support a finding of

likelihood of confusion is not as great as would apply with diverse goods or services. *Century 21 Real Estate Corp. v. Century Life of America*, 970 F.2d 874, 877, 23 USPQ2d 1698, 1701 (Fed. Cir. 1992) …

SIMILARITY OF THE MARKS
…

While the applicant claims that each word in its mark has been carefully selected to create a distinct commercial impression, the generic word "watch" would only be perceived by viewers as the name of the goods, not necessarily effecting the meaning of the word which creates the major commercial impression in both marks, NOW.

The mere addition of a term to a registered mark does not obviate the similarity between the marks nor does it overcome a likelihood of confusion under Section 2(d). *In re Chatam International, Inc.*, 380 F. 3d 1340, 71 USPQ2d 1944 (Fed. Cir. 2004)
…

For these reasons, the marks, in fact, create the same commercial impression for identical goods – watches."

See Schurin Aff. ¶5, and Office Action attached thereto as Exhibit K.

Third PTO Rejection

Defendant made yet another effort to overcome the PTO's rejection, yet on January 25, 2008, the PTO underline again rejected, for a third time, Defendant's application for registration. This time, the Trademark Examiner responding both to Defendant's new substitute drawing and its argument to overcome Plaintiff's registered mark, stated in relevant part:

"Even if the substitute drawing were acceptable, the initial refusal to register under the provision of Section 2(d) based on cited registration no. 1,446,294 would be maintained.

The goods are identical or highly related:  watches and watch faces.
…

Under the proposed new drawing of the mark, the watch face is the most prominent element of the entire mark, THE NOW WATCH, being in different colors, and being the largest feature of the overall mark; the fact

that the term "watch" is generic and disclaimed entitles it to much less weight in determining the predominant features of the goods, most noticed by potential consumers.  The different size and shade of the letters composing the word NOW in the watch face also emphasize the term as the predominant feature of the overall mark.  As such, while other wording may be contained in the applicant's mark, the term most likely to be remembered by consumers is the term NOW, identical in appearance, pronunciation and meaning to the cited registered mark NOW.

For these reasons, the 2(d) refusal to register is maintained."

See Schurin Aff. ¶7, and Office Action attached thereto as Exhibit M.

Accordingly, on three separate occasions, and in the context of an ex-parte proceeding where Defendant made numerous uncontested arguments in an effort to overcome the PTO rejection, Defendant's application was consistently rejected because of Plaintiff's prior registration rights.  Since all of the decisions of the PTO cited herein are entitled to "great weight" in this proceeding, Plaintiff would respectfully submit that on this basis alone it has established a likelihood of success with respect to the issue of whether or not there is a likelihood of confusion.

## 2. Defendant's "Fair Use" Defense is Without Merit

Defendant has suggested that he intends to rely on a defense of "fair use." The defense of fair use applies only "when the use of the name, term, or device charged to be an infringement is a use, <u>otherwise than as a mark</u>,"   See, 15 U.S.C. §1115(b)(4) (emphasis supplied) and <u>EMI Catalogue P'ship v. Hill, Holiday, Connors, Cosmopulos, Inc.</u>, 228 F. 3d 56, 64 (2d Cir. 2000).  Of course, in this case since Defendant applied for a trademark registration, and uses the "tm" symbol on his website and elsewhere, he can hardly claim that he is not

