IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| E. GLUCK CORPORATION, | ) ) ) ) ) | |
| Plaintiff, | ) | Civil Action No.: 08 Civ. 3466 (VM)(RLE) |
| | ) | |
| v. | ) | |
| | ) | |
| ADAM ROTHENHAUS, | ) | Filed Electronically |
| | ) | |
| Defendant. | ) | |
| | ) ) | |

**REPLY MEMORANDUM IN SUPPORT OF
DEFENDANT'S MOTION FOR SANCTIONS
PURSUANT TO RULE 11, FED. R. CIV. P.**

Starting in April, Defendant gave Plaintiff both oral and written notice of the defects in the complaint and the affidavits of service.  Plaintiff repeatedly refused to amend the complaint, withdraw affidavits with false statements or state the law and facts it had relied on to support its allegations.  Defendant served its Rule 11 Motion (the "Motion") on May 13, 2008.  During the three-week safe harbor period, Plaintiff again refused to take corrective action or respond to Defendant's requests for the factual and legal support allegedly underlying Plaintiff's claims.  Plaintiff did not request an extension of the safe harbor period.  In fact, Plaintiff did not contact Defendant concerning the Rule 11 motion at all. Defendant filed the Motion on June 4, 2008.

It was only after Defendant filed the Motion (Dkt. 5) that Plaintiff filed its First Amended Complaint (Dkt. 10) and wrote the Court to withdraw one of its false affidavits of service.  (Dkt. 16).  Plaintiff still refuses to withdraw the other false affidavit and continues to pursue claims "on information and belief" which are wholly unsupported by fact or law.

Plaintiff engages in a pattern of submitting false and materially misleading statements to the Court in the face of contrary verifiable information, often wholly within its control.  For example, with its Opposition[1] Plaintiff's counsel submitted the sworn statement:  "[O]n or about June 3, 2008, I sent via FedEx a clerk stamped copy of Plaintiff's Amended Complaint to Defendant's counsel. . . ]"  Schurin Aff. ¶ 10.[2]  June 3, 2008 was the last day of the safe harbor period.  It could not be more clear, however, that (1) Mr. Schurin's signed the First Amended Complaint on June 4, 2008, (2) the Clerk

---

[1]      "Opposition" refers to Plaintiff's Memorandum of Law In Opposition to Defendant's Rule 11 Motion and In Support of Plaintiff's Request for Attorney Fees.

[2]      Schurin Aff. refers to the June 18, 2008 Affidavit of Richard S. Schurin, Esq. In Opposition to Defendant's Rule 11 Motion And In Support of Plaintiff's Request for Attorney Fees.

stamped the First Amended Complaint on June 4, 2008 and (3) the Clerk issued the

summons on June 4, 2008.  Shieldkret Reply Dec. Ex. 1.[3]

Immediately after the motion was filed, Plaintiff filed an amended complaint but

failed to serve it properly.  Plaintiff waited another six days to write the Court about

withdrawing one of the challenged affidavits.  Dkt 16, ¶ 3  Plaintiff offers no

explanation for its total failure to take action **<u>during</u>** the safe harbor period or request an

extension.  Plaintiff admits that it wrote to Defendant's counsel only after the safe

harbor period to ask that the Motion be withdrawn based on Plaintiff's preliminary

injunction.[4,5]  Plaintiff did nothing until Defendant filed the Motion.  Despite failing to

take any corrective action until after Defendant filed the Motion, Plaintiff brazenly

asserts it is entitled to attorney fees for the Motion.  Plaintiff's request must be denied.

**1.    Plaintiff Could Not Give the Basis For Its Claims When They Were Filed**

For two months, Plaintiff could not identify any law to support its positions.  For

example Plaintiff's March 25, 2008 demand letter states:

> We also advise you that any and all use of our client's trademark, whether
> as part of an e-mail address, domain name or the like, or in any other way,
> constitutes infringement of our client's trademark rights, unfair
> competition and dilution.

Rothenhaus Dec. Ex. 1, p. 2.  Mr. Rothenhaus wrote back to Plaintiff's counsel the next

day telling them to communicate with his counsel.  *Id.*  They chose not to do so.

---

[3]    Mr. Schurin's story about service of the First Amended Complaint is also wrong.  Shieldkret Reply Dec. ¶ 2, Ex. 1.  Even if Mr. Schurin's account were true, his attempt to serve a summons by FedEx was facially flawed.

[4]    The Motion was served on May 13, 2008.  Plaintiff's counsel wrote on June 12, 2008, "I intend to start working  on the opposition to your Rule 11 motion on Monday June 16th."  Schurin Aff. Ex. F.

