IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| E. GLUCK CORPORATION, | ) ) ) ) | Civil Action No.: 08 Civ. 3466 (VM)(RLE) ECF Case |
| Plaintiff, | ) ) | |
| v. | ) ) | Filed Electronically |
| ADAM ROTHENHAUS, | ) ) | |
| Defendant. | ) ) ) | |

**DEFENDANT ADAM ROTHENHAUS'S OPPOSITION
TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

# Table of Contents

I.    INTRODUCTION ................................................................................................1

II.   FACTS ...............................................................................................................2

III.  ARGUMENT .....................................................................................................2

   A.    Plaintiff Will Not Suffer Irreparable Harm ................................................3

     1.    Plaintiff Is Not Entitled To
      A Presumption of Irreparable Harm ...........................................................3

     2.    Plaintiff's Acts and Omissions
      Defeat Its Claim Of Irreparable Harm  ......................................................4

     3.    Plaintiff's Improper Threats ......................................................................5

     4.    Plaintiff's Delay and Failures to Police Its Mark .....................................7

   B.    Defendant Will Be Irreparably Harmed By an Injunction ..........................9

   C.    Plaintiff's "Now" Use Is Not Protectable .................................................9

     1.    "Now" Does Not Act As A Source Identifier.............................................9

     2.    Plaintiff's Fraud on the PTO ...................................................................11

     3.    Plaintiff Does Not Have an "Incontestible" Mark...................................14

   D.    Plaintiff Cannot Demonstrate a Likelihood of Confusion .......................14

   E.    Plaintiff Has Not Pleaded, Let Alone Shown A
     Likelihood of Success on, a Cybersquatting Claim...................................20

   F.    Plaintiff's Cannot Prevail Because Defendant's Use is a Fair Use. .....................22

     1.    "Now" is Descriptive of The Goods.......................................................23

     2.    "Now" and Mindfulness ..........................................................................24

     3.    Good Faith ...............................................................................................25

IV.  CONCLUSION ................................................................................................25

# Table of Authorities

Page

## Cases

*24 Hour Fitness USA, Inc. v. 24/7 Tribeca Fitness, LLC*
447 F.Supp 2d 266 (S.D.N.Y. 2006)
*aff'd.*, 247 Fed. Appx. 232 (2d Cir. 2007) ........................................................ 15

*Arnold v. ABC, Inc.,*
2007 U.S. Dist. LEXIS 5802 (S.D.N.Y. Jan. 29, 2007) ................................. 18-19

*Brennan's, Inc. v. Brennan's Rest., L.L.C.,*
360 F.3d 125 (2d Cir. 2004) ................................................................................. 1

*Bristol-Myers Squib Co. v. McNeil-P.P.C., Inc.,*
973 F.2d 1033 (2d Cir. 1992) ........................................................................... 15

*Citibank, N.A. v. Citytrust,*
756 F.2d 273 (2d Cir. 1985) ................................................................................. 7

*Cosmetically Sealed Industries, Inc., v. Cheesebrough-Pond's USA Co.,*
125 F.3d 28 (2d Cir. 1997) ................................................................................. 24

*eBay, Inc. v. MercExchange,*
*LLC,* 547 U.S. 388 (2006) .................................................................................... 3

*Gruner & Jahr v. Meredith Corp.,*
991 F.2d 1072 (2d Cir. 1993) ...................................................................... 14, 15

*Hachette Fillipacchi Presse v. Elle Belle, LLC,*
85 USPQ2d 1090 (TTAB 2007) ......................................................................... 13

*ITC Ltd. et al v. Punchgini, Inc. et al.,*
482 F.3d 135, 147 (2d Cir. 2007) ...................................................................... 11

*KP Permanent Make-Up Inc. v. Lasting Impressions I, Inc.,*
543 U.S. 111 (2004) ..................................................................................... 1, 23

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.,*
454 F.3d 108 (2d Cir. 2006) ........................................................................ 2-3, 9

*McGregor-Doniger, Inc. v. Drizzle, Inc.,*
599 F.2d 1126 (2d Cir. N.Y. 1979) ............................................................ 15, 16, 17

*Medinol, Ltd. v. Neuro Vasx Inc.,*
67 USPQ2d 1205 (TTAB 2006) ......................................................................... 14

*N. Am. Med. Corp. v. Axiom Worldwide, Inc.,*
    522 F.3d 121 (11th Cir. 2008). .............................................................. 4

*Park 'N Fly, Inc. v. Dollar Park 'N Fly, Inc.,*
    469 U.S. 189 (1985) ........................................................................... 14

*Phillip Morris v. Inc. v. R.J. Reynolds, Tobacco Co.,*
    188 U.S.P.Q. 289 (S.D.N.Y. 1975) ......................................2, 9, 10, 15-16

*Polaroid Corp. v. Polarad Electronics Corp.,*
    287 F.2d 492 (2d Cir. 1961) ............................................................... 14

*Syntex Laboratories, Inc. v. Norwich Pharmacal Co.,*
    437 F. 2d 566, 569 (2d Cir. 1971)....................................................... 19

*TCPIP Holding Co., Inc. v. Haar Communications, Inc.,*
    244 F.3d 88 (2d Cir. 2001). .......................................................... 16, 20

*Tom Doherty Associates, Inc. v. Saban Entertainment, Inc.,*
    60 F.3d 27 (2d Cir. 1995) ................................................................. 3, 9

*Torres v. Cantine Torresella S.r.l.,*
    808 F.2d 46 (Fed. Cir. 1986) ............................................................. 13

*Tough Traveler, Ltd. v. Outbound Prods.,*
    60 F.3d 964 (2d Cir.1995) ................................................................... 4

*W.B. Marvin Mfg. Co. v. Howard Berer Co., Inc.,*
    33 Fed. Appx. 588, 2002 U.S. App. LEXIS 8037 (2d Cir. 2002) ........................ 8

## Statutes

15 U. S.C. § 1115.............................................................................. 14

15 U.S.C. § 1116 ................................................................................. 3

15 U.S.C. § 1119................................................................................ 14

15 U.S.C. § 1127 ............................................................................. 9, 11

## Regulations

TMEP § 402. .................................................................................... 7

TMEP § 1202.03(f)(i) ........................................................................ 23

TMEP § 1209.03(m) ................................................................................... 21

TMEP § 1213.02 ......................................................................................... 13

## I.  INTRODUCTION

Defendant, Adam Rothenhaus, submits this Opposition to Plaintiff's Motion for Preliminary Injunction.  Plaintiff's claims in its motion are wholly inadequate to support its request for the extraordinary relief of a preliminary injunction.  Plaintiff[1] is not entitled to a preliminary injunction because it has not, and will not, suffer any irreparable harm and it is not likely to prevail on the merits.  Moreover, Defendant has been harmed by Plaintiff's actions and will suffer irreparable harm if he is enjoined.

Plaintiff cannot demonstrate that it will suffer irreparable harm.  The harm it alleges is speculative, improbable and illogical.  Plaintiff was on notice of Defendant's trademark filing for "The Now Watch" and filing for a domain name and delayed action for over two years, not only negating any possible claim of irreparable harm, but also allowing Defendant to put effort and resources into setting up his venture.

In order to show a likelihood of success on the merits, Plaintiff has the burden of proving (1) that it owns a valid mark that merits protection, and (2) Defendant's mark results in a likelihood of confusion between the two marks to a substantial number of consumers.  *Brennan's, Inc. v. Brennan's Rest., L.L.C.*, 360 F.3d 125, 129 (2d Cir. 2004). Plaintiff cannot demonstrate a valid mark because:  (a) it acquired its registration through fraud on the Patent and Trademark Office ("PTO"); (b) it did not use "Now" alone enough to develop common law rights; and (c) it has abandoned the use of "Now" alone.  Moreover, there is no likelihood of confusion between the two "marks." Even if Plaintiff overcomes all the defects in its mark and the absence of likelihood of confusion, Defendant still prevails on his fair use defense. *KP Permanent Make-Up Inc. v. Lasting Impressions I, Inc.*, 543 U.S. 111, 120 (2004).

---

[1]      Plaintiff is the manufacturer of "Armitron" watches, one of the largest watch companies in the United States.  Dkt 4, ¶ 2.

