UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
E. GLUCK CORPORATION,

              Plaintiff,

v.                                      Civil Action No.
                                     08 CV 3466 (VM) (RLE)

ADAM ROTHENHAUS,

              Defendant.
------------------------------------x

## PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR A PRELIMINARY INJUNCTION

                          GOTTLIEB, RACKMAN & REISMAN, P.C.
                          Richard S. Schurin
                          Yuval H. Marcus
                          Counsel for Plaintiff
                          270 Madison Avenue
                          New York, New York 10016
                          (212) 684-3900

July 18, 2008

# TABLE OF CONTENTS

| | | Page |
|---|---|---|
| ARGUMENT | | 1 |
| I. | Plaintiff Has Not Delayed | 1 |
| II. | Plaintiff Is Still Entitled To a Presumption of Irreparable Harm | 3 |
| III. | Plaintiff Will Be Irreparably Harmed If Relief Is Not Granted | 4 |
| IV. | Plaintiff Has Policed Its Trademark | 5 |
| V. | Plaintiff's Mark Is Valid and Enforceable | 5 |
| VI. | Defendant's Claim of Fraud on The Trademark Office Is Frivolous | 6 |
| VII. | There Is A Likelihood of Confusion | 7 |
| VIII. | Defendant's Fair Use Defense Is Totally Frivolous | 9 |
| CONCLUSION | | 10 |

# TABLE OF AUTHORITIES

Adjusters Int'l v. Public Adjusters Int'l, No. 92 Civ. 1426,
    1996 U.S. Dist. LEXIS 12604, 1996 WL 492905
    (N.D.N.Y. Aug. 27, 1996) ............ 9-10

C.V. Starr & Co., Inc. v. American Int'l Group, Inc.,
    2006 U.S. Dist. Lexis 27277 (S.D.N.Y. 2006) ............ 5

Cartier v. Aaron Faber, Inc.,
    512 F. Supp. 2d 165 (S.D.N.Y. 2007) ............ 4

eBay, Inc v. MercExchange, LLC,
    547 U.S. 388, 126 S.Ct. 1837, 164 L.Ed2d 641 (2007) ............ 4

Fed. Treasury Enter. Sojozplodoimport v. Spirits Int'l N.V.,
    425 F. Supp.2d 458 (S.D.N.Y. 2006) ............ 6

JA Apparel Corp. v. Abboud,
  2008 U.S. Dist Lexis 44599 (S.D.N.Y. June 4, 2008)   4

ISCYRA v. Tommy Hilfiger, Inc.,
  80 F. 3d 749 (2d Cir. 1996)   9

Johanna Farms, Inc v. Citrus Bowl, Inc.,
  468 F. Supp. 866 (E.D.N.Y. 1978)   1

Lennon v. Premise Media Corp.,
  2008 U.S.Dist Lexis 42489 (S.D.N.Y. 2008)   4

ProFitness Physical Therapy Ctr. v. Pro-Fit Orthopedic & Sports Physical Therapy, P.C.,
  314 F.3d 62 (2d Cir. 2002).   1

Time Warner Cable, Inc. v. DIRECTV, Inc.,
  497 F.3d 144 (2d Cir 2007)   4

Topp-Cola Co. v. Coca-Cola Co.,
  314 F.2d 124 (2d Cir. 1963)   2


Statutes and Treatises

15 U.S.C. §§ 1119 and 1120   6

37 C.F.R. §2.56(b)(1)   7

Trademark Manual of Examining Procedure
("TMEP") §904.3   7

1 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*
§ 7:5 at p. 7-9   6

5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*
§ 31:61 at p. 31-142   7

5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*
§32:53 at pp. 32-131-134   2

As shown herein, Defendant's opposition is without any meaningful support, and represents nothing more than a series of concocted excuses to justify his infringement of Plaintiff's incontestable mark. Many, if not most, of the so-called "facts" offered by Defendant are simply untrue. The plain truth is that Defendant's application to register the mark that is the subject of this case was rejected by the Trademark Office because of Plaintiff's prior superior rights -- the very rights that Plaintiff is now asserting! Although Defendant, who is also a lawyer, admits that decisions of the Trademark Office are entitled to "great weight," he nevertheless recklessly went ahead with his plan to sell the infringing watches in the face of the Trademark Office's rejection. Accordingly, this action and this Motion seeking preliminary relief are a direct result of Defendant's own reckless conduct. Plaintiff has valuable rights which have been recognized by the Trademark Office, and which deserve to be protected.

