```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
E. GLUCK CORPORATION,               :
                                    :
                 Plaintiff,         :     08 Civ. 3466 (VM)
                                    :
         - against -                :     DECISION AND ORDER
                                    :
ADAM ROTHENHAUS,                    :
                                    :
                                    :
                 Defendant.         :
------------------------------------X
```

**VICTOR MARRERO, United States District Judge.**

Plaintiff E. Gluck Corporation ("Gluck") filed a Complaint (the "Complaint"), alleging that defendant Adam Rothenhaus ("Rothenhaus"): (1) infringed its NOW trademark ("NOW") in violation of Section 32 of the Lanham Act (the "Lanham Act"), 15 U.S.C. § 1114(1); (2) engaged in cyberpiracy by maintaining the domain name www.thenowwatch.com (the "Domain Name") in violation of Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d) ("§ 1125"); and (3) engaged in unfair competition in violation of Section 43 of the Lanham Act, § 1125(a). Among other relief, Gluck seeks: to restrain Rothenhaus from infringing Gluck's NOW trademark, including use or display of The Now Watch ("The Now Watch") name or mark; to have Rothenhaus abandon his trademark application (the "Initial Application") with the United States Patent and Trademark Office (the "PTO"); and to permanently prohibit Rothenhaus from seeking registration of any mark incorporating the term "NOW" for watches or watch related products.

Rothenhaus now moves for sanctions (the "Rule 11 Motion") to be imposed against Gluck and its counsel, Gottlieb Rackman & Reisman, P.C. ("GRR"), pursuant to Federal Rule of Civil Procedure 11 ("Rule 11"). Specifically, Rothenhaus seeks: (1) dismissal of the Complaint; (2) attorney's fees and costs in connection with the instant motion; and (3) any such other measures as this Court deems appropriate. Gluck contends that the Rule 11 Motion is itself without merit and seeks reimbursement of costs in opposing this motion pursuant to Rule 11(c)(2). For the reasons stated below, Rothenhaus's Rule 11 Motion is denied, and Gluck's request for attorney's fees is denied.

## I. BACKGROUND[1]

Gluck creates, designs, and manufactures watches sold under various trademarks. These watches are sold nationwide through thousands of retailers. At issue in the underlying case is Gluck's NOW trademark, which has been registered with the PTO since 1986,[2] and is featured on the face of a line of

---

[1] The following factual summary derives from the parties' submissions to the Court and any exhibits attached thereto, specifically: Gluck's First Amended Complaint, dated June 4, 2008 ("Am. Compl."); and the Affidavit of Richard S. Schurin ("Schurin") in Opposition to Defendant's Rule 11 Motion and in Support of Plaintiff's Request for Attorney Fees, dated June 18, 2008 ("Schurin Aff."). Except where specifically quoted, no further reference to these documents will be made.

[2] United States Patent and Trademark Registration No. 1,446,294.

women's watches.  Rothenhaus also produces and manufactures an allegedly similar product, The Now Watch, which contains the term "Now" on the face of the watch, and the term "The Now Watch" on the box.  Additionally, Rothenhaus has registered his Domain Name, where he advertises and sells The Now Watch.

Rothenhaus filed the Initial Application with the PTO to register The Now Watch on an intent-to-use basis (indicating the mark was not in use) on February 7, 2006.  The PTO rejected the Initial Application on August 1, 2006 (the "August Rejection"), finding a "likelihood of confusion" with Gluck's NOW trademark, and that "the goods are highly related: watches and watch faces."  (PTO Office Action, dated Aug. 1, 2006, attached as Ex. D to Am. Compl., at 2.)  After receiving the August Rejection, Rothenhaus issued a Response to Office Action (the "Response") on October 12, 2006 (the "October Response").  The PTO rejected the October Response on December 1, 2006 based upon the "similarity of goods" and "similarity of the marks."  (PTO Office Action, dated Dec. 1, 2006, attached as Ex. F to Am. Compl., at 2.)  Rothenhaus filed a second Response on December 24, 2007 that was again rejected on January 25, 2008.  (See PTO Office Action, dated Jan. 25, 2008, attached as Ex. H to Am. Compl.)