7

using the marks NOW and THE NOW WATCH as a trademark.  See Exhibits H
to L (Def's Trademark Application and its prosecution) and F (Def's Website
Pages).  In addition, Defendant's use of the trademark THE NOW WATCH on
the top of the box in which the watch is found, which is where a trademark is
typically found, is classic trademark use.  See Mobil Oil Corp. v. Mobile
Mechanics, Inc., 192 U.S.P.Q. 744 (D. Conn. 1976) (Even assuming that
"mobile" describes the "mobility" of defendant's repair services. Defendant's use
is a not a fair use because it is used on signs, letterheads and advertisements as
a mark.)  Moreover, and were this not enough, Defendant uses of THE NOW
WATCH as the name of his business on his website.  (See Exhibit F to
Fernandez Affidavit.)  Indeed, Defendant repeatedly refers to the name of his
business on his website as "The Now Watch."  Finally, the Defendant's domain
name is thenowwatch.com, which use is automatically trademark use as a matter
of law.  See, TCPIP Holding Co., Inc. v. Haar Communications, Inc.,  244 F. 3d
88 (2d Cir. 2001) (Any use of a word as a domain name is use as a mark, and is
not eligible for the fair use defense.)  Accordingly, in this context, it is simply
absurd for Defendant to now conveniently claim that his use of NOW and THE
NOW WATCH is other than as a mark.  See also, 2 J. Thomas McCarthy,
McCarthy on Trademarks and Unfair Competition §11:46 at pp. 11-93 to 11-96
(general discussion of the fair use defense.)

     For the reasons discussed above, Defendant has no legitimate fair use
defense in this case.

### 3.  NOW is a Valid Incontestable Mark Owned by Plaintiff

A certificate of registration issued by the Patent and Trademark Office ("PTO") is "prima facie evidence of the validity of the registered mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark." 15 U.S.C. § 1057(b).  Additionally, marks that have been registered for more than five years are rendered **incontestable** by the Lanham Act and such registration is <u>conclusive evidence</u> of validity and ownership of the mark . 15 U.S.C. § 1065.  As explained in the leading treatise on trademark law, *McCarthy on Trademarks and Unfair Competition,* "Section 33(b) of the Lanham Act provides that if the right to use has become incontestable under §15, then the registration shall be conclusive evidence of the validity of the registered mark and its registration, and of the registrants ownership of the mark, and of the registrant's 'exclusive right to use' the registered mark on the goods and services." 6 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, §32:142 at p. 32-275.  For this reason, incontestable marks are entitled to significant protection.  <u>Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.</u>, 799 F.2d 867, 871 (2d Cir. 1986).

In this case, Plaintiff E. Gluck Corporation is the owner of U.S. Registration Number 1,446,294, issued on July 7, 1987, for the mark NOW for "watches," which registration is now incontestable. See Fernandez Aff. ¶ 9, and Exhibit D.  Consequently, there is no legitimate dispute that Plaintiff owns and has the exclusive right to use this valid mark in connection with watches, and any attacks by Defendant to the validity or ownership of Plaintiff's mark related to its

9

alleged descriptiveness are without legal basis.  See, e.g. 2 J. Thomas

McCarthy, *McCarthy on Trademarks and Unfair Competition* §11:44 at p. 11-

90.16 ("Defendant faced with an incontestable registered mark cannot defend by

claiming that the mark is invalid because it is descriptive and lacks secondary

meaning.") citing <u>Park 'N Fly, Inc v. Dollar Park & Fly, Inc.</u>, 469 US 189, 205 105

S.Ct. 658 (1985) ("Congress expressly provided in §§33(b) and 15 that an

incontestable mark could be challenged on specific grounds, and the grounds

identified by Congress do not include mere descriptiveness.")

Accordingly, and for the reasons discussed herein, it is beyond dispute

that Plaintiff's NOW mark is valid, and that the first prong of the infringement

analysis, trademark validity and ownership, is satisfied.

### 4. Defendant's Use of NOW and THE NOW WATCH Infringes Plaintiff's NOW Mark

The second prong of trademark infringement is established by

demonstrating a likelihood of confusion between the marks at issue.  <u>Lexington</u>

<u>Management</u>, 10 F. Supp.2d at 278.  The key issue in this analysis is whether

consumers are likely to be misled or confused as to the source of the goods in

question because of the entrance of defendant's mark into the marketplace.  *Id*.

at 278; <u>Clinique Laboratories</u>, 945 F.Supp at 551.  In this Circuit, the multi-factor

balancing test set forth in <u>Polaroid Corp. v. Polaroid Elecs. Corp.</u>, 287 F.2d 492

(2d. Cir 1961), *cert. denied*, 368 U.S. 820 (1961) guides the inquiry into whether

a likelihood of confusion exists.  <u>Lexington Management</u>, 10 F.Supp.2d at 278.