[5]    Plaintiff's request (Opposition, p. 1) that the Court consider its Preliminary Injunction papers on this motion is improper.  As discussed, *infra*, the relevant inquiry and time period are what Plaintiff knew and pleaded when it asserted the claims. *Yonkers v Otis Elevator Co.*, 106 FRD 524, 525 (SDNY 1985).

Instead, they filed the complaint.[6]  On April 14, 2008, Defendant asked Plaintiff to

provide legal support for the above proposition:

> Your client has a registration on the three-letter, standard English word
> "now."  . . . Please cite to me a case related to any standard English word
> that supports your above-quoted assertion.

Shieldkret Reply Dec. Ex. 2, p. 2.  Defendant also specifically asked Plaintiff to identify

the factual bases for the cybersquatting allegations:

> What factual bases do you have for claiming that Mr. Rothenhaus has "no
> rights or legitimate interests in respect of the domain name,"
> thenowwatch.com?  Please also provide all factual bases for your assertion
> that the domain "was registered and is being used in bad faith."  Your
> correspondence fails to identify any factual support for your assertions and
> demands, and ignores the factors enumerated in 15 U.S.C. § 1125(d)(1)(B).

*Id.*  Plaintiff refused, stating:

> In response to your letter, if your client agrees to stop selling and recall the
> infringing watches and immediately removes his Website, we will provide
> you with the relevant discovery that you request on an informal basis.
> Otherwise you can seek such discovery in the context of the civil action.

Shieldkret Reply Dec. Ex. 3.  By then, April 17, 2008, the complaint had been filed but

not served.  On the afternoon of May 9, 2008, still before serving the complaint, Plaintiff

threatened to bring a TRO the following week if Defendant did not do everything in the

demand letter.  Motion, pp. 5-6.  Plaintiff was still unable to cite a case to support its

position and Defendant made Plaintiff's counsel aware of the Rule 11 issue:

> You asked me to identify my client's defenses.  I told you that I believed
> you had not made a reasonable inquiry into the facts and law before
> signing the complaint.  Specifically, I asked you whether you had caselaw
> to support your position.  You told me you have been "practicing
> intellectual property law for ten years" and that you were not aware of
> any case where a defendant could use "the same mark on the same

---

[6]     Plaintiff's demand letter was sent by e-mail after 5 p.m. on March 25, 2008 and demanded
compliance by 5 p.m. on March 28, 2008. Rothenhaus Dec. Ex. 1.  The hard copy arrived the next day.
That night, Mr. Rothenhaus wrote back to tell Plaintiff to contact his counsel.  They never did so before
filing the complaint on April 9, 2008.  Plaintiff never explained any legitimate purpose for (1) setting such
a short deadline, (2) failing to contact Defendant's counsel, (3) waiting until April 9, 2008 to file the
complaint and (4) then threatening TRO a month later on May 9, 2008.

goods." I told you my client's use was not a mark. You did not seem to understand the difference. I also asked you whether, in response to my April 14, 2008 inquiry, you had found a case to support your position. You had not.

Shieldkret Motion Dec. Ex. 1.[7] Mr. Schurin claimed he was not aware of an extensive

body of caselaw including the Supreme Court case, *KP Permanent Make-Up, Inc.,*

*Petitioner v. Lasting Impression I, Inc., et al.*, 543 U.S. 111 (2004).[8] Neither in

contemporaneous correspondence, nor in his affidavit does Mr. Schurin dispute any of

these statements. Plaintiff and its counsel never responded to these written requests for

factual and legal support during the safe harbor period. These circumstances support

the conclusion that either (1) at the time of filing, Plaintiff did not have the legal support

necessary to file the complaint in violation of Rule 11(b)(2) or (2) Plaintiff intentionally

sought to needlessly increase the cost of litigation in violation of Rule 11(b)(1) by forcing

Defendant to bring a motion to dismiss or motion for a more definite statement.

**2.     Plaintiff Concedes It Had No Factual Basis for Asserting
        Cybersquatting When Defendant Registered His Domain Name**

Plaintiff admits that its complaint pleaded only three paragraphs related to the

cybersquatting claim. Motion, p.2, Complaint ¶¶s 18, 30, 31. Plaintiff cannot relate any

of the facts it pleaded to the list of factors evidencing bad faith enumerated in 15 U.S.C.

§ 1125(d)(1)(B)(i). It did not attempt to do so in the complaint or the Opposition.