Plaintiff claims protection for the single word, "Now" for watches. The evidence demonstrates, however, that Plaintiff does not use "Now" to designate the source of its watches; it uses "Armitron" or some form of "Armitron" and "Now" together. Accordingly, Plaintiff's claimed "incontestable" registration was (1) obtained through a series of misrepresentations to the Patent and Trademark Office ("PTO") and has been (2) abandoned for more than three years, if it was ever used. Plaintiff's retailers market its product as "Armitron Now" or just "Armitron." Plaintiff's "Now" mark alone fails the test for whether it properly identifies the source of the goods. *Philip Morris, Inc. v. R. J. Reynolds Tobacco Co.*, 188 U.S.P.Q. 289, 293 (S.D.N.Y.1975).

Even were Plaintiff's use of "Now" without "Armitron" protectible, Defendant's use of "The Now Watch" does not create a likelihood of confusion. Defendant's use is different in every legally significant respect – including appearance, sound, target consumers, and message – to prevent any likelihood of confusion.

## II.    FACTS

The facts are set forth in the supporting Declarations of Adam Rothenhaus and Elizabeth Shieldkret filed herewith, in the Declarations filed in connection with Defendant's Motion for Sanctions Pursuant to Rule 11, Fed. R. Civ. P. (Dkt. 6, 20, 21) and in the exhibits annexed to Defendant's Motion Pursuant To Rule 65(A)(2), Fed. R. Civ. P. And Rule 201, Fed. R. Evid.

## III.    ARGUMENT

At a minimum, in order to obtain a preliminary injunction, Plaintiff must demonstrate irreparable harm absent injunctive relief, and either a likelihood of success on the merits, or a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in Plaintiff's favor. *Louis Vuitton*

*Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 113-14 (2d Cir. 2006).  Plaintiff has not –

and cannot – meet this standard for the extraordinary relief it requests.

Here, however, Plaintiff requests substantially all the relief which would be

available at trial and the harm to Defendant – closing down his business – will be

impossible to undo.  In this Circuit, "if a preliminary injunction will make it difficult or

impossible to render a meaningful remedy to a defendant who prevails on the merits at

trial, then the plaintiff should have to meet the higher standard of substantial, or clear

showing, of likelihood of success to obtain preliminary relief."  *Tom Doherty Associates,*

*Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 35 (2d Cir. 1995).[2]

### A.  Plaintiff Will Not Suffer Irreparable Harm

#### 1.  Plaintiff Is Not Entitled To A Presumption of Irreparable Harm

Plaintiff claims "In the Second Circuit, irreparable harm is **automatically**

established by a showing of a likelihood of confusion."  Pl Mem. at 18.[3]  The Supreme

Court, however, states, "this Court has consistently rejected invitations to replace

traditional equitable considerations with a rule that an injunction **automatically**

follows" even a final determination of infringement.  *eBay, Inc. v. MercExchange, LLC*,

547 U.S. 388, 393-94 (2006) (emphasis added).

In *eBay*, the Supreme Court held that there are no categorical rules for issuing

injunctive relief.  The Court cited provisions in the Copyright and Patent Acts which

use the same language as the Lanham Act, 15 U.S.C. § 1116(a).  The Eleventh Circuit

---

[2]        Defendant believes the heightened standard should apply.  Defendant also
prevails under the lesser standard, which is addressed in detail *infra*.

[3]        "PI Mem __" refers to Plaintiff's Memorandum of Law in Support of Its Motion
for Preliminary Injunction, Dkt. 12.

recently eliminated the presumption of irreparable harm after a detailed analysis

finding that the *eBay* decision applies to preliminary injunctions in trademark cases:

> Nonetheless, although established law entitles NAM and Adagen to this presumption in the trademark infringement context, a recent U.S. Supreme Court case calls into question whether courts may presume irreparable harm merely because a plaintiff in an intellectual property case has demonstrated a likelihood of success on the merits. See generally <u>eBay Inc. v. MercExchange, L.L.C.</u>, 547 U.S. 388, 126 S. Ct. 1837 (2006).
>
> *          *          *
>
> Although eBay dealt with the Patent Act and with permanent injunctive relief, a strong case can be made that eBay's holding necessarily extends to the grant of preliminary injunctions under the Lanham Act. Similar to the Patent Act, the Lanham Act grants federal courts the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable." 15 U.S.C. § 1116(a) (2006). Furthermore, no obvious distinction exists between permanent and preliminary injunctive relief to suggest that eBay should not apply to the latter. Because the language of the Lanham Act – granting federal courts the power to grant injunctions "according to the principles of equity and upon such terms as the court may deem reasonable" – is so similar to the language of the Patent Act, we conclude that the Supreme Court's eBay case is applicable to the instant case.

*N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1227-28 (11th Cir. 2008).

**2.      Plaintiff's Acts and Omissions
<u>Defeat Its Claim Of Irreparable Harm</u>**

Even when the law recognized a presumption of irreparable harm, "any such

presumption of irreparable harm is inoperative if the plaintiff has delayed either in

bringing suit or in moving for preliminary injunctive relief . . . because the 'failure to act

sooner undercuts the sense of urgency that ordinarily accompanies a motion for

preliminary relief and suggests that there is, in fact, no irreparable injury.'" *Tough*

*Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d Cir.1995). (citations omitted).

Plaintiff's own actions and omissions demonstrate that it has not been – and will

not be – irreparably harmed without an injunction.  Plaintiff waited as long as two years

before contacting Defendant who then immediately requested Plaintiff's counsel to

4

contact Defendant's attorney. Plaintiff did nothing. It did not file suit for weeks. Even after filing suit, Plaintiff failed to serve the complaint. Plaintiff only sought preliminary relief as a pressure tactic, threatening a TRO on a Friday afternoon, to get Defendant to capitulate to Plaintiff's demands.

### 3. Plaintiff's Improper Threats

In an obvious attempt to pressure the Defendant, on March 25, 2008, Plaintiff e-mailed Defendant a "cease and desist" letter making numerous demands and requiring compliance within three days. DX DA. The next day, Mr. Rothenhaus wrote back requesting Plaintiff contact Mr. Rothenhaus's counsel. *Id.* Despite the three-day deadline, Plaintiff did not.

Because there was no urgent need for relief, Plaintiff waited two weeks to file its complaint and then delayed another two weeks before even attempting to serve it.[4] Despite rapid notice from Defendant of Plaintiff's failure to serve, Plaintiff made no further attempt at service.

Instead, on Friday, May 9, 2008 – a month after the Complaint had been filed – Plaintiff's counsel threatened an improper motion for a TRO for the following week if Defendant did not agree that afternoon to every demand in its March 25, 2008 letter. (Dkt. 6, ¶ 4; Ex. 1). Plaintiff could not identify any emergency justifying a TRO after weeks of delay. *Id.* The clear conclusion is Plaintiff threatened the TRO purely for the

---

[4]    Plaintiff attempted service by affixing (on April 21, 2008) and mailing (on April 23, 2008) under CPLR 308(4) without making the requisite prior attempts at personal service. Accordingly, that service failed.

purpose of coercing Mr. Rothenhaus to capitulate to the demands of Plaintiff's cease and desist letter.  It is telling that Plaintiff never brought the TRO motion.[5]

Plaintiff's threats of numerous improper motions and its start-and-stop conduct in bringing this motion make clear that even Plaintiff does not believe it is faced with irreparable harm.  It appears the purpose of the motion was to pressure Mr. Rothenhaus to abandon his legitimate rights.  Had Plaintiff truly believed it needed the extraordinary relief of a preliminary injunction, it would have:  (1) contacted Defendant's counsel in March when Defendant immediately responded to Plaintiff's letter; (2) filed the Complaint in March; (3) not delayed two weeks to even attempt service of the Complaint; (4) served the Complaint properly when Defendant promptly reported the defects in service; (5) sought an immediate TRO instead of threatening one weeks later and never pursuing it; (6) followed the Court's instructions to set a schedule before filing the motion; (7) served the First Amended Complaint; and (8) promptly filed the motion, instead of waiting over two months.

Plaintiff's only statement of how it is being harmed during the litigation is vague and speculative:  "If Defendant is permitted to continue to sell NOW watches, Plaintiff **may** lose sales.  Since all of Plaintiff's customers are large retailers, the loss of a single customer would cause a significant loss of business."  Fernandez Aff. ¶ 16.[6]  (emphasis added).  Plaintiff offers no explanation of how Defendant's sales through different channels would lead to one of their few large customers refusing to carry their product.