## ARGUMENT

I. Plaintiff Has Not Delayed

Defendant's arguments that Plaintiff "delayed" in bringing this action, and making its motion for preliminary relief [1], are both specious.

First, since delay is properly measured from the date when a trademark owner becomes aware of a possible <u>infringing use</u>, Defendant's claim that Plaintiff waited "two years" before contacting Defendant is meritless. See, ProFitness Physical Therapy Ctr. v. Pro-Fit, P.C., 314 F.3d 62, 70 (2d Cir. 2002); and, Johanna Farms, Inc v. Citrus Bowl, Inc., 468 F. Supp. 866 (E.D.N.Y. 1978) (noting the "ludicrous result" of measuring delay from a time prior to when Plaintiff could have secured relief.) Indeed, a Plaintiff cannot

---

[1] Plaintiff has <u>not</u> asserted its cybersquatting claim in this Motion. Accordingly, Defendant's arguments relating thereto are irrelevant.

1

be required to send hypothetical cease and desist letters to every would be watchmaker that files a trademark application on an <u>intent-to-use</u> basis. Were it any other way, the Courts would literally be clogged with trademark owners making sure to preserve their rights against "phantom" applicants who may never have the opportunity or even desire to use a mark after having been rejected at the Trademark Office. Indeed, a court does not even have jurisdiction over a claim asserted against someone who has only filed an intent-to-use application in the Trademark Office. J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* §32:53 at pp. 32-131-134; and <u>Topp-Cola Co. v. Coca-Cola Co.</u>, 314 F.2d 124 (2d Cir. 1963).

Similarly false and misleading are Defendant's statements that Plaintiff "did not file suit for weeks" after first contacting Defendant, and that "Mr. Rothenhaus wrote back requesting Plaintiff contact Mr. Rothenhaus' counsel." (Def's brief p. 5) The true facts are: (a) Plaintiff's counsel first wrote Defendant on March 25, 2008 demanding his affirmative response by 5 p.m. on Friday March 28, 2008 (Exhibit N); and (b) On March 26, 2008, Defendant Rothenhaus sent Plaintiff's counsel an e-mail stating:

> "I received your e-mail and FedEx package. I referred this matter to my attorney. Please direct all further contact to her." (Exhibit DX DA)

Mr. Rothenhaus' e-mail <u>did not</u> request that Plaintiff contact Defendant's counsel as Defendant now falsely claims, but rather clearly stated that the matter had been "referred" to Ms. Shieldkret, who presumably would be responding.[2] When no response was forthcoming by April 9, 2008, Plaintiff filed its Complaint. Accordingly, the factual premises for Defendant's arguments are just plain wrong.

---

[2] See also Exhibit O – Shieldkret letter of April 14, 1008 stating "I write in response to your March 25, 2008 e-mail."

2

Another false and misleading charge of Defendant is that Plaintiff only sought preliminary relief "as a pressure tactic" after suit had already been brought. The falsity of this charge is shown by the fact that Plaintiff's Complaint filed on April 9, 2008 specifically seeks preliminary relief. (See Complaint p. 7). Moreover, the true facts regarding counsel's communications, once again, differ sharply from what is stated in Defendant's papers. On Friday May 9th, Plaintiff's counsel called Defendant's counsel and advised her that Plaintiff would be filing a request for preliminary relief, either a TRO or preliminary injunction, if Defendant did not agree to stop using the infringing mark. (Schurin Reply Decl. ¶5) After Defendant's counsel refused, Plaintiff's counsel wrote this Court on May 12th, pursuant to the Court's Individual Rules, seeking permission to bring a motion for a preliminary injunction. (Docket No. 4) The fact that Plaintiff provided Defendant's counsel with notice of its intent to seek preliminary relief shortly before Plaintiff's counsel wrote the Court is not an "improper threat," but rather the normal dialogue between adversarial counsel in advance of a court proceeding. The remainder of Defendant's charges are similarly misleading.[3]

II.  <u>Plaintiff Is Still Entitled To a Presumption of Irreparable Harm</u>

In the Second Circuit, if a plaintiff proves a likelihood of confusion it is still entitled to a presumption that there will be irreparable harm. Defendant's argument that