On March 25, 2008, Gluck sent Rothenhaus a cease and desist letter (the "Cease and Desist Letter") demanding that

Rothenhaus:

> (1) immediately cease use of the phrase "the Now Watch," the NOW mark (or any other names similar thereto); (2) immediately transfer the domain name <thenowwatch.com> to [Gluck]; (3) forward to [Gluck] documentation reflecting the manufacture, importation and sales of the infringing items to date; (4) indicate to [Gluck] the remaining quantity of infringing products currently in inventory under [Rothenhaus's] company's control; and (5) provide an accounting to [Gluck] for all sales of these products made to date, and agree to compensate [Gluck] accordingly.

(Letter to Rothenhaus from GRR, dated March 25, 2008, attached as Ex. A to Schurin Aff., at 2-3.) After Rothenhaus failed to comply with these demands, Gluck filed the Complaint in this Court against Gluck. Rothenhaus asserts that the Complaint is frivolous, and filed the Rule 11 Motion on May 13, 2008. Subsequently, Gluck filed the Amended Complaint, and, on June 6, 2008, Gluck filed a motion for a preliminary injunction (the "Preliminary Injunction Motion").

## II. **LEGAL STANDARD**

Rule 11(b) provides that:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary

>support after a reasonable opportunity for further investigation or discovery.

Fed. R Civ. P. 11(b). Courts may issue Rule 11 Sanctions only in extraordinary circumstances. See Park v. Seoul Broad. Sys. Co., No. 05 Civ. 8956, 2008 WL 619034, at *1 (S.D.N.Y. Mar. 6, 2008) (citation omitted); see also Louis Vuitton Malletier v. Dooney & Bourke, Inc., No. 04 Civ. 5316, 2006 WL 2807213, at *6 (S.D.N.Y. Sept. 28, 2006)("Sanctions should always be a (very) last resort.") (citation omitted). "'[T]he standard for triggering the award of fees under Rule 11 is objective unreasonableness' and is not based on the subjective beliefs of the person making the statement." Storey v. Cello Holdings, L.L.C., 347 F.3d 370, 387 (2d Cir. 2003) (quoting Margo v. Weiss, 213 F.3d 55, 65 (2d Cir. 2000)).

The appropriateness of sanctions is distinct from the underlying merits of a claim. See Abdelhamid v. Altria Group, Inc., 515 F. Supp. 2d 384, 392 (S.D.N.Y. 2007) ("'When divining the point at which an argument turns from merely losing to losing and sanctionable' courts must 'resolve all doubts in favor of the signer of the pleading.'") (quoting Rodick v. City of Schenectady, 1 F.3d 1341, 1350 (2d Cir. 1993)). Rule 11 motions should not be used "to test the legal sufficiency or efficacy of allegations in the pleadings; other motions are available for those purposes." Rule 11 Advisory Committee Note ("Advisory Committee Note") to the 1993

amendments (the "1993 Amendments"). Notably, the 1993 Amendments to Rule 11 relaxed the necessary basis on which a party's claim rests from the more rigorous "well-grounded in fact," to a standard of "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances ...." In re Pennie & Edmonds, 323 F.3d 86, 88-89 (2d Cir. 2003).

To establish a Rule 11(b)(2) violation, it must be "patently clear that a claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands." Park, 2008 WL 619034, at *1 (quoting Eastway Const. Corp. v. City of New York, 762 F.2d 243, 254 (2d Cir. 1985)). "Rule 11 imposes a duty on every attorney to conduct a reasonable pre-filing inquiry into the evidentiary and factual support for the claim, and to certify that the legal arguments are supported by existing law, and therefore that they are not frivolous." Capital Bridge Co. v. IVL Technologies, No. 04 Civ. 4002, 2007 WL 3168327, at *10 (S.D.N.Y. Oct. 26, 2007) (citing Rule 11(b)). As for Rule 11(b)(3), "[w]ith regard to factual contentions, 'sanctions may not be imposed unless a particular allegation is utterly lacking in support.'" Storey, 347 F.3d at 388 (quoting O'Brien v. Alexander, 101 F.3d 1479, 1489 (2d Cir.