These non-exclusive factors include: (1) the degree of similarity between the

marks; (2) actual confusion; (3) the defendant's bad faith; (4) the competitive

10

proximity of the products; (5) the strength of the marks; (6) sophistication of the buyers; (7) the quality of the defendant's product; and (8) the likelihood that the senior user will bridge the gap.  <u>Polaroid Corp.</u>, 287 F.2d at 495.  As discussed below, all of these factors favor Plaintiff.

### a)  <u>Similarity of the Marks</u>

First, when assessing the similarity of marks, the court must consider whether the Defendant's mark, considered alone, will cause confusion among consumers who are somewhat familiar with Plaintiff's mark.  <u>Lexington Management</u>, 10 F. Supp.2d at 280-281; <u>Stern's Miracle-Gro</u>, 823 F. Supp at 1086.

In this case, the term NOW as used on the face of a watch by Defendant is <u>identical</u> to the NOW mark used by Plaintiff.  In addition, the term THE NOW WATCH as used by Defendant on his packaging and website is legally <u>identical</u> to the NOW mark used by Plaintiff.  This mark is identical because Defendant's minor variation in using the additional word "WATCH" is legally insignificant since that word is generic for watches and has no trademark significance.  Indeed, the fact that the term WATCH is generic and of no trademark significance was repeatedly noted by the PTO in its rejection of Defendant's efforts at registration.  See e.g., Exhibit I to Schurin Aff. wherein the Examiner states that "The addition of the generic name, WATCH to the applicant's mark does not obviate likelihood of confusion," and later wherein the Examiner requires that the Applicant disclaim the descriptive word WATCH.   As previously discussed, the decisions of Trademark Examiners while not binding are to be accorded "great" weight.

11

Syntex Laboratories, Inc v. Norwich Pharmacal Co., 437 F. 2d 566, 569 (2d Cir. 1971).

Consequently, since the marks and goods are identical, this important factor overwhelmingly favors Plaintiff.

### b) Actual Confusion

It is black letter law that actual confusion need not be shown to prevail under the Lanham Act, since actual confusion is very difficult to prove and the Act requires only a likelihood of confusion as to source. Lois Sportswear, 799 F.2d at 875. Here, since Defendant has only recently started selling products and it sales to date have been very minimal, to just a few stores, it is not surprising that instances of actual confusion have not yet been uncovered. Id. at 875 (Where allegedly infringing sales have been minimal to date, to require any proof of actual confusion would unfairly penalize the trademark owner for acting promptly to protect its trademark rights before serious damage has occurred.) See also, 4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* §23:12 at pp. 23-84 to 23-88.

Indeed, in this case, the only reason that Plaintiff has not yet uncovered any instances of actual confusion may be because of Defendant's very limited use. However, given the identity of the goods and the marks, it is extremely likely that if Defendant is permitted to continue selling his watches actual confusion will ensue. This is particularly likely given that Defendant's website, www.thenowwatch.com, appears as the first non-sponsored result of a Google search for the words "watch" and "now" and just below a sponsored result for

12

Plaintiff's watches sold at Target. (See Fernandez Aff. ¶14). Accordingly, this factor also favors Plaintiff.

### c) Defendant's Intent

Measuring the Defendant's intent requires additional discovery. Nevertheless, what is currently known, strongly suggests that this factor is also in Plaintiffs' favor. At a minimum, Defendant's decision to use the marks NOW and THE NOW WATCH in the face of the PTO's repeated refusal of its application for registration suggests bad faith. See, Blue & White Products Corp. v. Shamir, 350 F. Supp2d 514, 521 (SDNY 2004) See also Clinique, 945 F. Supp. at 555; Stern's Miracle-Gro, 823 F. Supp. at 108; Dreyfus Fund Inc. v. Royal Bank of Canada, 525 F. Supp. 1108 (S.D.N.Y. 1981) (holding that wrongful intent inferred where defendant knew of plaintiff's mark, had freedom to choose another, but just happened to choose the same one). While more discovery is certainly necessary on this point, from all appearances so far this factor favors Plaintiff.