Plaintiff does not dispute that the original complaint cannot state a claim that the

domain was **registered** in bad faith. Plaintiff alleges Defendant knew about Plaintiff's

mark when the Trademark Office referenced it on August 1, 2006 but there is no date

they allege after that when he registered the domain. The complaint contains no facts,

---

[7]     Shieldkret Motion Dec. refers to the May 13, 2008 Declaration of Elizabeth Shieldkret In Support of Defendant's Motion for Sanctions Pursuant to Rule 11, Fed. R. Civ. P.  (Dkt. 6).

only a conclusory allegation that Defendant registered the domain,

www.thenowwatch.com, with knowledge of Plaintiff's federally registered "now"

mark.[9]  Plaintiff continues to pursue this cause of action "on information and belief" in

the hopes that something in discovery will bear out mere speculation.  This serves only

to needlessly increase Defendant's litigation costs.  "Rule 11 is designed to insure that

allegations made in a complaint drafted by a member of the bar of this Court are

supported by a sufficient factual predicate *at the time that the claims are asserted*."  *Yonkers*

*v Otis Elevator Co.*, 106 FRD 524, 525 (SDNY 1985) (emphasis in original).

### 3.  Plaintiff Has No Legal Basis for Asserting Its Cybersquatting Claim Based on Use

With respect to use after the Office Action, Plaintiff now argues that Defendant's

knowledge of Plaintiff's mark coupled with the initial refusal from the Trademark

Office referenced in the complaint are enough to support a finding of bad faith.

However, as Plaintiff well knows but does not tell the Court, Defendant has the ability

to overcome the initial refusal from the Examiner and even appeal an Examiner's final

refusal.  37 CFR §2.61 et seq.  Plaintiff and its counsel are aware from first-hand

experience that a refusal for a "likelihood of confusion" can be overcome and have

argued in the Trademark Office that the Examiner is not in the best position to evaluate

the effect of a mark on consumers or the marketplace.[10]

---

[8]    With respect to using the word "now" on the face of a watch, Plaintiff has never alleged that
Defendant claimed trademark rights in the word or filed a trademark application.
[9]    This allegation is not removed from the First Amended Complaint.  In fact, Plaintiff now alleges
that Defendant registered the mark in February 2005, eighteen months before the Office Action making
Plaintiff aware of the mark.  First Amended Complaint ¶ 22.  Plaintiff never explains what basis it had in
the original complaint for alleging Defendant registered the domain after August 1, 2006.
[10]    Plaintiff's Robowatch mark was refused on the same basis as Defendant's mark.  Mr. Schurin
responded to the Office Action and the mark was allowed.  It is interesting that Plaintiff disagreed with
the Examiner's conclusion and argued that the users of marks may have superior knowledge of their
"own customers and the marketplace in general."  Shieldkret Reply Dec. Ex. 4.

Plaintiff has no caselaw to support its allegation that use of a mark after a refusal (especially a non-final refusal) from the Trademark Office constitutes bad faith.  Instead, Plaintiff attempts to cobble together two separate cases, cases it could not cite when asked for authority before the Motion was served or filed.  Plaintiff cites *Storey v. Cello Holdings, LLC*, 347 F.3d 370 (2d. Cir. 2003) for the proposition that a cybersquatting claim can be based on a bad faith action subsequent to initial registration of the domain. But Plaintiff misstates the holding of *Syntex Laboratories, Inc. v. Norwich Pharmacal Co.*, 437 F. 2d 566, 569 (2d Cir. 1971).  The Trademark Office's refusal to register is "a factor which, **while not conclusive**, is entitled to great weight" (emphasis added) **only** with respect to a determination of likelihood of confusion. [11]  Plaintiff provides no nexus between these two cases for its assertion that use after an Office Action refusal is evidence of bad faith.  Plaintiff's statements to the Examiner when prosecuting its own marks demonstrate that Plaintiff knows an applicant's disagreement with an Examiner, based on its own knowledge of the facts, is not bad faith.  Shieldkret Reply Dec. Ex. 4.

**4.      Plaintiff Had No Legal Basis for Alleging Bad Faith on Its Trademark Claims**

Plaintiff does nothing to address the binding precedent for demonstrating bad faith cited *Arnold v. ABC, Inc.*, 2007 U.S. Dist. LEXIS 5802 (S.D.N.Y. Jan. 29, 2007).  In this Circuit, "'[p]rior knowledge of a senior user's mark does not, without more, create an inference of bad faith.' *Playtex Products, Inc. v. Georgia-Pacific Corp.*, 390 F.3d 158, 166 (2d Cir. 2004) (citation omitted); see also *Savin Corp. v. Savin Group*, 391 F.3d 439, 461 (2d Cir. 2004) ('Nor is prior knowledge of a senior user's trade mark inconsistent with good faith.') (citation and alteration omitted)." *Arnold* at *11.  Plaintiff never addresses the clear direction *Arnold* gives to plaintiffs for pleading Lanham Act claims in this district:

---

[11]   This is significant because fair use is found when there is a likelihood of confusion. *KP Permanent.*