---

[5]    In the May 9, 2008 conversation, Plaintiff's counsel also threatened an improper motion for a default; the threat was improper because (1) the service was flawed and (2) Plaintiff misrepresented the response date under CPLR 308(4).  Dkt. Text 3, 4/23/2008.

[6]    "Fernandez Aff. __" refers to the June 5, 2008 Affidavit of Bernard Fernandez in Support of Plaintiff's Motion for a Preliminary Injunction, Dkt. 13.

### 4. __Plaintiff's Delay and Failures to Police Its Mark__

In the First Amended Complaint, Plaintiff alleges that Mr. Rothenhaus registered the domain name, www.thenowwatch.com in February 2005. Dkt. 10, ¶ 22. Plaintiff concedes that Mr. Rothenhaus's registration was publicly available[7] and contained accurate contact information.[8] Yet, Plaintiff waited until March 25, 2008 to convey their cybersquatting accusations. Plaintiff has no explanation for why it delayed over three years by its own calculation to assert these claims.

Plaintiff also waited over two years after Defendant filed his Intent To Use ("ITU") trademark application for "The Now Watch" to contact Mr. Rothenhaus. Any alleged harm to Plaintiff is therefore the result of Plaintiff's failure to timely assert its rights. Plaintiff made a tactical decision to prevent Defendant from acquiring declaratory judgment jurisdiction. Preliminary injunction relief is not available in this situation. *Citibank, N.A. v. Citytrust*, 756 F.2d 273 (2d Cir. 1985) (ten week delay defeated claim of irreparable harm.)

It is not in dispute that Mr. Rothenhaus filed his ITU application for "The Now Watch" on February 7, 2006. He applied on-line and the application was almost immediately made searchable and available to the public at any time pursuant to the rules governing trademark filing. TMEP 402.[9] It is also not in dispute that trademark owners have a duty to "police" their marks. As Plaintiff described this duty:

> It is black letter law that a trademark owner has duty [sic. a duty] to police and enforce its trademark rights, and the failure to do so may weaken a

---

[7]     "WhoIs" contains publicly available domain registration information. Mr. Rothenhaus's information is not blocked from public view. DX DR.

[8]     (Dkt 5, p. 3; 17)

[9]     "TMEP __" refers to the Trademark Manual of Examining Procedure (TMEP) - 5th Edition. DX DS.

mark or even result in abandonment. Plaintiff's Opposition to Defendant's Rule 11 Motion, Dkt 17, p. 7.

Plaintiff has refused to state when it became aware of Mr. Rothenhaus's February 7, 2006 trademark application. Plaintiff either failed to police its mark or intentionally waited two years to the detriment of Defendant before asserting its alleged rights.

Defendant's publicly available trademark application was not the only use of "Now" Plaintiff believed was infringing but failed to stop. Plaintiff allowed an earlier use of the mark by another to go on for years. Another applicant obtained a trademark registration for "Now" for "a bracelet having the appearance of a watch." The applicant claimed first use in August 2004 and first use in commerce in August 2005. The application was filed on July 5, 2005 and issued as Registration No. 3,301,750 (DX DT) on October 2, 2007. The product was available on the Internet. Earlier this year, Plaintiff filed an action in this district claiming infringement by the other registered mark, *E. Gluck v. The Now Project et al.*, 08 Civ. 3090. Thus, it appears that Plaintiff was not policing its mark in the PTO or on the Internet[10] for a substantial period of time.

Defendant's publicly-available ITU application disclosed his *bona fide* intent to use "Now" in connection with watches. Plaintiff had the opportunity to contact Defendant **before** he manufactured any watches. Instead, Plaintiff waited until Defendant would be harmed by interim relief. Where a plaintiff could have avoided harm to the defendant by giving notice sooner, the plaintiff was not entitled to a preliminary injunction. *W.B. Marvin Mfg. Co. v. Howard Berer Co., Inc.,* 33 Fed. Appx. 588, 2002 U.S. App. LEXIS 8037 (2d Cir. 2002)(attached).

---

[10]    The product can still be seen at http://gizmodo.com/gadgets/the-time-is-nigh/now-watch-is-always-right-278824.php. DX DU.

**B.    Defendant Will Be Irreparably Harmed By an Injunction**

The Second Circuit has recognized irreparable harm where a party is threatened with the loss of a business. *Tom Doherty Associates,* at 37. Where the availability of a product is essential to the life of the business, the loss of that product will cause irreparable harm. *Id.* at 38. The harm to Defendant is particularly great because the watch is his only product and he is just getting his business established. DX DG. With an injunction he will miss the holiday season and appear unreliable to repeat and referred customers. The injunction will effectively "obliterate" (*Id.* at 29) his project before he has had a full opportunity to be heard on the merits.

**C.    Plaintiff's "Now" Use Is Not Protectible**

**1.    "Now" Does Not Act As A Source Identifier**

A "'trademark' includes any word, name, symbol, or device, or any combination thereof used by a person, to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others **and to indicate the source of the goods**, even if that source is unknown." 15 U.S.C. § 1127.

If "Now" alone does not both create a separate and distinct commercial impression and serve to indicate Plaintiff as the source, it fails as a mark. *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 115 (2d Cir. 2006).

In this district the test of whether a word is associated with a product can be formulated by a neutral question to the consumer. *In Phillip Morris v. Inc. v. R.J. Reynolds, Tobacco Co.*, 188 U.S.P.Q. 289 (S.D.N.Y. 1975), that question was: "respecting cigarettes, will you tell me what the word Lights means to you?"

That seems to us to be a perfect test for secondary meaning. If the descriptive term Lights had acquired secondary meaning, then consumers would respond that Lights meant Marlboro cigarettes to them. That is what acquiring secondary meaning is about: a descriptive word becomes inextricably associated with a product in the consumer's mind. Id. at 293, n.4.

In this case there is no evidence that with respect to watches, consumers associate "Now" with Plaintiff.  Consumers associate "Armitron" with Plaintiff.

In *Phillip Morris*, the Court also recognized that consumers may be attracted by the well-known mark, and giving that mark prominence can prevent the lesser-known mark from acquiring trademark characteristics:

> First, while Philip Morris may have intended to use "Lights" as a trademark, "Lights" did not "take on trademark characteristics" because Philip Morris did not "give * * * [Lights] * * * a conspicuous position in its marketing and display techniques, without giving prominence to the mark * * * [Marlboro]." *Feathercombs, Inc. v. Solo Products Corp., 306 F.2d 251, 256, 134 USPQ 209, 213-214 (2d Cir. 1962).* Marlboro was the trademark name used to identify the product; Lights was the descriptive term which distinguished the cigarette from "Menthols" or "100's." *Id.*

As the numerous samples put into evidence by Plaintiff show, the mark Plaintiff itself uses to identify the source of its watches is "Armitron" or some combination of "Armitron" and "Now."  They have used "Armitron Now," "Now by Armitron," "The Now Collection by Armitron" as well as "Armitron Ladies' Now." Fernandez Aff. Exs. B, C.  DX DV.  If "Now" alone truly acted as the source identifier for the goods, "Armitron" would not feature so prominently on the goods, displays and advertising.

Plaintiff contends that when it conducted a Google search for the words "watch" and "now" Defendant's site is the first non-sponsored result. PI Mem. At 12-13.[11]  A Google search for "Armitron" and "now" turns up dozens of sites with Plaintiff's watches and not Defendant's site.  DX DJ. Plaintiff's own research is consistent with the

---

[11]    There are two obvious problems with Plaintiff's "evidence."  First, the Memorandum references a search for "watch" and "now" while Fernandez Aff. ¶ 14 describes a search for "now" and "watch."  Second, Mr. Fernandez is testifying to a search his attorneys conducted, a matter for which he avers no personal knowledge; his testimony should not be considered under the Court's Individual Practices II C.

DX DH is the first 10 results of a Google search for "watch" and "now."  DX DI is the first 10 results of a Google search for "now" and "watch."

inescapable conclusion:  Plaintiff does not use "Now" as a trademark for watches; it uses "Armitron Now" or some other combination.