---

[3] Plaintiff did not "delay two weeks to even attempt service of the Complaint." In fact, and as Defendant's counsel well knows and has intentionally concealed from this Court, on April 14th, only three (3) business days after Plaintiff filed the Complaint, Defendant's counsel finally contacted Plaintiff's counsel as Mr. Rothenhaus has previously suggested (on March 26th) would be the case, and on April 17th, Plaintiff asked Defendant's counsel to accept service of the Complaint. (See, Exhibit O to Schurin Reply Dec.) <u>The next day</u> Plaintiff sent the Complaint out for "rush" service. (Schurin Reply Decl. ¶4 and Exhibit Q) Accordingly, Plaintiff did not delay two weeks (or at all) to attempt service of the Complaint, as Defendant <u>falsely</u> suggests – rather the "delays" in this instance were attributable solely to <u>Defendant's</u> counsel's dilatory tactics.

3

Plaintiff is no longer entitled to such a presumption because of the recent patent case, eBay, Inc v. MercExchange, LLC, 547 U.S. 388, 126 S.Ct. 1837 (2007), is without merit.

Defendant's citation of law on this point from only the 11th Circuit is misleading, since courts in the Southern District of New York have recently held that until the Second Circuit decides otherwise, a plaintiff is still entitled to a presumption of irreparable harm. For example, in Lennon v. Premise Media Corp., 2008 U.S.Dist. Lexis 42489 (S.D.N.Y. 2008), Judge Stein addressed the issue of whether the holding in eBay extended beyond patent cases and held that it could not. Judge Stein stated:

> "Defendant contends that the extensive Second Circuit precedent holding that a presumption of irreparable harm exists in copyright infringement cases where a prima facie showing of infringement has been made was abrogated by the United States Supreme Court decision in eBay, Inc v. MercExchange, LLC, 547 U.S. 388, 126 S.Ct. 1837 (2007). eBay cannot be read in that manner."
> ...
> "Moreover, since eBay, the Second Circuit has applied a presumption of irreparable harm in the context of a preliminary injunction sought pursuant to a false advertising claim. See Time Warner Cable, Inc. v. DIRECTV, Inc., 497 F.3d 144, 162 (2d Cir. 2007).

In another case, JA Apparel Corp. v. Abboud, 2008 U.S. Dist. Lexis 44599 (S.D.N.Y. June 4, 2008), the Court cited eBay, but still held that "[A] finding that a trademark infringement gives rise to a likelihood of confusion is sufficient to establish irreparable harm if the injunction is not granted." See, Cartier v. Aaron Faber, Inc., 512 F. Supp. 2d 165, 171 (S.D.N.Y. J. Marrero 2007) ("In cases of trademark infringement, a showing of likelihood of confusion established the element of irreparable harm.")

III.   Plaintiff Will Be Irreparably Harmed If Relief Is Not Granted

Even if the presumption did not apply, the evidence shows that Plaintiff will be irreparably harmed if Defendant is permitted to use a variety of specious excuses to

4

"validate" its infringing activities. For example, Defendant's statement that the parties market their products "through different channels" is not correct. Since Plaintiff's products are sold by retailers such as Target through the Internet, contrary to Defendant's false statement, the parties' products are marketed through <u>the exact same channels of trade</u>. See, e.g., <u>C.V. Starr & Co., Inc. v. AIG, Inc.</u>, 2006 U.S. Dist. Lexis 27277 (S.D.N.Y. 2006). When an Internet search result seeking Plaintiff's product could easily misdirect that person to the Defendant, irreparable harm is established.

Moreover, the risk that Plaintiff could lose a customer like Target, or receive less sales from them, as a result of Defendant's actions is real. Target pays to advertise Plaintiff's watches on the Internet, which the paid search results from Google confirm. It stands to reason that if consumers are presented with Defendant's Website as the first <u>unpaid</u> search result, Target will be less inclined to advertise and sell Plaintiff's watches.

IV.   <u>Plaintiff Has Policed Its Trademark</u>

Yet another false claim of Defendant is his charge that Plaintiff failed to police its mark by allowing another to register and use the NOW mark. The <u>true facts</u> relevant to this issue are reflected in the Settlement Agreement attached as Exhibit T to Schurin Reply Decl. As shown therein, not only did Plaintiff enforce its trademark rights, it was successful in getting a prior defendant to stop using the same mark!