6

1996)). Courts maintain a high bar for establishing a Rule 11 violation given judicial concern for encouraging zealous advocacy:

> Rule 11 sanctions are a coercive mechanism, available to trial court judges, to enforce ethical standards upon attorneys appearing before them, while being careful not to rein in zealous advocacy. Although the imposition of sanctions is within the province of the district court, "any such decision [should be] made with restraint and discretion."

Pannonia Farms, Inc. v. USA Cable, 426 F.3d 650, 652 (2d Cir. 2005) (quoting Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d 323, 334 (2d Cir. 1999)).

When a court determines that Rule 11 sanctions are appropriate, it has "has significant discretion in determining what sanctions, if any, should be imposed for a violation," bearing in mind "that the sanctions should not be more severe than reasonably necessary to deter repetition of the conduct by the offending person or comparable conduct by similarly situated persons." Advisory Committee Note. The court may impose a fine or penalty, an award of reasonable expenses and attorney's fees incurred as a result of the misconduct, or dismiss the action. See Abdelhamid, 515 F. Supp. 2d at 392. Additionally, in cases where the initial movant's Rule 11 motion is denied, a court may issue sanctions against the movant because "the filing of a motion for sanctions is itself subject to the requirements of the rule and can lead to

sanctions." Advisory Committee Note; see also Koar v. United States, No. 96 Civ. 5166, 1997 WL 1038181, at *2 n.2 (S.D.N.Y. Sept. 2, 1997) ("[T]he making of a frivolous Rule 11 motion can itself result in sanctions against the movant."). The nonmoving party need not file a cross-motion to receive fees as the court can award reasonable expenses to the prevailing party, including attorney's fees, incurred in presenting or opposing the motion. See Advisory Committee Note; see also Rule 11(c)(2) ("If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.").

"Although a prevailing non-movant may be entitled to attorneys' fees when he successfully avoids Rule 11 sanctions, fees are infrequently granted where the motion was not clearly frivolous, filed for an improper purpose, or not well-grounded in fact or law." Goldberg v. Blue Ridge Farms, Inc., No. 04 Civ. 5098, 2005 WL 1796116, at *7 (E.D.N.Y. July 26, 2005) (citing Safe-Strap Co. v. Koala Corp., 270 F. Supp. 2d 407 (S.D.N.Y. 2003)); see also U.S. ex rel. Evergreen Pipeline Const. Co. v. Merritt Meridian Const. Corp., 95 F.3d 153, 171 (2d Cir. 1996) (citation omitted) ("Under the American Rule, the cost of attorneys' fees is not ordinarily shifted onto the losing party.").

### III. DISCUSSION

A. VIABILITY OF THE RULE 11 MOTION

Rothenhaus asserts that Gluck and GRR: (1) failed to conduct a reasonable inquiry into the facts and law before filing the Complaint; (2) brought this action for an improper purpose; and (3) refused to withdraw statements filed with the Court, which they know or should know to be false. The Court is not persuaded that Rothenhaus has established a sufficient basis for Rule 11 sanctions.

   1. Reasonable Factual and Legal Inquiry

   a. Cybersquatting Claim

Rothenhaus argues that Gluck did not have a factual or legal basis to support a cybersquatting claim. Specifically, Rothenhaus contends that Gluck must allege bad faith with particularity to state a claim for cybersquatting under § 1125(d). Section 1125(d) enumerates a nonexhaustive list of factors ("the Factors") to consider in determining bad faith, including:

> (I) the trademark or other intellectual property rights of the person, if any, in the domain name; (II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person; (III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services; (IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name; (V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the

>     mark, either for commercial gain or with the intent to
>     tarnish or disparage the mark, by creating a likelihood
>     of confusion as to the source, sponsorship, affiliation,
>     or endorsement of the site.

Lanham Act § 1125(d). Rothenhaus argues that none of the Factors are applicable in this case. Specifically, Rothenhaus claims that he made fair use of the mark, did not attempt to divert or confuse Gluck's customers, did not offer to sell the Domain Name, provided accurate contact information in registering the Domain Name, did not register multiple domains, gave accurate contact information on the site, and did not register domains which were misspellings of the mark, and that Gluck allegedly did not make a claim to a distinctive or famous mark. Rothenhaus contends that Gluck failed to further investigate the factual basis of the Complaint. Finally, Rothenhaus alleges that further investigation would show that Rothenhaus had reasonable grounds to believe he had a fair use defense under § 1125(d)(1)(B)(i)(IV).