### d) Competitive Proximity of the Products

It is incontrovertible that the product sold by Plaintiff and Defendant directly compete with one another. Indeed, through its website, Defendant advertises that he is seeking to market his watch to a "diverse range" of consumers through various channels of trade, including "mainstream shopping malls." See Fernandez ¶ 12 and Exhibit F. Since Plaintiff's products are sold to the largest mass merchants in the United States, including Wal-Mart, Target, Kohl's etc., (Fernandex Aff. ¶ 5), many of which stores are located in

"mainstream shopping malls" the products are clearly in close proximity. Accordingly, this factor overwhelmingly favors Plaintiff.

### e)   <u>Strength of the Marks</u>

The strength of plaintiff's mark is analyzed in the context of its distinctiveness and secondary meaning. <u>Stern's Miracle-Gro</u>, 823 F.Supp. at 1083. In the first place, Plaintiff owns an incontestable United States federal trademark registration for the NOW mark as applied to watches. An incontestable federally registered mark is presumed to be distinctive and function as a source indicator. <u>Lois Sportswear</u>, 799 F.2d at 871; <u>Lexington Management</u>, 10 F.Supp. 2d at 277. No proof of secondary meaning is required.

The mark NOW is arbitrary.  "Arbitrary marks comprise those words, symbols, pictures, etc., that are in common linguistic use but which, when used with the goods or services in issue, neither suggest nor describe any ingredient, quality or characteristic of those goods or services." 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, §11.11 at p. 11-18. An example of terms that have been defined as arbitrary include V8 for juice and IVORY for soap.  Although IVORY may describe a desirable feature, the soap product does not contain ivory.  Similarly although V8 juice contains 8 types of vegetable juices, no-one would reasonably know that V8 referred to that. <u>Standard Brands, Inc v. Smidler</u>, 151 F.2d 34 (2d Cir. 1945).  Similarly in this case the term NOW may describe a particular time of day but it does not describe the product, which is a watch.  While Defendant may argue that the plaintiff' mark is suggestive, even if that were the case, it would not matter since

14

a suggestive mark is entitled to the same strong protection as an arbitrary or fanciful mark.  <u>Abercrombie & Fitch Co. v. Hunting World, Inc.</u>, 537 F.2d 4 (2d Cir. 1976)   See, also 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, §11.64 at p. 11-45.

Moreover, and as explained in the Fernandez Affidavit, Plaintiff's sales and advertising are substantial.  (Fernandez Aff. ¶¶ 6 and 8)  With over 4.5 million NOW branded watches sold by Plaintiff just within the last 5 years (with a retail value of over 135 million dollars), and estimated advertising expenses of over $750,000 per year, Plaintiff's NOW brand of watches has a significant presence in the watch field.  Plaintiff's huge sales and advertising bolsters and reinforces the strength of Plaintiff's mark. <u>Charles of the Ritz Group Ltd. v. Quality King Distributors</u>,  832 F.2d 1317, 1321 (2d Cir. 1987)  (Commercial success reinforces the strength of a mark.)

This factor favors Plaintiff.

### f)  <u>Product Quality and Purchaser Sophistication</u>

The quality of products and sophistication of the buyers also favor Plaintiff. Plaintiff has been in the watch business for over 50 years and has obtained a well-known and well–regarded reputation with retail store customers and members of the public. (See, Fernandez ¶ 15)   In contrast, the care and quality of Defendant's products is a complete unknown since Defendant has been in business only a very short time, and is essentially a start-up enterprise. Accordingly, this factor favors Plaintiff.