Instead, bad faith requires a showing that Defendants intended "to trade on the good will of the trademark holder by creating confusion as to source or sponsorship." *EMI Catalogue P'ship*, 228 F.3d at 66 (citations omitted). Here, aside from plaintiff's conclusory allegation that "Defendants' acts are deliberate and intended to confuse customers and the public as to the source of Defendant's services and to injure Plaintiff and reap the benefit of Plaintiff's goodwill," plaintiff alleges no set of facts that, if true, would lead to the conclusion that ABC sought to conflate its show, "Boston Legal," with plaintiff's little known, local, cable- access television program. *See Star Industries, Inc. v. Bacardi & Co. Ltd.*, 412 F.3d 373, 389 (2d Cir. 2005). *Arnold* at *12.

Here too, Plaintiff pleaded no set of facts which could support bad faith.  Instead, Plaintiff avers that in its pre-complaint investigation it examined (1) Plaintiff's website, (2) Plaintiff's packaging and (3) Plaintiff's watch.  Opposition p. 5; Schurin Aff. ¶¶ 5a, 5b.  Yet absent from the Complaint are any factual allegations that the watch, packaging or website emulate Plaintiff's, are confusingly similar to Plaintiff's or contain statements, designs or elements which conflate Defendant's product with Plaintiff's.  Plaintiff alleged no facts which would lead to the conclusion that Defendant's acts were deliberate or intended to confuse customers.  Plaintiff does not deny that it discovered the facts favoring Defendant enumerated in the Motion.  Motion pp. 2-3.  If Plaintiff did examine the packaging, watch and website, it also learned that:

1. Each watch package contains a signed card from Mr. Rothenhaus. Rothenhaus Dec. Ex. 3.
2. The watch case, bezel, dial, hands and other prominent elements look nothing like Plaintiff's product.  Rothenhaus Ex. 4, p. 1
3. The website has an extensive discussion of:
   (a)  The concept behind The Now Watch.  Rothenhaus Dec. Ex. 4, p. 4
   (b)  Mr. Rothenhaus's story.  Rothenhaus Dec. Ex. 4, p. 5
   (c)  Non-watch products in development.  Rothenhaus Dec. Ex. 4, p. 6
   (d)  Links to a community of people and their projects.  Rothenhaus Dec. Ex. 5, pp. 7-8
   (e)  Contact information.  Rothenhaus Dec. Ex. 4, p. 9
   which prevent a consumer from believing the source of the site is Plaintiff.

Plaintiff's inability to establish bad faith should have been clear from its investigation and the pleading requirements under *Arnold*.  The lack of factual

allegations in the complaint are evidence the claims should not have been brought.

Moreover, Plaintiff was confronted with overwhelming evidence to negate bad faith.[12]

**5.      Plaintiff Concedes the Statements Made By Its Process Server Were False**

Plaintiff and its counsel agreed that Plaintiff only attempted "nail and mail"

service under CPLR § 308(4).  Opposition, p. 8, (Shieldkret Dec. Ex. 1).  Yet Plaintiff's

affiant filed a sworn statement that he served various documents (including the

electronic filing instructions) "by delivering thereat a true copy of each to KEVIN

SMITH a person of suitable age and discretion."  The affiant said the person he served

"REFUSED TO ALLOW YOUR DEPONENT ACCESS INTO SAID BUILDING."  Dkt 3,

p. 2.  These statements contradict "nail and mail" service and support service under

Rule 4(e)(2)(b), Fed. R. Civ. P.

During the safe harbor period, Defendant had the Declaration of Kevin Velez, the

doorman who allowed the process server access to the building, escorted the process

server to Defendant's door where the process server left an envelope stuck between the

doorknob and the door frame.  Velez Dec. ¶ 4.  (Dkt. 7).  Mr. Velez did not know what

was in the envelope (Velez Dec. ¶ 3) so he did not know to tell Mr. Rothenhaus about

the attempt at service.  Mr. Velez did not accept the envelope on behalf of Defendant; in

fact he was told the server would not leave it with him.   Velez Dec. ¶ 3.[13]

The process server's statements were not only contradicted by the sworn

statements of another person with first-hand knowledge, they were contrary to Mr.