The websites of Plaintiff's identified retailers reveal they do not consider "Now" to be a separate identifier of the watches.  Sears describes Plaintiff's watches as simply "Armitron."  DX DK.  Wal-Mart describes the watches only as "Armitron" and uses "Armitron America's Watch" with the watches.  DX DL.  J.C. Penney lists the "brand" as "Armitron Now" or "Armitron®Now™"  DX DM.  Target uses  "Armitron" or "Ladies' Armitron."  DX DN.  Amazon.com uses "Armitron" or "Armitron Now."  DX DP.  Printouts from other retailers comprise DX DQ.

This evidence demonstrates that the people who communicate with customers universally recognize that "Now" is an insufficient indicator of source.  Plaintiff has allowed this to continue so that, even if it did once use "Now" alone, that use has been abandoned.  Plaintiff's own hand-picked exhibits contradict any claim that Plaintiff has used "Now" alone for more than three years.  Non-use for three consecutive years is *prima facie* evidence of abandonment.  15 U.S.C. § 1127.  "Once abandoned, a mark returns to the public domain and may, in principle, be appropriated for use by other actors in the marketplace."  *ITC Ltd. et al v. Punchgini, Inc. et al.*, 482 F.3d 135, 147 (2d Cir. 2007).

### 2.    Plaintiff's Fraud on the PTO

Plaintiff's exhibits show the mark Plaintiff uses to identify the source of the watch is "Armitron" or some combination of "Armitron" and "Now."  What is striking, however, is that none of the evidence submitted to the Court – copies of watches, catalogs, advertisements, display cases – was ever shown to the PTO in the course of 21 years of registrations, affidavits and renewals.  Plaintiff hid the actual use from the PTO

11

because "Now" alone would not be registrable when the real identifier for the consumer is "Armitron."

Plaintiff, however, filed for its "Now" trademark without ever telling the PTO that the mark is used in combination with Plaintiff's widely known "Armitron" mark. Despite its duty to disclose material facts in the *ex parte* proceeding, Plaintiff went to great pains to hide how the mark is actually used on the watch and in the advertising, displays and other materials. Plaintiff's material omissions and misrepresentations prevented the PTO from passing on whether the "Now" mark – as it is actually used by Plaintiff – is registrable. Plaintiff's fraud renders its registration void.

Specifically, Plaintiff obtained the mark by telling the PTO that the mark was only "Now" instead of "Armitron Now" or "Now by Armitron." Instead of showing the face of the watch, packaging, store displays, advertisements or other materials submitted to the Court, Plaintiff submitted a hang-tag with the word "Now" on it as the specimen of how the mark was used with Bernard Fernandez's sworn Declaration on October 23, 1986:

> The mark is used by applying it to tags affixed to the goods and five (5) specimens showing the mark as actually used are presented herewith.

DX DW, pp.3-4, 7. To support its request for incontestible status, Plaintiff again submitted a hang-tag specimen with the July 23, 1992 sworn Declaration Under Sections 8 and 15 of Bernard Fernandez:

> The attaches specimen(s) showing the mark **as it is being used** as hereinabove stated *Id.*, pp. 12-13, 15 (emphasis added).

For its renewal, on June 18, 2007, Plaintiff submitted the sworn statement of Bernard Fernandez and a single hang-tag specimen:

> The owner is submitting one specimen **showing the mark as used in commerce** on, or in connection with any item in this class consisting of a(n) scanned copy of hang tag.

12

*          *          *

[T]he owner, or its related company, is using the mark in commerce on or in connection with the goods and/or serviced identified above, as evidenced by the attached **specimen(s) showing the mark as used in commerce**.  (emphasis added.)  *Id.*, pp. 17-21.[12]

The PTO has special guidelines for the situation where the mark consists of multiple words or designs which may be "composite" or "unitary."  TMEP § 1213.02 "Composite" Marks states:

A "composite" mark may consist of a word or words combined with a design or designs; it may consist solely of words, when there are separable word elements; or it may consist solely of separable design elements. An unregistrable component of a composite mark is subject to disclaimer. However, if a composite mark (or portion thereof) is "unitary," an individual component of the mark (or of the unitary portion) that would otherwise be unregistrable need not be disclaimed. See TMEP §§1213.05 et seq.

Plaintiff's fraud allowed it to evade the question of whether its mark is "unitary" and thus should only be protected as a combination of "Armitron" and "Now."  Instead Plaintiff received a registration on only part of its mark:

Fraud in procuring a trademark registration or renewal occurs when an applicant knowingly makes false, material representations of fact in connection with his application.  The obligation which the Lanham Act imposes on an applicant is that he will not make knowingly inaccurate or knowingly misleading statements in the verified declaration forming a part of the application for registration. The obligation to refrain from knowingly making false, material statements applies with equal force to renewal applications.  *Torres v. Cantine Torresella S.r.l.*, 808 F.2d 46, 48 (Fed. Cir. 1986) (citations omitted).

In *Torres*, the applicant filed for renewal averring that the mark as registered was still in use, when in fact it had changed materially.  Here too, even if Plaintiff did use "Now" alone at some point (which is not at all clear from Plaintiff's proffered exhibits)

---

[12]      All of these statement were submitted to the PTO by Plaintiff's counsel, Gottlieb, Rackman & Reisman, litigation counsel in this action. The duty to make sure the statements to the PTO are accurate is shared between the applicant and the attorney. *Hachette Fillipacchi Presse v. Elle Belle, LLC*, 85 USPQ2d 1090 (TTAB 2007).

it is clear that by the time of the renewal last year, the mark had changed.  "If fraud can be shown in the procurement of a registration, the entire resulting registration is void." *Medinol, Ltd. v. Neuro Vasx Inc.*, 67 USPQ2d 1205 (TTAB 2006).  A district court has authority to cancel registrations.  15 U.S.C. § 1119.

### 3.   Plaintiff Does Not Have an "Incontestible" Mark

Plaintiff claims to have an "incontestible" mark.[13]  "Incontestible" marks cannot be challenged for being "merely descriptive," (*Park 'N Fly* at 205) but they are subject to all the defenses set forth in 15 U.S.C. § 1115(b) such as fraud (§ 1115(b)(1)), abandonment (§ 1115(b)(2)) and fair use (§ 1115(b)(4)).  Even valid "incontestible" marks can be found to be weak and not infringed *Gruner & Jahr v. Meredith Corp.*, 991 F.2d 1072 (2d Cir. 1993); *KP*, 543 U.S. 111 (2004).  Since Plaintiff obtained its mark through fraud or has abandoned the registered use it represented to the PTO of "Now" alone, the registration's "incontestible" status is also defeated.  15 U.S.C, § 1115(b).

### D.   Plaintiff Cannot Demonstrate a Likelihood of Confusion

It is clear from Plaintiff's conclusory treatment of the factors enumerated in *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492 (2d Cir. 1961) that it cannot demonstrate a likelihood of confusion between "Now" and "The Now Watch." Moreover, there is no possible confusion between the mark as used  – "Armitron Now" – and "The Now Watch."  Plaintiff must demonstrate not just a possibility of confusion, but a probability (*Gruner* at 1077) so "that numerous ordinary prudent purchasers are likely to be misled or confused as to the source of the product in question."  *Id.*

---

[13]    A mark becomes "incontestible" upon submission of a sworn statement and specimen of use after five years of registration.  As the Supreme Court explained in *Park 'N Fly, Inc. v. Dollar Park 'N Fly, Inc.*, 469 U.S. 189, 198 (1985) the word "incontestable" derived from the concept of quieting title.

First, Plaintiff's mark is weak.  "The strength of a mark depends ultimately on its distinctiveness, or its 'origin-indicating' quality. *McGregor-Doniger, Inc. v. Drizzle, Inc.*, 599 F.2d 1126 (2d Cir. N.Y. 1979).  As noted *supra*, "Now" without "Armitron" does nothing to signify origin.  It is descriptive function:  a watch tells you what time it is now.  "PM" was found descriptive for a product you take in the evening (*Bristol-Myers Squib Co. v. McNeil-P.P.C., Inc.*, 973 F.2d 1033 (2d Cir. 1992)) and "24 Hour" descriptive of a gym open round-the-clock, *24 Hour Fitness USA, Inc. v. 24/7 Tribeca Fitness, LLC*, 447 F.Supp 2d 266 (S.D.N.Y. 2006) *aff'd.*, 247 Fed. Appx. 232 (2d Cir. 2007); now is descriptive for telling time, the function of the goods.