V.   <u>Plaintiff's Mark Is Valid and Enforceable</u>

Defendant's attacks on the validity of Plaintiff's mark are also meritless.

The law on this subject is of the "black letter" variety, and is clearly explained in the treatise *McCarthy on Trademarks* in a section entitled, **"Multiple marks of one owner – Product or service can be identified by more than one mark"**, which states

that there is "no doubt" that one product can bear more than one protectable trademark. See, 1 J. Thomas McCarthy, *McCarthy on Trademark and Unfair Competition* § 7.2 at p. 7-6. Indeed, the use of a house mark, such as ARMITRON in association with a product mark such as NOW, is common in the watch business, and does not diminish the strength of the product mark. See, e.g., CITIZEN – ECO-DRIVE, OMEGA-DEVILLE, and SEIKO-SPORTURA in Exhibits V to X. These are PTO documents that evidence major watch companies doing business in the United States with established trademark rights in "product marks" that appear in association with other "house marks," and the Trademark Office's explicit approval of such specimens of use. See also, 1 J. Thomas McCarthy, *McCarthy on Trademark and Unfair Competition* § 7.5 at p. 7-9 ("The most common situation of a plurality of marks appearing on one product is when a company uses a house mark in combination with many different product marks which appear on different products emanating from that "house." Familiar examples are SONY WALKMAN audio equipment, INTEL PENTIUM processor chips") Accordingly, just as no reasonable person would claim that Sony does not have trademark rights in WALKMAN because it is used in association with SONY, likewise no one can reasonably claim that Plaintiff does not have rights in NOW simply because it is used in association with the house mark ARMITRON.

VI.   Defendant's Claim Of Fraud On The Trademark Office Is Frivolous

To prove a claim of fraud, Defendant must first and foremost prove "a false representation regarding a material fact." Fed. Treasury Enter. Sojozplodoimport v. Spirits Int'l N.V., 425 F. Supp.2d 458, 467-68 (S.D.N.Y. 2006); and 15 U.S.C. §§ 1119, 1120. The standard of proof for "fraud" is "a rigorous clear and convincing standard"

which is strictly applied. 5 J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* § 31:61 at p. 31-142. For the reasons already discussed herein, Defendant has <u>no possible</u> defense of fraud.

First, in responding to Defendant's ridiculous allegation that a hangtag is not a valid specimen of trademark use; a hangtag is by its very nature, acceptable as evidence of use. In this regard, the Trademark Examiner's *bible*, the Trademark Manual of Examining Procedure, ("TMEP") § 904.03, entitled "Material Appropriate as Specimens for Trademarks" provides in relevant part as follows:

> " A trademark specimen should be a label, **tag** or container for the goods, or a display associated with the goods. 37 C.F.R. §2.56(b)(1)." (Exhibit Z)

Some trademark owners that also use the mark on the goods choose to show the product in its entirety, others choose to use a label or hang tag, <u>either is acceptable</u>, and it is not fraud to submit only a hangtag as a specimen. See e.g., Exhibit BB evidencing the PTO's acceptance of Rolex's submission of a hangtag as evidence for its use of the product mark OYSTER.

Second, the Trademark Office's acceptance of similar specimens of use from Plaintiff's competitors, as described previously herein and shown in Exhibits V to X, proves beyond a reasonable doubt that the Trademark Office would have also accepted evidence of use consisting of a depiction of Plaintiff's actual watch. Accordingly, and once again, the entire premise upon which Defendant's argument is based is false.

VII.    <u>There Is A Likelihood of Confusion</u>

There is nothing in Defendant's Opposition that changes the fact that a likelihood of confusion exists. With respect to the first and most important <u>Polaroid</u> factor,