The Court disagrees, and finds that prior to filing the Complaint, Gluck took sufficient steps to constitute an "inquiry reasonable under the circumstances." See Rule 11(b)(2), (3); see also In re Pennie & Edmonds, 323 F.3d at 88-89. Specifically, Gluck alleges that before filing the Complaint it examined Rothenhaus's watches purchased from four retailers that revealed the use of "Now" on the face, and "The Now Watch" on the box; examined Rothenhaus's website and its

display of The Now Watch with a "tm" symbol; reviewed Rothenhaus's failed trademark registration attempts; became familiar with trademark law through preparation for another trademark infringement case against another defendant; acquired experience with the Lanham Act; and sent Rothenhaus the Cease and Desist Letter. In addition, Gluck alleges that Rothenhaus continued to use the Domain Name for the purpose of selling The Now Watch, after the PTO rejected Rothenhaus's Initial Application, and after Gluck sent Rothenhaus the Cease and Desist Letter.

Reviewing Gluck's response in the light most favorable to it and resolving doubts in Gluck's favor as the non-movant, the Court is persuaded that Gluck instituted this action based upon legal contentions warranted by existing law, and factual contentions having evidentiary support or that will likely have evidentiary support upon further inquiry. Moreover, much of Rothenhaus's argument goes to the merits of the dispute at hand or requires discovery to resolve properly. As stated above, on a Rule 11 motion, the Court will not evaluate the merits of the parties' claims and defenses. For the purpose of this motion, it is sufficient that the Court finds that Gluck's cybersquatting claim is not "utterly lacking in [factual] support," Storey, 347 F.3d at 388, nor is "it patently clear that [this] claim has absolutely no chance of

success under the existing precedents." Park, 2008 WL 619034, at *1. At such an early stage in the litigation, "[t]he certification [of the Complaint] is that there is (or likely will be) 'evidentiary support' for the allegation, not that the party will prevail with respect to its contention regarding the fact." Advisory Committee Note. Therefore, Gluck need not prove all the facts of his case upon his initial filing of the Complaint. Accordingly, the Rule 11 Motion is denied as to Gluck's cybersquatting claim.

    b. <u>Trademark Claims</u>

Rothenhaus also alleges that Gluck's trademark claims rest on conclusory pleadings, and are lacking in legal and factual support. Specifically, he contends that Gluck and GRR failed to proceed under the applicable law, failed to find facts to support their allegations, found facts that defeat their allegations, and nonetheless, filed the Complaint.

The Court disagrees. Even if Gluck failed to plead sufficiently as Rothenhaus alleges, such a deficiency is not sanctionable under Rule 11. See Capital Bridge, 2007 WL 3168327, at *10. The Court finds that Gluck conducted an inquiry reasonable under the circumstances for the same reasons previously stated above. In addition, Rothenhaus's production and sales of The Now Watch, despite the PTO's rejection on a basis of likelihood of confusion, and continued

operation subsequent to the Cease and Desist Letter, demonstrate that Gluck's claims may have colorable basis under existing law, are not frivolous, and not utterly lacking in factual support. This Circuit has held that the PTO's refusal to register a mark because of similarity to a previously registered mark, "while not conclusive, is entitled to great weight" in deciding a trademark infringement dispute. Syntex Labs., Inc. v. Norwich Pharmacal Co., 437 F.2d 566, 569 (2d Cir. 1971)(citation omitted). Gluck has "presented colorable claims with regard to the issues it raised and made plausible arguments in support of its positions." W.K. Webster & Co. v. American President Lines, 32 F.3d 665, 670 (2d Cir. 1994) (vacating sanction of attorney's fees). Therefore, the Court finds that the Complaint demonstrates that "to the best of [Gluck's] knowledge, information, and belief, formed after a reasonable inquiry under the circumstances," there was a legal and factual basis for asserting trademark claims against Rothenhaus. Accordingly, Rothenhaus's Rule 11 Motion is denied as to Gluck's trademark claims.

    c.    Amended Complaint

Rothenhaus argues that the Amended Complaint was filed after the twenty-one day safe harbor provision pursuant to

Rule 11(c)(2) lapsed,[3] and that the Amended Complaint does not moot the Rule 11 Motion because the Amended Complaint allegedly "continues to advocate the same flawed claims which were not properly investigated before filing and which were proffered for an improper purpose." (Letter to the Court from Elizabeth Shieldkret, dated June 10, 2008, at 1-2.)