15

As far as sophistication of buyers is concerned, the law provides that where the products and marks are the same, the sophistication of the buyers cannot be relied upon to prevent confusion. See Banff, Ltd. v. Federate Dept. Stores, Inc., 841 F.2d 486 (2d Cir. 1988); and Clinique, at 556. In any event, both parties sell relatively low priced watches. The price that Defendant is charging for its watches, $45.00, is similar to the price that Plaintiff sells its NOW branded products. (See, Fernandez ¶ 7) Relatively low priced consumer products do not attract the most sophisticated buyers. Sports Authority v. Prime Hospitality Corp., 89 F. 3d 955, 965 (2d Cir. 1995). Accordingly, this factor also favors Plaintiff.

### g) **Bridging The Gap**

When the two parties are already selling the same products in the same market, as are Plaintiff and Defendant in the instant action, "there is no gap to bridge and the likelihood of confusion is greater." *Tri-Star Pictures*, 14 F.Supp. 2d at 356. Therefore, this final factor favors Plaintiff.

### **SUMMARY**

As discussed above, substantially all of the *Polaroid* factors favor Plaintiff, some overwhelmingly. Accordingly, it is clear that that a likelihood of confusion exists.

Having demonstrated both that they own valid trademarks and a likelihood of confusion, Plaintiff has demonstrated a likelihood of success on the merits of its claim for trademark infringement.

16

**B.     The Balance of Hardships Favors Plaintiff**

Although it is not necessary for Plaintiff to prove a balance of hardships tipping decidedly in its favor, the balance of hardships nevertheless overwhelmingly favor Plaintiff.

Plaintiff has been using the mark NOW in the United States since 1986, building up goodwill in the NOW name during the past 22 years.  During this time, Plaintiff's sales and advertising have been extensive.  (See, Fernandez Affidavit ¶¶ 6 and 8)  Defendant cannot dispute that Plaintiff has an important twenty plus year investment in time, money and effort in its NOW brand.  In addition, Plaintiff sells its products to the largest retailers in the world, Wal-Mart, Target etc. (See, Fernandez Affidavit ¶ 5)    If an injunction is not granted, and Plaintiff loses even a single customer or a customer cuts back on its orders until this case is decided, the harm to Plaintiff would be substantial. (See, Fernandez Affidavit ¶ 16)

In stark contrast, Defendant has a comparatively very small investment in his marks.  His use did not begin until November of 2007, and has only made a few sales to date.  Defendant will suffer relatively little harm, compared to Plaintiff, if he is enjoined from using the NOW mark until this case is finally decided.  In addition, Defendant can easily sell watches under any other mark that it chooses.  With only a few months of sales, there is no reason why Defendant cannot change his mark at this time.   Accordingly, the balance of hardships clearly favor plaintiff.

17

C.     **Plaintiff Is Being Irreparably Harmed**

In the Second Circuit, irreparable harm is automatically established by a showing of a likelihood of confusion. Genesee Brewing Co., Inc., v. Stroh Brewing Co., 124 F.3d 137, 142 (2d Cir. 1997); Clinique, 945 F. Supp at 550. Since there is likelihood of confusion between Plaintiff's and Defendant's products, as discussed herein, irreparable harm is established as a matter of law.

In addition, the Fernandez Affidavit details the irreparable harm and damage that will be suffered by Plaintiff should Defendant be permitted to continue to sell watches under NOW and THE NOW WATCH, and to operate his website with the domain name, www.thenowwatch.com.  (See, Fernandez Affidavit  ¶¶ 14 to 16)  Indeed, the existence of Defendant's watches in the marketplace and the operation of its website undermines the exclusivity of the NOW name.

## CONCLUSION

For the reasons discussed herein, Defendant has infringed the NOW name owned by and associated with Plaintiff. Accordingly, Defendant should be enjoined from any manufacture, sale, or promotion of any product under the NOW or THE NOW WATCH names and from the continued ownership and operation of its website with the domain name, thenowwatch.com.

GOTTLIEB, RACKMAN & REISMAN, P.C.
Attorneys for Plaintiff
E. Gluck Corporation
270 Madison Avenue
New York, New York 10016

By: _____
Richard S. Schurin (RS 0199)
Yuval H. Marcus (YM5348)

Dated:     New York, New York
           June 6, 2008

19