Schurin's own understanding and statements about what had happened.  Mr. Schurin

---

[12]      The First Amended Complaint suffers from the same problem; it merely adds facts alleged on "information and belief" that Plaintiff can have no reasonable expectation will be found with discovery.
[13]      The process server also swore "Kevin Smith" "REFUSED TO STATE TRUE FIRST AND/OR LAST NAME but had information about Defendant's military service. Dkt 3.  These statements are also inconsistent with Mr. Velez's testimony.

believed the process server left the documents on Defendant's door and that mailing

was necessary to perfect service.  Shieldkret Motion Dec. Ex. 1, p. 1; Opposition p. 8

admitting his paralegal was "attempting to accomplish 'nail and mail' service."  Yet he

filed and refused to withdraw the process server's affidavit alleging service under Rule

4(e)(2)(b), Fed. R. Civ. P.  Plaintiff says nothing to deny this in its Opposition.  Instead it

focuses on the fact that it could not get all the right papers in one place for service.[14]

In *In re Pennie & Edmonds LLP*, 323 F3d 86( 2d Cir. 2003) the Second Circuit made

clear that a lawyer has a duty to confront an affiant about contradicted testimony and to

withdraw testimony the lawyer knows to be false.  Here, Mr. Schurin still asserts that

Plaintiff had attempted "nail and mail" service.  Opposition, p. 8.  Yet he refused to

either confront his own witness or withdraw an affidavit which contradicted his own

understanding of which service method had been attempted.  Plaintiff's contention that

the statements are now moot are of no moment.  Magistrate Judge Fox recommended

sanctioning attorneys for making false statements about attempted service[15] even when

the action was dismissed.  *Warner Bros. Records, Inc., et al., v. Chazberry*, 2008 U.S. Dist.

LEXIS 28373 (SDNY April 9, 2008) (Tab 1).

**6.       Plaintiff's Conduct Supports a Finding of Improper Purpose**

Plaintiff does not deny that it improperly threatened a TRO and a motion for a

default judgment.  Motion pp. 5-6.  Plaintiff's written assertion that Defendant would

have to either settle the action or pay for discovery of Plaintiff's factual bases for filing

the complaint further demonstrate the improper purpose of its filing.  Plaintiff does not

---

[14]       The papers left on Defendant's door had no electronic filing instructions or judge's individual practices.  Rothenhaus Dec. ¶ 3.  The FedEx package contained Judge Daniel's individual practices. Rothenhaus Dec. ¶ 4, Ex. 2.  None of the papers contained the electronic filing instructions.  Rothenhaus Dec. ¶¶ 3-5.  This, along with Plaintiff's denials that it was occurring, were also problems.  See also Shieldkret Reply Dec ¶ 5, Exs. 3-6.

try to support the allegations in the original complaint. It only argues that two months later, after amending the complaint, it has found some basis for its claims.

## 7.    Plaintiff's Request for Fees

In light of Plaintiff's conduct, Plaintiff's request for fees should be ignored.

## 8.    Conclusion

For the foregoing reasons, Defendant respectfully submits that the imposition of sanctions against Plaintiff is necessary and proper. Defendant seeks an order (1) dismissing the First Amended Complaint; (2) awarding Defendant attorney fees and costs for the needless expenses Defendant has and will incur if Plaintiff does not withdraw the allegations made wholly on information and belief, (3) attorney fees and costs for the instant motion and (4) such other measures as the Court deems appropriate.

Respectfully submitted,

Dated: June 25, 2008                    By: _Elizabeth Shieldkret_
                                        Elizabeth Shieldkret (ES 0625)
                                        85-86 67th Avenue
                                        Rego Park, NY 11374
                                        (718) 997-0290
                                        es@eshieldkret.com
                                        Attorney for Defendant,
                                        Adam Rothenhaus

---

[15]    Judge Baer declined to sanction because the higher *sua sponte* contempt standard applied.

**Tab 1**

**WARNER BROS. RECORDS, INC., ET AL., Plaintiffs, - against - CHAZ BERRY, Defendant.**

**07 Civ. 1092 (HB)(KNF)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*2008 U.S. Dist. LEXIS 28373*

**April 9, 2008, Decided**

**COUNSEL:** **[*1]** For Warner Bros. Records, Inc., Delaware Corporation, Capitol Records, Inc., Delaware Corporation, UMG Recordings, Inc., Delaware corporation, Arista Records LLC, Delaware limited liability company, Atlantic Recording Corporation, Delaware Corporation, Plaintiffs: Brian Eugene Moran, LEAD ATTORNEY, Richard John Guida, LEAD ATTORNEY, Victor Bruce Kao, Robinson & Cole LLP - NYC.

For Sony BMG Music Entertainment, Delaware general partnership, Plaintiff: Brian Eugene Moran, LEAD ATTORNEY, Richard John Guida, Victor Bruce Kao, Robinson & Cole LLP - NYC.