Plaintiff's mark is also weak because it failed to police its mark for years.  See *supra*, § IIIA.1.  Plaintiff attempts to bolster its weak mark by alleging sales and advertising expenditures.  Plaintiff's claim that it cannot break out U.S. sales from import numbers (Fernandez Aff. ¶ 6) strains credulity and is a transparent ploy to boost weak numbers, after representing to the Court in writing that Plaintiff "has sold tens of millions of watches in the United States under its NOW mark."  Dkt. 12, ¶ 2.  Plaintiff can assert no link between these numbers and recognition among consumers of "Now" alone.  *Phillip Morris* at 293 (S.D.N.Y. 1975):

> Thus, we find that "Lights" is not emphasized over Marlboro to a significant extent in its packaging. Therefore, less significance must be assigned to the advertising monies expended by plaintiff in this promotion. Proof of advertising expenditures alone cannot provide the basis for inferring customer identification of a product with a mark, which identification is the key to secondary meaning. And, in this case, the monies spent to promote the product, which prominently displayed the famous Marlboro trademark name, cannot be considered to have been used in "a course of steady promotion of the mark * * * [Lights]." *Phillip Morris* at 293. (citations omitted).

Plaintiff's submissions are also insufficient because they are limited in time and claim "estimated" (Fernandez Aff ¶ 8) advertising expenditures which fail to describe

15

how expended or how effective the advertising is with consumers.  *TCPIP Holding Co., Inc. v. Haar Communications, Inc.*, 244 F.3d 88, 96 (2d Cir. 2001).

Second, the marks do not look or sound the same.  Just as another registrant can register a mark for watches including "Now" ("Here and Now" DX DY),  "The Now Watch" can create a mark with a different commercial impression.  Plaintiff's use of "Armitron" with "Now" greatly lessens the likelihood of confusion:

> Thus while observing that the typewritten and aural similarity of the two marks "approaches identity," the district judge noted that the context in which the respective marks are generally presented reduces the impact of this similarity. The court observed that the label in each DRIZZLER jacket prominently features the McGregor name, which is printed in striking plaid letters.  In addition, . . . the evidence showed that McGregor always emphasizes the company name in its own advertising of DRIZZLER jackets. **The fact that a trademark is always used in conjunction with a company name may be considered by the trial court as bearing on the likelihood of confusion.**  *Id*. at 1133-1134.  (emphasis added)

In *McGregor-Doniger, Inc. v. Drizzle, Inc.*, 599 F.2d 1126, 1133 (2d Cir. N.Y. 1979), the Court found that the plaintiff, McGregor's, regular use of its "McGregor" tartan mark with its "Drizzler" mark for jackets made it unlikely that consumers would confuse the defendant's "Drizzle" name for coats, even when they were sold in the same department stores.  Thus, even if the Court finds that "Armitron Now" is not a unitary mark, the omnipresence of "Armitron" with "Now" weighs against a likelihood of confusion.[14]

Third, the products do not compete in the same market.  Plaintiff's product is exclusively sold to women and "all of Plaintiff's customers are large retailers."

---

[14]     Defendant filed a business certificate for The Now Watch in New York County on October 11, 2007.  DX DF.  As in the present case, the defendant in *McGregor* used its mark as its company name:

> The likelihood of confusion is further reduced by Drizzle's use of its mark to identify itself as the producer of the products advertised by it rather

Fernandez Aff. ¶ 16.  Defendant's watch is unisex and is sold through his website on the Internet and through specialty boutiques.  In *McGregor*, the plaintiff's jacket was unisex and the Defendant sold women's outerwear, including a jacket; the products were sold in different departments of the same stores.  This was not found to contribute to a likelihood of confusion.

> Defendant's website lists the four boutiques he sells through and asks:
>
> Are you interested in showing The Now Watch product line in your store, boutique, gift shop, or e-tail site?  From New Age shops and Yoga outlets to mainstream shopping malls, The Now Watch product line seeks a diverse range of purchasing opportunities for our customers.  If you believe any of the NOW Watch products within our line are a good fit for your retail business, please contact us at info@thenowwatch.com to join our expanding Now Watch Network.  DX DG, pp.3-4.

Plaintiff crops this quote to create the impression that the products compete because they could both be sold in malls. *McGregor* found jackets with almost identical names did not compete in the same store.  The question is not simply one of location, Defendant's watch appeals to people looking to bring more presence into their lives, not to potential watch purchasers.  The watch is a vehicle to disseminate the message to live in the present moment.  The customer inquiries reflect this.  DX DB- DD.

Fourth, there is no evidence of actual confusion.  Plaintiff claims (1) it sells millions of watches a year in the U.S., (2) Defendant adopted the mark with the intent of trading on the notoriety and goodwill of Plaintiff's mark, (3) the parties are competing for the same customers and (4) searching on the Internet for "now" and "watch" leads to Defendant's website.  Yet after eight months, Plaintiff is not aware of any confusion, misdirected sale or even inquiry.  The lack of evidence of actual confusion supports the conclusion that there is no likelihood of confusion.

than as the name of a particular jacket or line of jackets, in contrast to McGregor's practice.  Id. at 1134.

Fifth, there is no evidence that Plaintiff will bridge the gap. Plaintiff has other marks it uses for men's watches. Plaintiff does not sell on the Internet, through small outlets or appeal to people with a message about being "in the moment." There is no evidence that Plaintiff intends to grow in this direction.

Sixth, Defendant adopted his mark in good faith. He does not use "Now" as a mark, but as a descriptive term on the face of the watch. That is fair use. His use of "The Now Watch" is descriptive of his copyrighted watch design which prominently features the word, "NOW." As a mark, "The Now Watch" creates a different commercial impression from "Armitron Now" or "Now."

Conspicuously missing from Plaintiff's accusations of bad faith are any factual allegations. Plaintiff does not claim that Defendant copied one of its watches. Plaintiff does not claim that Defendant's website is set up to lead customers to believe they are at Armitron's site. Plaintiff does not claim similarity in the packaging or advertising.

Bad faith is the "intent to obtain [a] free ride on the reputation of the trademark owner." Mere knowledge of the registration is not enough to show bad faith. *McGregor* at 1137. "Instead, bad faith requires a showing that Defendants intended "to trade on the good will of the trademark holder by creating confusion as to source or sponsorship." *Arnold v. ABC, Inc.*, 2007 U.S. Dist. LEXIS 5802 at *12 (S.D.N.Y. Jan. 29, 2007) (citations omitted). Plaintiff did not adequately plead bad faith and did nothing to substantiate it in its motion. In this Circuit, "'[p]rior knowledge of a senior user's mark does not, without more, create an inference of bad faith.' *Playtex Products, Inc. v. Georgia-Pacific Corp.*, 390 F.3d 158, 166 (2d Cir. 2004) (citation omitted); see also *Savin Corp. v. Savin Group*, 391 F.3d 439, 461 (2d Cir. 2004) ('Nor is prior knowledge of a senior user's trade mark inconsistent with good faith.')" *Arnold* at *11.

18

Plaintiff relies heavily on the Office Actions from the PTO.  This reliance is misplaced.  The extensive record Plaintiff has put into evidence on this motion, and Defendant's response, were not before the Examiner.  The Examiner had no way of knowing that Plaintiff's mark was actually used with "Armitron" in the market – because Plaintiff knowingly and intentionally withheld that information from the PTO.

Plaintiff cites no caselaw to support its allegation that use of a mark after a non-final refusal from the PTO constitutes bad faith.  Instead, Plaintiff misstates the holding of *Syntex Laboratories, Inc. v. Norwich Pharmacal Co.*, 437 F. 2d 566, 569 (2d Cir. 1971).  The PTO's refusal to register is "a factor which, **while not conclusive**, is entitled to great weight" in a discussion of likelihood of confusion.  (emphasis added to quote Plaintiff cropped).  While a court may credit an Examiner's opinion, there is no basis to do so here because the Examiner was unable to address Defendant's arguments on the merits, stating, "such arguments cannot be entertained in an ex parte proceeding."  Schurin Aff Dkt. 14, Ex. K, p. 3.