7

similarity of the marks, Defendant's contention that "the marks do not look or sound the same" is absurd. Indeed, with respect to Defendant's use of NOW, the marks are not just similar, but <u>identical</u>, and both Plaintiff and Defendant's use the mark on a watch face. Defendant's use of the mark THE NOW WATCH is also essentially identical to Plaintiff's use of NOW. This fact was noted by the Trademark Examiner, who correctly held that "the addition of the generic name, WATCH, to the applicant's mark does not obviate likelihood of confusion." The evidence offered herein that many other watch brand owners also use over-sized and stylized versions of their marks on the watch face, (See, Exhibit AA), is also compelling evidence that consumers familiar with Plaintiff's NOW brand would assume that Defendant's watch is just a new highly stylized watch offered by Plaintiff. Moreover, Defendant cannot always control how his product is sold after it is put into commerce. Retailers and other re-sellers will sell his watches any way they can, and consumers who see Defendant's watch will not necessarily get the "message" that Defendant is trying to convey. In addition, the fact that Plaintiff sometimes also uses the house mark ARMITRON on its watch products does not detract from the similarity of the marks at issue. Defendant cites to no case relating to products similar to watches, and in the <u>McGregor</u> case, relied on by Defendant, the Court denied plaintiff's injunction not because Plaintiff used its own "house mark," but because of the differences in the goods, and the court's belief that plaintiff was unlikely to "bridge the gap." Of course, in the instant case, the goods are <u>identical</u>.

With respect to the question of whether the products compete in the same markets, Defendant's arguments are again specious. For example, both Plaintiff's and Defendant's goods are currently sold over the Internet, the Plaintiff through the

Websites of its wholesale customers, such as Target, and the Defendant though his own Website. Moreover, the statements on Defendant's Website leave little doubt that he wants to expand his distribution as much as possible.

Finally, with respect to the issue of bad faith, Defendant is an attorney, and admits that in around November 2005 he "looked into the intellectual property considerations" of selling a watch with the word NOW on its face. (Exhibit AA) Nevertheless, Defendant now claims not to have even performed a basic "knock-out" trademark search.[4] See, ISCYRA v. Hilfiger, 80 F.3d 749 (2d Cir. 1996). Of course, Defendant has also acted in total disregard of the PTO's rejection of his application.

VIII.   Defendant's Fair Use Defense Is Totally Frivolous

Defendant's final argument that its use of THE NOW WATCH and NOW marks is "fair use" is devoid of any merit, most notably, because Defendant himself has applied for trademark registration for the mark THE NOW WATCH and the word NOW appears prominently on the face of Defendant's watches.

To succeed on a "fair use" defense, one of the burdens that a Defendant has is establishing use of the term "otherwise than as a mark" 15 USC § 1115(b)(4). However, Defendant cannot establish even this fundamental element of the defense of "fair use" because he is using the terms THE NOW WATCH and NOW as trademarks. Indeed, as Defendant must concede, he has filed an application to register the mark THE NOW WATCH for "watch faces." This fact alone is fatal to Defendant's "fair use" defense because it establishes that Defendant is using THE NOW WATCH as a trademark. See

---

[4] Defendant's statement that he "did Internet research to ascertain whether anyone else was producing watches with "Now" on their face as early as December 2005," but did not find Plaintiff, is impossible to believe given the Internet search results that Defendant himself now offers in evidence.

9

Adjusters Int'l v. Public Adjusters Int'l, 1996 U.S. Dist. LEXIS 12604 at * 22, 1996 WL 492905 (N.D.N.Y. Aug. 27, 1996)(rejecting "fair use" defense finding the fact that a defendant had filed an application for trademark registration is "highly persuasive, if not conclusive, evidence that defendants were using the words . . . in a trademark sense.").

Similarly, Defendant is using the word NOW as a trademark by prominently placing it on the watch face. This is the traditional place for a mark to appear, <u>as Defendant admits by virtue of the fact that the goods he identified in his trademark application are **watch faces**.</u> Moreover, none of the cases cited by Defendant support his claim that the use of a mark on the goods themselves can be considered to be a descriptive "fair use." The <u>Cosmetically Sealed</u> cited by Defendant found fair use where the descriptive terms were used in advertising/promotional materials, not on the product. In that case, the plaintiff's mark SEALED WITH A KISS was used for lipstick. The Defendant did not use that mark on its CUTEX COLOR SPLASH lipstick product, but rather on a promotional display that encouraged customers to take a postcard and "Seal it with a kiss." This is a very different than the situation here where Defendant is using the exact same word as the mark covered by Plaintiff's incontestable trademark registration – NOW -- on the face of the exact same goods, namely, watches.

## CONCLUSION

Fro all of the foregoing reasons, Plaintiff's motion should be granted.

Respectfully submitted,
GOTTLIEB, RACKMAN & REISMAN, P.C.

Dated: July 18, 2008      Richard S. Schurin (RS0199)

10