The Court disagrees, and finds that the Complaint, as well as the Amended Complaint, are sufficiently grounded in a factual and legal basis as stated above, and sanctions are not warranted on this basis either. See Park, 2008 WL 619034, at *1; see also Storey, 347 F.3d at 388. For all the reasons stated previously, the Court is persuaded that Gluck conducted "a reasonable pre-filing inquiry into the evidentiary and factual support for the claim[s], and certif[ied] that the legal arguments are supported by existing law, and therefore that they are not frivolous." Capital Bridge, 2007 WL 3168327, at *10. Accordingly, the Rule 11 Motion is denied with respect to Gluck's filing of the Amended Complaint.

2. Improper Purpose

Rothenhaus alleges that Gluck brought this action for an improper purpose in violation of Rule 11(b)(1). Specifically,

---

[4] The safe harbor provision under Rule 11 provides "a party with the opportunity to cure a defective paper or pleading within 20 days." Wolters Kluwer Financial Services Inc. v. Scivantage, Adnane Charchour, Sanjeev Doss, Cameron Routh, 525 F. Supp. 2d 448, 537 (S.D.N.Y. 2007).

Rothenhaus alleges that: (1) Gluck threatened a motion seeking a default judgment after Rothenhaus offered to voluntarily accept service; (2) Gluck threatened a Temporary Restraining Order ("TRO"); (3) Gluck told Rothenhaus that he "would have to either settle the action or pay for discovery of [Gluck's] factual bases for filing the complaint"; and (4) Gluck failed to respond to Rothenhaus's request for factual and legal support of his claims in various correspondence, which would force Rothenhaus to bring a motion to dismiss or for a more definite statement. (See Reply Mem. in Supp. of Def.'s Mot. for Sanctions Pursuant to Rule 11, dated June 25, 2008 ("Reply"), at 9.)

The Court disagrees. Nothing in the record suggests that Gluck brought this action "to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Rule 11(b)(1). The Court also notes that Gluck never brought a motion for a TRO or a default judgment. The factual and legal basis underlying Gluck's Complaint, which demonstrate its claims are not frivolous, as discussed previously, militates against a finding of improper purpose. See Sussman v. Bank of Israel, 56 F.3d 450, 459 (2d Cir. 1995) ("[I]t would be counterproductive to use Rule 11 to penalize the assertion of non-frivolous substantive claims, even when the motives for asserting those claims are not entirely pure.") (quoting

Townsend v. Holman Consulting Corp., 929 F.2d 1358, 1362 (9th Cir. 1990) (en banc)). Accordingly, the Rule 11 Motion is denied as to Rothenhaus's claim of improper purpose.

### 3. Withdrawal of Allegedly False Statements

Rothenhaus alleges that Gluck failed to withdraw false statements in various documents submitted to this Court. First, Rothenhaus alleges that the process server's Affidavit of Service, dated April 22, 2008, (the "Affidavit") which states that Kevin Smith was served, is contradicted by the Declaration of Kevin Velez and Schurin's own admission of using "nail and mail service." (See Rule 11 Mot., at 6.) Second, Rothenhaus alleges that Schurin's paralegal's Affirmation of Service, dated April 23, 2008, (the "Affirmation") (collectively with the Affidavit, the "Affidavits") contained false statements because the Affirmation states a copy of the ECF Rules and this Court's Individual Practices (the "Enclosures") were enclosed, but allegedly were not.[4]

Rothenhaus urges sanctioning Gluck if the Affidavits are not withdrawn because Gluck allegedly continues to use affidavits improperly. For example, Rothenhaus asserts that: (1) Gluck submitted affidavits in connection with its Preliminary Injunction Motion that advance arguments that

---

[5] Rothenhaus, however, notes that Gluck agreed to withdraw the Affirmation with the Clerk of Court.

improperly make conclusions of law and include statements beyond the affiant's personal knowledge; (2) GRR represented to the Court that an answer was due on an incorrect date, and threatened to seek a default motion on this basis, but never corrected the statement to the Court; and (3) by letter dated May 12, 2008 to the Court, Gluck inflated its sales volume of watches sold in the United States under its NOW mark. In addition, Rothenhaus challenges a statement in Schurin's Affidavit, dated June 18, 2008, that the Amended Complaint was filed "on or about June 3, 2008," the last day of the safe-harbor period, when it was not signed, stamped, nor summons issued until June 4, 2008. (Reply, at 1.)