**JUDGES:** Hon. HAROLD BAER, JR., U.S. District Judge.

**OPINION BY:** HAROLD BAER, JR.

**OPINION**

**OPINION & ORDER**

**Hon. HAROLD BAER, JR., District Judge:**

In this copyright infringement action, Plaintiffs Warner Bros. Records, Inc., Capitol Records, Inc., UMG Recordings, Inc., Sony BMG Music Entertainment, Arista Records LLC and Atlantic Recording Corporation applied to this Court on June 25, 2007 for a judgment by default based on Defendant Chaz Berry's failure to respond to their Complaint. The Court referred Plaintiffs' default judgment application to Magistrate Judge Kevin Nathaniel Fox, who issued a Report and Recommendation on February 11, 2008. Plaintiffs submitted an objection **[*2]** in-part on February 28, 2008.

Plaintiffs accept Magistrate Judge Fox's recommendations that their application for default judgment be denied and their Complaint dismissed. Plaintiffs object, however, to the recommendation that they be ordered to show cause why they did not violate *Fed. R. Civ. P. 11(b)* and to the finding that they made bad faith statements about their attempts to serve Defendant. For the reasons set forth below, this Court declines to adopt the recommendation to issue such an order to show cause. Magistrate Judge Fox's other recommendations, however, are adopted: Plaintiffs' default judgment application is hereby DENIED and this case DISMISSED.

**I. BACKGROUND**

Plaintiffs' Complaint alleges that, without Plaintiffs' consent, Defendant used the "Ka-

2008 U.S. Dist. LEXIS 28373, *

ZaA" online media distribution system to download, distribute and make available for distribution the copyrighted recordings of certain artists in violation of U.S. copyright law, *17 U.S.C. ßß 101-1332*, as amended. Report & Recommendation of Magistrate Judge Kevin Nathaniel Fox (Feb. 11, 2008) ("R&R") 1. More than a year before they filed their Complaint, Plaintiffs had served a subpoena on the Internet service provider, America **[*3]** Online, Inc., which identified Defendant as the person responsible for the Internet protocol address that was using the KaZaA distribution system. America Online, Inc., in response to the subpoena, provided Plaintiffs with an address for Defendant: 1713 Adee Ave., Bronx, NY 10469 (the "Adee Avenue address"). On November 28, 2005, Plaintiffs sent a letter to Defendant at the Adee Avenue address regarding his alleged copyright infringement, but Defendant never responded. Decl. of Patrick Train-Gutierrez in Support of Plaintiffs' Objection In-Part to the R&R ("Train-Gutierrez Decl.") PP 3-4. On February 13, 2007, Plaintiffs filed their Complaint against Defendant.

This Court, by a letter dated March 2, 2007 to Plaintiffs, scheduled a pretrial conference with the parties on April 19, 2007. R&R 5. Two days before the scheduled conference, Plaintiffs requested a 60-day adjournment of the conference because their "attempts at service at Defendant's last-known address were unsuccessful." Plaintiffs stated they were "now conducting a thorough address investigation to locate a current address at which to serve Defendant before the June 13, 2007 service deadline." *Id.* at 5-6. This Court granted **[*4]** Plaintiffs' adjournment request. *Id.* at 6.

On April 25, 2007, Plaintiffs' process server executed an affidavit of service, declaring that on April 9, 2007, at 3:50 p.m., she posted the summons by affixing one copy "in a conspicuous place on the property known as: 1713 Adee Ave Apt. 1 Bronx, NY 10469," the address that had been provided by America Online, Inc. *Id.*

Plaintiffs' process server further indicated that she completed service on April 25, 2007 by depositing a copy of the summons "in a first class post paid envelope properly addressed" to the same address. *Id.* On May 8, 2007, Plaintiffs filed with the Clerk of Court a proof of service by posting and mailing.

Magistrate Judge Fox observed that at the time of Plaintiffs' April 17, 2007 letter to this Court, which sought an adjournment of the pretrial conference so that Plaintiffs could locate Defendant's current address, Plaintiffs "had already resorted to the 'affix and mail' method of service because they affixed the summons to the defendant's last known residence on April 9, 2007." *Id.* at 7. The Magistrate Judge found that "[b]y affixing the summons on April 9, 2007, the plaintiffs demonstrated they never intended to conduct **[*5]** 'a thorough address investigation . . .' because they employed the 'affix and mail' method of service without exercising due diligence to effect personal service pursuant to *CPLR ß 308(1)* and *(2)*." *Id.* Magistrate Judge Fox concluded that Plaintiffs' representation to this Court to the effect that they intended to conduct an investigation to locate Defendant's current address implicated *Fed. R. Civ. P. 11(b)* because it was made for the improper purpose of unnecessary delay. *Id.*

## II. STANDARD OF REVIEW

A district court reviewing a report and recommendation that addresses a dispositive motion "'may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.'" *Donahue v. Global Home Loans & Fin., Inc., No. 05 Civ. 8362, 2007 U.S. Dist. LEXIS 18605, 2007 WL 831816, at *1 (S.D.N.Y. Mar. 15, 2007)* (quoting *28 U.S.C. ß 636(b)(1)*). Under *28 U.S.C. ß 636(b)(1)* and *Fed. R. Civ. P. 72(b)(2)*, parties may submit specific, written objections to the magistrate judge's report and recommendation within ten days after being served with a copy of the recommended disposition. Where a party