Plaintiff's statements to the Examiner when prosecuting its own marks demonstrate that Plaintiff knows an applicant's disagreement with an Examiner, based on its own knowledge of the facts, is not bad faith.  When Plaintiff received a rejection from the PTO that its "Robowatch" mark would be confusingly similar to another's "Roboband" mark, Plaintiff disagreed with the Examiner.  Plaintiff and the owner of the Roboband mark agreed that, based on their knowledge of the market and their own customers – information not available to the Examiner – they could take steps to limit the confusion.  DX DZ, pp. 8-13.  While Plaintiff does not agree in this case, there is ample objective evidence to support a finding that the marks are not confusingly similar; continuing to prosecute the application is not a sign of bad faith.

19

Before starting his venture, Defendant did Internet research to ascertain whether anyone else was producing watches with "Now" on their face as early as December 2005. Defendant found various artists making watches and clocks, but he did not find Plaintiff. He learned of Plaintiff after receiving the Office Action from the PTO in August, 2006. Rothenhaus Dec. ¶¶ 3-5.[15]

Seventh, there is no indication that there is any difference in the quality of the goods. Plaintiff sells inexpensive watches manufactured in China. Some of the watches have known problems with the clasps and "gold" that wears off. DX DL, p. 3-4. Defendant's watch comes with a 5-year warranty. Rothenhaus Dec. ¶ 17.

Finally, Defendant's customers are sophisticated in the sense that they endeavor to live in the present moment to attain a high degree of spiritual enlightenment. Plaintiff believes its consumers are unsophisticated, but it has not attempted to demonstrated how Defendant's product and spiritual message are likely to make them think they are buying a watch from Armitron.

### E.    Plaintiff Has Not Pleaded, Let Alone Shown A Likelihood of Success on, a Cybersquatting Claim

Plaintiff has not been able to plead the elements necessary to make out a cybersquatting claim. Specifically, Plaintiff concedes that it has no factual basis for asserting that there was any bad faith at the time of registering the domain. Nor can Plaintiff allege anything but the most conclusory and vague statements that Defendant is trading on Plaintiff's goodwill. Plaintiff cannot find support in *TCPIP Holding Co., Inc. v. Haar Communications, Inc.*, 244 F.3d 88 (2d Cir. 2001) for the proposition that "any use of a domain name is use as a mark" (PI Mem. At 2) and a domain name use "is

---

[15]    "Rothenhaus Dec. _" refers to the July 10, 2008 Declaration of Adam Rothenhaus.

<u>automatically</u> trademark use as a matter of law." (PI Mem. At 8, emphasis in original).
The Second Circuit limited its finding to the defendant in that case.

Plaintiff's position – that any use as a domain name is a trademark use – is
illogical and contrary to PTO policy.  TMEP § 1209.03(m) states:

> Domain Names
> A mark comprised of an Internet domain name is registrable as a
> trademark or service mark **only** if it functions as an identifier of the source
> of goods or services.
>
> *               *               *
>
> Thus, when examining domain name marks, it is important to evaluate
> the commercial impression of the mark as a whole to determine whether
> the composite mark conveys any distinctive source-identifying impression
> apart from its individual components. The examining attorney should
> introduce evidence as to the significance of the individual components,
> including the TLD, but must also consider the significance of the
> composite to determine whether the addition of a TLD has resulted in a
> mark that conveys a source-identifying impression.

Defendant registered the website, www.thenowwatch.com.  In addition to a
detailed description of Mr. Rothenhaus, the concept behind the watch and other
products in development, the website offers services including (1) direct retail sales of
The Now Watch to consumers, (2) referrals to retailers where consumers can see, feel
and purchase the watch and (3) a community of individuals "who share the vitality
springing forth out of the present moment" and their products.  For example, the site
provides a link to Amazon.com where users can purchase the book, *How Now: 100 Ways
to Celebrate the Present Moment* by Raphael Cushnir. Defendant has never applied for
trademark registration of the black, white and red stylized logo with the "TM"
designation which incorporates the copyrighted design of The Now Watch.

Absent from Plaintiff's assertions are any factual allegations that Defendant's
watch, packaging or website emulate Plaintiff's or contain statements, designs or
elements which conflate Defendant's product with Plaintiff's.  Plaintiff alleged no facts

which would lead to the conclusion that Defendant's acts were deliberate or intended to

confuse customers.  Specifically

1. Each watch package contains a signed card from Mr. Rothenhaus.  DX EA.
2. The watch case, bezel, dial, hands and other prominent elements look nothing like Plaintiff's product. DX DG, p. 1
3. The website has an extensive discussion of:
   (a) The concept behind The Now Watch. DX DG, p. 4
   (b) Mr. Rothenhaus's story. DX DG, p. 5
   (c) Non-watch products in development. DX DG, p. 6
   (d) Links to a community of people and their projects. DX DG, pp. 7-8
   (e) Contact information. DX DG, p. 9

which prevent a consumer from believing the source of the site is Plaintiff.

### F.  Plaintiff's Cannot Prevail Because Defendant's Use is a Fair Use

Defendant's use of "NOW" [16] is fair use.  The Lanham Act defines fair use as:

That the use of the name, term, or device charged to be an infringement is a use, otherwise than as a mark, of the party's individual name in his own business, or of the individual name of anyone in privity with such party, or of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party, or their geographic origin; 15 U.S.C. § 1115(b)(4).

Defendant's watch design features the word "NOW" prominently displayed on

the face as part of the ornamentation of the watch.  Defendant applied for and received

Copyright Registration No. VA 1403682 for this original design.  Defendant's use of

"NOW" on the face of a watch describes the goods (a device for telling the current time)

and the desirable effect of wearing the watch:  the wearer is reminded that "the time is

now."  The purpose of the "NOW" on the face of the watch is not to act as a source

---

[16]    As described above, "The Now Watch" can be a mark with a distinct commercial impression that does not infringe Plaintiff's "Armitron Now" mark. "The Now Watch Volume I" is the title of Defendant's copyrighted watch design.  DX DE.  As such, it is the description of the watch design.  Defendant never placed a "TM" on a watch or watch packaging or filed a statement of use to allege trademark use in connection with his ITU application.  Plaintiff's argument that "Now" and "The Now Watch" are "legally identical" (PI Mem at 11) supports a finding of fair use for "The Now Watch" if use of "Now" is fair use.

identifier, but to send a message: to remind the wearer to live in the moment. Even if

Plaintiff can prove infringement, Defendant still prevails if he can demonstrate fair use.

*KP Permanent Make-Up Inc. v. Lasting Impressions I, Inc.*, 543 U.S. 111 (2004).

Plaintiff contends that merely because Plaintiff put the word "Now" on the face

of the watch, it is a trademark use.  The PTO, however, concurs with Defendant; the

"NOW" on the face of the watch is perceived by purchasers as conveying a message:

> TMEP § 1202.03(f)(i)  Slogans or Words Used on the Goods
>
> **Slogans or phrases used on items such as** t-shirts and sweatshirts,
> **jewelry,** and ceramic plates have been refused registration as
> **ornamentation that purchasers will perceive as conveying a message**
> **rather than indicating the source of the goods**. *See Damn I'm Good Inc. v.*
> *Sakowitz, Inc.*, 514 F. Supp. 1357, 212 USPQ 684 (S.D.N.Y. 1981) ("DAMN
> I'M GOOD," inscribed in large letters on bracelets and used on hang tags
> affixed to the goods, found to be without any source-indicating
> significance); *In re Pro-Line Corp.*, 28 USPQ2d 1141 (TTAB 1993)
> (BLACKER THE COLLEGE SWEETER THE KNOWLEDGE primarily
> ornamental slogan that is not likely to be perceived as source indicator); *In*
> *re Dimitri's Inc.*, 9 USPQ2d 1666 (TTAB 1988) (emphasis added).

Defendant has never applied to register a trademark for "NOW."