The Court disagrees. Even if Gluck served Rothenhaus the Complaint without including the Enclosures, if the documents concerning the mode of service do conflict, and the other alleged misconduct by Gluck were true, these actions do not rise to the level of extraordinary circumstances to warrant Rule 11 sanctions. See Park, 2008 WL 619034, at *1 (S.D.N.Y. Mar. 6, 2008) ("Courts have cautioned litigants that Rule 11 sanctions are reserved for extraordinary circumstances.") (citation omitted). Accordingly, Rothenhaus's Rule 11 Motion with respect to false statements contained in the Affidavits is denied.

B. ATTORNEY'S FEES

17

Although the Court denies Rothenhaus's Rule 11 Motion, it also denies Gluck's request for attorney's fees. Gluck contends that attorney's fees are warranted in light of Rothenhaus's "totally baseless" charges in bringing the instant motion. (Gluck's Mem. of Law in Opp'n to the Rule 11 Motion and in Supp. of Gluck's Req. for Attorney's Fees, dated June 18, 2008, at 9.) Gluck also contends that Rothenhaus improperly has used this Rule 11 motion to strengthen a potential motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)").

As the Court's rejection of the various arguments made in support of Rothenhaus's Rule 11 sanctions suggests, in many respects the motion is grounded on matters that go to the merits of the parties' dispute. It implicates Gluck's subjective actions that call for discovery to assess properly, and asserts Rothenhaus's own conclusory allegations. It also objects to procedural technicalities that fall far short of the rigorous test defining the extraordinary misconduct worthy of Rule 11 sanctions. To this extent, Rothenhaus's motion raises issues that more properly should be addressed in a Rule 12(b)(6) motion to dismiss. Thus, the relief Rothenhaus seeks in this proceeding is not only premature but entails a misuse of Rule 11 that could be especially detrimental to the parties and to judicial economy were Rothenhaus actually to file a

Rule 12(b)(6) motion later on during the litigation and then essentially seek to reassert some of the same matters. In the Court's assessment, under these circumstances Rothenhaus's Rule 11 motion teeters as close as it can approach, without crossing over, to the borderline of being sanctionable itself.

The Court, however, is not persuaded that there is sufficient ground to find that the Rule 11 Motion was necessarily brought to bolster a motion to dismiss because the instant motion can be resolved without reaching the merits of the case. See Safe-Strap Co., 270 F. Supp. 2d at 417 (stating when "assessing whether Rule 11 sanctions should be imposed, the court does not judge the merits of an action") (citing Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 396 (1990)); see also Abdelhamid, 515 F. Supp. 2d at 392.

Therefore, the Court finds that, although Gluck is the prevailing party, attorney's fees are not warranted. See Goldberg v. Blue Ridge Farms, Inc., No. 04 Civ. 5098, 2005 WL 1796116, at *7 (E.D.N.Y. July 26, 2005) (citing Safe-Strap, 270 F. Supp. 2d at 421) ("Although a prevailing non-movant may be entitled to attorneys' fees when he successfully avoids Rule 11 sanctions, fees are infrequently granted where the motion was not clearly frivolous, filed for an improper purpose, or not well-grounded in fact or law."). Accordingly, Gluck's request for attorney's fees is denied.

## IV. ORDER

Accordingly, it is hereby

**ORDERED** that the motion of defendant Adam Rothenhaus (Docket No. 5) for sanctions under Federal Rule of Civil Procedure 11 is DENIED; and it is further

**ORDERED** that the request of plaintiff E. Gluck Corporation for attorney's fees in connection with the instant motion is DENIED.

**SO ORDERED**

Dated:   New York, New York
         30 July 2008

_____
VICTOR MARRERO
U.S.D.J.