2008 U.S. Dist. LEXIS 28373, *

submits objections to a report and recommendation, the district court reviews the parts of the report **[\*6]** to which the party objected under a *de novo* standard of review. *28 U.S.C. ß 636(b)(1)*; *Fed. R. Civ. P. 72(b)(3)*; *see also Donahue, 2007 U.S. Dist. LEXIS 18605, 2007 WL 831816, at \*1.* The district court may adopt those portions of a report to which no objections have been made, as long as those portions are not clearly erroneous. *See, e.g., Darby Trading Inc. v. Shell Int'l Trading & Shipping Co. Ltd., No. 07 Civ. 400, 2008 U.S. Dist. LEXIS 25980, 2008 WL 852787, at \*4 (S.D.N.Y. Mar. 31, 2008).*

### III. DISCUSSION

### A. Recommendations for Dismissal of Plaintiffs' Complaint and Denial of Plaintiffs' Default Judgment Application

The Federal Rules of Civil Procedure provide that a defendant must be served within 120 days after the complaint is filed and must be served by following the state law for service in the state where the district court is located or where service is made, *i.e.*, in this case, New York. *Fed. R. Civ. P. 4(e), (m)*. *Section 308(4) of New York's Civil Practice Law* and Rules ("CPLR") provides that where in-hand personal service or service to a person of suitable age and discretion at certain designated places "cannot be made with due diligence," an alternative service can be made

> by affixing the summons to the door of either the actual **[\*7]** place of business, dwelling place or usual place of abode within the state of the person to be served and by either mailing the summons to such person at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business . . . .

*CPLR ß 308(4)*.

Service by affixing and mailing the summons, or "nail and mail," as described above, is valid only upon showing that (1) diligent efforts were made to effect service by an "in hand" personal delivery to the defendant, or to a person of suitable age followed by a mailing to the defendant ("leave and mail"); and (2) such efforts failed. *See id*. Due diligence is not satisfied where the plaintiffs fail to demonstrate any efforts to ascertain the defendant's place of employment, dwelling place or usual place of abode. Efforts to effect personal service "in hand" and by "leave and mail" must be diligent and not perfunctory. *See Gurevitch v. Goodman, 269 A.D.2d 355, 702 N.Y.S.2d 634, 635 (N.Y. App. Div. 2000)*; *Claerbaut v. E. Long Island Hosp., 117 A.D.2d 772, 499 N.Y.S.2d 102, 103 (N.Y. App. Div. 1986)*. Here, Magistrate Judge Fox's finding that Plaintiffs failed to show "diligent efforts" was not clearly **[\*8]** erroneous.

Even if Plaintiffs had shown diligence, their service was defective under the alternative "nail and mail" method. "The 'nail and mail' provision of the CPLR permits a plaintiff to mail duplicate process to the defendant at his last known residence, but clearly requires that the 'nailing' be done at the defendant's 'actual place of business, dwelling place or usual place of abode.'" *Feinstein v. Bergner, 48 N.Y.2d 234, 239, 397 N.E.2d 1161, 422 N.Y.S.2d 356 (N.Y. 1979)*. Thus, while the "mailing" component of service by "affixing and mailing" may be to the defendant's last known residence, the "affixing" component must be to the door of the defendant's actual place of business, dwelling place or usual place of abode, and not to the defendant's last known residence. To blur the distinction between "last known residence" and "dwelling place" "would be to diminish the likelihood that actual notice will be received by potential defendants." *Id. at 240*. Here, service was defective under the "nail and mail" method because Plaintiffs' process server both affixed

and mailed the summons to Defendant's last known residence.

Therefore, because service on Defendant was defective, Plaintiffs' Complaint is dismissed and their **[\*9]** application for default judgment denied. [1]

> 1    Plaintiffs do not object to the dismissal of their Complaint and denial of their default judgment application in light of their discovery, subsequent to the Report and Recommendation, that Defendant lives in a homeless shelter. Objection 4; Train-Gutierrez Decl. P 12.

## B. Recommendation that Plaintiffs Be Ordered To Show Cause Why They Did Not Violate *Fed. R. Civ. P. 11(b)*

Magistrate Judge Fox recommended that Plaintiffs be ordered to show cause why they did not violate *Fed. R. Civ. P. 11(b)* because their statements to the Court about their attempts to locate Defendant's address "were not made in good faith" and because they "failed to show they could not make 'in hand' and 'deliver and mail' service with due diligence," as required by the applicable rules of service. R&R 7. Magistrate Judge Fox also found that Plaintiffs' representations to this Court in their request to adjourn the pretrial conference were made for the improper purpose of unnecessary delay.