### 1.    "Now" is Descriptive of The Goods

In this Circuit fair use encompasses uses which are broader than merely

describing the goods themselves:

> Though the terms of the Act recognize the fair use defense where the
> name or term is used "to describe the goods," that phrase has not been
> narrowly confined to words that describe a characteristic of the goods,
> such as size or quality. Instead, we have recognized that the phrase
> permits use of words or images that are used, in Judge Leval's helpful
> expression, in their "descriptive sense."… Similarly, we have held the fair
> use defense applicable to a clothing manufacturer's use of the words
> "Come on Strong" as "describing **a presumably desirable effect**" of its
> menswear. See *B & L Sales Associates v. H. Daroff & Sons, Inc.*, 421 F.2d 352,
> 354 (2d Cir.1970). (emphasis added)

*Cosmetically Sealed Industries, Inc., v. Cheesebrough-Pond's USA Co.*, 125 F.3d 28, 30 (2d

Cir. 1997).  In *Cosmetically Sealed*, the Second Circuit held that the plaintiff's trademark,

SEALED WITH A KISS for lipstick was not infringed by the defendant's use of the exhortation to "Seal it with a Kiss" after applying its lipstick.  The defendant used the same words as the mark, but used them to "convey, in their ordinary meaning, an invitation to customers, rather than as a mark to identify a product."  *Id.*

<u>**2.    "Now" and Mindfulness**</u>

"Now" has the dictionary meaning, "of or relating to the present moment" as an adverb and "the present time or moment" as a noun and numerous other definitions. DX EB.  This literal meaning of "the present moment" has also come to be widely associated with mindfulness, a primary meaning wholly separate from Plaintiff's mark. Mindfulness means to live in the present moment, right here, right now. Being mindful to the present moment helps people shut out distracting memories of the past or concerns about the future.

The concept of living in the NOW is a central tenet of Buddhist philosophy and can also be seen in other spiritual traditions such as Hinduism, Christianity and Taoism. It is fundamental to the practice of Yoga.  The concept of living in the NOW has recently gained considerable attention.  It gained considerable attention with Ram Dass's classic "Be Here Now" and has flourished as a key aspect of the contemporary New Age Movement.  "Now" as used on the face of the watch refers to these widely understood meanings of "now."[17]

---

[17]    DXs EC -EJ demonstrate the meaning of the word "now."

### 3    Good Faith

Defendant's use of "NOW" on the face of the watch was adopted in good faith. His design was original. His intention was to use the word "NOW" to remind people to be mindful to the present moment in a uniquely effective way that is clearly distinct from Plaintiff's use. Plaintiff does not claim similarity between the design of the watches or packaging.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's motion for preliminary injunction should be denied in its entirety.

Respectfully submitted,

Dated: July 11, 2008

By: *Elizabeth Shieldkret*
Elizabeth Shieldkret (ES 0625)
85-86 67th Avenue
Rego Park, NY 11374
(718) 997-0290
es@eshieldkret.com

Attorney for Defendant,
Adam Rothenhaus



33 Fed.Appx. 588                                                                                    Page 1
33 Fed.Appx. 588, 2002 WL 761772 (C.A.2 (N.Y.))
**(Cite as: 33 Fed.Appx. 588, 2002 WL 761772 (C.A.2 (N.Y.)))**

Briefs and Other Related Documents
W.B. Marvin Mfg. Co. v. Howard Berer Co., Inc.
C.A.2 (N.Y.),2002.
This case was not selected for publication in the
Federal Reporter.RULINGS BY SUMMARY
ORDER DO NOT HAVE PRECEDENTIAL
EFFECT. CITATION TO SUMMARY ORDERS
FILED AFTER JANUARY 1, 2007, IS
PERMITTED AND IS GOVERNED BY THIS
COURT'S LOCAL RULE 0.23 AND FEDERAL
RULE OF APPELLATE PROCEDURE 32.1. IN A
BRIEF OR OTHER PAPER IN WHICH A
LITIGANT CITES A SUMMARY ORDER, IN
EACH PARAGRAPH IN WHICH A CITATION
APPEARS, AT LEAST ONE CITATION MUST
EITHER BE TO THE FEDERAL APPENDIX OR
BE ACCOMPANIED BY THE NOTATION:
"(SUMMARY ORDER)", UNLESS THE
SUMMARY ORDER IS AVAILABLE IN AN
ELECTRONIC DATABASE WHICH IS
PUBLICLY ACCESSIBLE WITHOUT PAYMENT
OF FEE (SUCH AS THE DATABASE
AVAILABLE AT
HTTP://WWW.CA2.USCOURTS.GOV), THE
PARTY CITING THE SUMMARY ORDER MUST
FILE AND SERVE A COPY OF THAT
SUMMARY ORDER TOGETHER WITH THE
PAPER IN WHICH THE SUMMARY ORDER IS
CITED. IF NO COPY IS SERVED BY REASON
OF THE AVAILABILITY OF THE ORDER ON
SUCH A DATABASE, THE CITATION MUST
INCLUDE REFERENCE TO THAT DATABASE
AND THE DOCKET NUMBER OF THE CASE IN
WHICH THE ORDER WAS ENTERED.Please use
FIND to look at the applicable circuit court rule
before citing this opinion. Second Circuit Rules §
0.23. (FIND CTA2 s 0.23.)
     United States Court of Appeals,Second Circuit.
  W.B. MARVIN MANUFACTURING COMPANY,
            Plaintiff-Appellant,
                      v.
    HOWARD BERGER COMPANY, INC. d/b/a
  Domestic Broom & Brush Company, Defendant-
                   Appellee.
            **Docket No. 01-7689.**

                April 29, 2002.

Manufacturer or window screens sued competitor,
alleging trade dress infringement.The United States
District Court for the Eastern District of New York,
Gershon, J., denied manufacturer's motion for
**preliminaryinjunction**, and manufacturer appealed.
The Court of Appeals held that: (1) manufacturer
failed to satisfy probability of succeeding on merits
requirement for **preliminaryinjunction**, and (2)
manufacturer failed to make necessary showing of
balance of hardships tilting in its favor.

Affirmed.

                West Headnotes

**[1] Trademarks 382T** 🔑 **1704(10)**

382T**Trademarks**
      382TIX Actions and Proceedings
         382TIX(F) Injunctions
               382Tk1701 Preliminary or Temporary
Injunctions
               382Tk1704 Grounds and Subjects of
Relief
               382Tk1704(10) k. Trade Dress. Most
Cited Cases
      (Formerly 382k620 Trade Regulation)
Window screen manufacturer failed to satisfy
probability of succeeding on merits requirement, for
issuance   of   **preliminaryinjunction** barring
competitor from using allegedly similar trade dress;
while screens were similar, labels were different and
there was no showing of actual confusion.

**[2] Trademarks 382T** 🔑 **1704(10)**

382T**Trademarks**
      382TIX Actions and Proceedings
         382TIX(F) Injunctions
               382Tk1701 Preliminary or Temporary

246 F.3d 183                                                                                              Page 2
246 F.3d 183, 58 U.S.P.Q.2d 1475
**(Cite as: 246 F.3d 183)**

Injunctions
                          382Tk1704 Grounds and Subjects of
Relief
                          382Tk1704(10) k. Trade Dress. Most
Cited Cases
        (Formerly 382k620 Trade Regulation)
Window screen manufacturer failed to satisfy
requirement, for issuance of **preliminaryinjunction**
barring competitor from using allegedly similar trade
dress, that balance of hardships tilted in its favor; due
to delay in filing of suit, supplier of competitor had
shipped screens which competitor was obligated to
purchase.

**\*589** Appeal from the United States District Court
for the Eastern District of New York (Gershon, J.).
William R. Hansen, New York, NY, for Appellant.
Thomas A. Catalano, New York, NY, for Appellee.

Present McLAUGHLIN, POOLER and B.D.
PARKER, Jr., Circuit Judges.

                    SUMMARY ORDER

**\*\*1** ON CONSIDERATION WHEREOF, IT IS
HEREBY ORDERED, ADJUDGED, AND
DECREED that the order of said District Court be
and it hereby is AFFIRMED.

Plaintiff W.B. Marvin Manufacturing Company
("Marvin") appeals from an order of the United
States District Court for the Eastern District of New
York denying Marvin preliminary injunctive relief on
a trade dress claim against Howard Berger Company,
Inc. ("Berger").

Marvin manufactures adjustable window screens.
During the 1990s Berger distributed Marvin's screens
in the New York City area. However, in 2000, Berger
solicited bids from Chinese companies for the
manufacture of its own adjustable window screen.
Once Berger received a satisfactory bid, it supplied
the Chinese company with three adjustable screens,
including Marvin's screen, for reverse engineering.
Berger's art department had access to the carton and
labeling for Marvin screens as well as the labels and
packaging from other screen manufacturers when
they developed Berger's packaging and label.