*Rule 11(b)* provides in pertinent part:

> By presenting to the court a pleading, written motion, or other paper . . . an attorney or unrepresented party certifies that to the best of the person's **[\*10]** knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to

harass, cause unnecessary delay, or needlessly increase the cost of litigation;

> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .

*Fed. R. Civ. P. 11(b)*.

Plaintiffs argue that any inaccuracy regarding service in their April 17, 2007 letter to this Court, in which they requested an adjournment of the pretrial conference, resulted from unauthorized actions by their process server and a breakdown in communication among a paralegal and attorneys at Plaintiffs' counsel's law firm. "After two failed attempts to serve Defendant personally with the Summons and Complaint, the process server, without Plaintiffs' counsel's authorization or knowledge, chose to post the Summons and Complaint **[\*11]** in a conspicuous location at Defendant's [last known] residence [at the Adee Avenue address] on April 9, 2007." Plaintiffs' Objection In-Part to R&R (Feb. 28, 2008) ("Objection") 2; *see* Train-Gutierrez Decl. P 7. Only afterward did the process service company notify a paralegal at Plaintiffs' counsel's office that the Summons and Complaint had been posted. Train-Gutierrez Decl. P 7. The paralegal, however, according to Plaintiffs, never informed any attorney that "nail and mail" service had been attempted, and Plaintiffs' lawyers did not become aware of such attempt at service until they received the proof of

2008 U.S. Dist. LEXIS 28373, *

service on April 25, 2007. *Id.* PP 7-8; Objection Ex. C. Therefore, Plaintiffs assert that, at the time of their request for an adjournment of the pretrial conference, they were not aware of the attempted "nail and mail" service, and thus told the Court in good faith that they were still trying to locate Defendant's address. Objection 5; Train-Gutierrez Decl. P 8.

Plaintiffs further contend that they made a number of attempts to contact Defendant, including by sending him the Court's April 18, 2007 Order setting a new pretrial conference date, but that Defendant never responded **[*12]** and failed to appear at the conference. Objection 3; Train-Gutierrez Decl. P 10.

Plaintiffs entreat this Court that their request for an adjournment of the conference

> was made in good faith and with the purpose of providing Defendant time to confer with Plaintiffs and to respond to the Complaint. Plaintiffs never sought to delay these proceedings, but only to make sure they had done what they could to locate Defendant and provide him an opportunity to respond.

Objection 5.

While Plaintiffs' lawyers should be faulted for failing to keep closer tabs on their process server and for failing to better supervise their paralegal, their actions do not rise to the level of a *Rule 11(b)* violation. Plaintiffs' lawyers might have been sloppy in their attempts to serve Defendant, but giving them as officers of the Court the benefit of the doubt, all their representations to this Court were, to the best of their knowledge, information and belief, not for the improper purpose of unnecessary delay. The Second Circuit has noted that *sua sponte*

show-cause orders under *Fed. R. Civ. P. 11(c)(1)(B)* "will ordinarily be issued only in situations that are akin to a contempt of court." *In re Pennie & Edmonds LLP, 323 F.3d 86, 90 (2d Cir. 2003)*. **[*13]** Such is not the case here.

Plaintiffs' lawyers, in another "office failure," missed Magistrate Judge Fox's October 24, 2007 deadline for submission of an inquest memorandum with supporting affidavits. Their excuse here is the well-worn "clerical error," i.e., the office clerk, "mis-calendared this date," and they "sincerely apologize" for their failure. Objection 4-5. As Plaintiffs have agreed to dismissal of their Complaint, their failure to submit a memorandum in support of a default judgment is no longer relevant. Once again, while Plaintiffs' lawyers and lawyers generally must keep careful records of deadlines and all court dates, the error is not sufficiently akin to a contempt of court so as to warrant a show-cause order under *Fed. R. Civ. P. 11(c)(1)(B)*.

## IV. CONCLUSION

For the foregoing reasons, the Report and Recommendation of Magistrate Judge Kevin Nathaniel Fox is adopted in all respects except for the recommendation that Plaintiffs be ordered to show cause why they did not violate *Fed. R. Civ. P. 11(b)*. Therefore, Plaintiffs' Complaint is hereby DISMISSED without prejudice and Plaintiffs' application for a default judgment is DENIED. The Clerk of Court is instructed to close **[*14]** this case and remove it from my docket.

**IT IS SO ORDERED.**

**New York, New York**

**April 9, 2008**

/s/ Harold Baer, Jr.

**U.S.D.J.**