In February 2000, Marvin learned that Berger had

begun marketing adjustable screens, but it was not
until August 2000 that Marvin's president, Angus
Randolph, first saw the Berger screen at a trade show.
Randolph viewed the Berger screen, label, and
packaging as counterfeits of Marvin's original
designs.

On November 9, 2000, Marvin sued Berger under the
Lanham Act, alleging false designation of origin,
unfair competition, and false designation of
geographic origin. Marvin also asserted New York
statutory and common law claims. In its complaint,
Marvin described its trade dress as a combination

**\*590** of non-functional design features and colors,
which include generally a rectangular shape with two
beige easy-gliding metal runners on the top and
bottom of a dark coated screen with varnished,
natural, grooved pine wood end pieces fastened with
brass brads with at least two set[s] of two brads on
each end piece.

Marvin also claimed as distinctive trade dress the
label that it affixes to each screen and its shipping
package, which converts into a product display.

At the time Marvin sued, its package and label were
white with blue print and included slogans such as
"The Affordable Alternative to Custom Screens" and
"Keeps Out Bugs.".

Randolph testified that on January 5, 2001, he spoke
with a Berger representative who expressed an
interest in settlement and said Berger would be
willing to make some changes in its screens to
appease Marvin.[FN1] The Berger representative also
implied that he would like Marvin to buy screens
from the Chinese company through Berger. The
parties were supposed to meet to discuss settlement
on January 19, 2001, but this meeting did not take
place.

          FN1. Marvin claims that an additional
          discussion occurred in November; however,
          the record pages that Marvin cites do not
          indicate when the conversation took place.

At the end of January, Marvin heard from its
customers that Berger screens were being shipped
from China. On February 15, 2001, Marvin moved

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

for a **preliminaryinjunction**. Between filing its complaint and its motion, Marvin changed its packaging trade dress. Without apparent access to the new Marvin trade dress, Berger also changed some aspects of its packaging. Oddly, both companies now used green rather than blue lettering on their packages.

**\*\*2** After a hearing, Magistrate Judge Viktor V. Pohorelsky, to whom the motion had been referred, issued an oral report and recommendation, recommending that the district court deny the injunction. In findings of fact unchallenged by either party, the magistrate judge described both parties' trade dress at the time of the hearing. He found that "[w]ith small differences, the defendant's screens are identical to the plaintiff[']s." Although the defendant's label was slightly larger than the plaintiff's, it was placed in substantially the same spot as the Marvin label. Both labels contained product information including numbers indicating the screen's size. The Berger label included the slogan, "Keeps bugs out!," but the 2001 Marvin label did not. Berger's label depicts the facade of a house while Marvin's label shows a woman placing a screen into a window. The product name on Berger's screen is "Comfort Zone." The Marvin screen bears the name "Marvin." Both parties use a form of box construction known as "PDQ" for "Pretty Darn Quick" that is attractive to retailers because the box can be converted into a display rack. Both use green lettering and graphics on a white background. However, the graphics are different.

In his report and recommendation, Judge Pohorelsky found that Marvin had not shown a likelihood of success because it had not demonstrated the non-functionality of its product or likely confusion. The magistrate judge did find, however, that Marvin had presented serious issues going to the merits that were a fair ground for litigation. Because the magistrate judge also found that the balance of hardships tilted toward Berger, he recommended denying a **preliminaryinjunction**.

The district court agreed with the magistrate judge both on the merits of Marvin's**\*591** claim and on the balance of hardships and therefore denied injunctive relief.

On appeal, Marvin principally argues that the district

court (1) misapplied governing Supreme Court and Second Circuit precedent on functionality; (2) erred in its likelihood of confusion analysis; and (3) erred in balancing the hardships between the parties. We affirm because we agree with the district court that Marvin has not shown a likelihood of success in demonstrating likely confusion and the balance of hardships does not tilt in Marvin's favor. We do not reach the question of functionality.

We review the district court's grant or denial of a **preliminaryinjunction** for abuse of discretion, which occurs when the district court applies an incorrect legal standard, makes a material and clearly erroneous finding of fact, "or issues an injunction that contains an error in its form or substance." *Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.,* 111 f.3d 993, 999 (2d Cir.1997). A plaintiff seeking a **preliminaryinjunction**"must show (1) irreparable harm and (2) either (a) that it is likely to succeed on the merits or (b) sufficiently serious questions regarding the merits of the claim to make them fairly litigable, with the balance of hardship tipping decidedly in the plaintiff's favor." *Id.* at 998-99. To show likelihood of success on a trade dress infringement claim, the plaintiff must show, among other things, that its trade dress is not functional and that there is a likelihood of confusion between its trade dress and the defendant's trade dress. *Id.*"[A] showing of a high probability of confusion creates a presumption of irreparable harm." *Id.* at 999. However, this presumption "is inoperative if the plaintiff has delayed either in bringing suit or in moving for preliminary injunctive relief." *Tough Traveler, Ltd. v. Outbound Prods.,* 60 F.3d 964, 968 (2d Cir.1995).

**\*\*3** [1] We review the district court's determination with regard to each of the *Polaroid* factors, *see Polaroid Corp. v. Polarad Elecs. Corp.,* 287 F.2d 492, 495 (2d Cir.1961), for clear error but determine the ultimate issue of whether there is a likelihood of confusion *de novo. Fun-Damental Too,* 111 F.3d at 1003. There is no clear error in the district court's findings that Marvin's trade dress is not a strong identifier of its source, the screens are proximate in the market place, there is no significant difference in the quality of the screens, the bad faith element did not weigh in Marvin's favor, and Marvin did not show actual confusion. The district court correctly found that the screens themselves are very similar.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

However, the district court also concluded correctly that the labels on the screens and the packaging for the screens were not particularly similar. "Labels can be integral, if not dispositive factors in determining overall similarity of trade dress." *Nora Beverages v. Perrier Group of Am.,* 269 F.3d 114, 122 (2d Cir.2001). Therefore, similarity of trade dress weighs only weakly, if at all, in favor of Marvin. The district court found the evidence on sophistication of buyers to be equivocal but held at least as to wholesalers, Marvin's and Berger's immediate customers, sophistication weighed in favor of Berger. Marvin argues that the court instead should have considered the ultimate consumers, homeowners who have less sophistication. We agree. *See Sunenblick v. Harrell,* 895 F.Supp. 616, 631 (S.D.N.Y.1995), *aff'd* 101 F.3d 684 (2d Cir.1996) (Table). However, this conclusion does not alter our ultimate agreement that Marvin has not shown a probability of success on likelihood of confusion. Because Marvin's trade dress is not strong and the similarity of the two products with **\*592** labels and packaging included is only weak, Marvin has not demonstrated a likelihood of confusion notwithstanding the proximity of the products.

[2] The district court also correctly concluded that the balance of hardships does not tilt decidedly toward Marvin. Marvin waited to bring its **preliminaryinjunction** motion until after Berger's screens had been shipped. Under these circumstances-which Marvin could have avoided by filing its lawsuit and making its motion earlier-Berger would have to pay its supplier yet be enjoined from selling the screens. Marvin's attempt to explain its delay by the existence of ongoing negotiations is unpersuasive. The negotiations appear to have consumed, at most, a period of about two weeks in January. Marvin could have filed its lawsuit as early as August 2000 and made a simultaneous application for a **preliminaryinjunction**. Thus its delay is relevant in balancing the hardships. *Cf. Tough Traveler,* 60 F.3d at 968 (stating that delay alone can justify denial of a **preliminaryinjunction** where the delay cannot be explained by ignorance of the infringing product or necessary investigation).

C.A.2 (N.Y.),2002.
W.B. Marvin Mfg. Co. v. Howard Berer Co., Inc.
33 Fed.Appx. 588, 2002 WL 761772 (C.A.2 (N.Y.))

Briefs and Other Related Documents (Back to top)

• 2001 WL 34369103 (Appellate Brief) Reply Brief for Plaintiff-Appellant (Dec. 11, 2001) Original Image of this Document (PDF)
• 2001 WL 34369104 (Appellate Brief) Brief of Defendant-Appellee (Nov. 27, 2001) Original Image of this Document (PDF)
• 2001 WL 34369105 (Appellate Brief) Brief for Plaintiff-Appellant (Oct. 25, 2001) Original Image of this Document (PDF)
• 01-7689 (Docket) (Jun. 11, 2001)

END OF DOCUMENT